

1  DAVID J. BERGER, State Bar No. 147645
   THOMAS J. MARTIN, State Bar No. 150039
2  CATHERINE E. MORENO, State Bar No. 264517
   ANALISA M. PRATT, State Bar No. 262951
3  SAVITH S. IYENGAR, State Bar No. 268342
   WILSON SONSINI GOODRICH & ROSATI
4  Professional Corporation
   650 Page Mill Road
5  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
6  Facsimile: (650) 565-5100
   Email: tmartin@wsgr.com
7
   PHILIP HWANG, State Bar No. 185070
8  PAUL CHAVEZ, State Bar No. 241576
   AUDREY DANIEL, State Bar No. 266117
9  LAWYERS' COMMITTEE FOR CIVIL RIGHTS
   131 Steuart Street, Suite 400
10 San Francisco, CA 94105
   Telephone: (415) 543-9444
11 Facsimile: (415) 543-0296
   Email: pchavez@lccr.com
12
   JULIA HARUMI MASS, State Bar No. 189649
13 ALAN L. SCHLOSSER, State Bar No. 49957
   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
14 OF NORTHERN CALIFORNIA
   39 Drumm Street
15 San Francisco, CA 94111
   Telephone: (415) 621-2493
16 Facsimile: (415) 255-8437
   Email: jmass@aclunc.org
17

18 Attorneys for Plaintiffs
   UELIAN DE-ABADIA-PEIXOTO, ESMAR CIFUENTES,
19 PEDRO NOLASCO JOSE, and MI LIAN WEI

20

21                UNITED STATES DISTRICT COURT

22              NORTHERN DISTRICT OF CALIFORNIA

23
   UELIAN DE ABADIA-PEIXOTO, ESMAR      )  Case No.
24 CIFUENTES, PEDRO NOLASCO JOSE, and   )
   MI LIAN WEI on behalf of themselves and all )  **CLASS ACTION – (CIVIL RIGHTS)**
25 others similarly situated,           )
                                        )
26                Plaintiffs,           )
                                        )  COMPLAINT
27          vs.                         )
                                        )
28 UNITED STATES DEPARTMENT OF          )
   HOMELAND SECURITY, JANET             )

-1-                                     3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1   NAPOLITANO, Secretary of the United States          )
    Department of Homeland Security, UNITED             )
2   STATES IMMIGRATION AND CUSTOMS                      )
    ENFORCEMENT, JOHN T. MORTON, Director               )
3   of U.S. Immigration and Customs Enforcement,        )
    TIMOTHY AITKEN, Field Office Director of             )
4   the San Francisco District of U.S. Immigration      )
    and Customs Enforcement, ERIC H. HOLDER,            )
5   JR., United States Attorney General, THE            )
    EXECUTIVE OFFICE FOR IMMIGRATION                    )
6   REVIEW, and JUAN P. OSUNA, Director of the          )
    Executive Office for Immigration Review,            )
7                                                        )
                    Defendants.                          )
8                                                        )
                                                         )
9

10                          **INTRODUCTION**

11       1.      Thousands of immigration detainees annually appear and provide testimony in San

12  Francisco Immigration Court shackled at their wrists, waists, and ankles without regard to

13  whether they pose any risk of disruption, violence, or flight.  Defendants' policy and practice of

14  shackling all detained immigrants for immigration court proceedings causes detainees to suffer

15  physical and emotional pain, is dehumanizing, and undermines the dignity of court proceedings.

16  It also hinders detainees' ability to function at full mental capacity during life-changing

17  immigration hearings and undermines their ability to communicate with their attorneys.  This

18  class action complaint for declaratory and injunctive relief is brought on behalf of current and

19  future adult immigration detainees who have or will have proceedings in San Francisco

20  Immigration Court.

21       2.      Freedom from physical restraint has always been recognized as a fundamental

22  constitutional right, requiring due process before it can be infringed.  English legal scholarship

23  from the Eighteenth Century, foundational to our own system, recognized that "if felons come in

24  judgment to answer, they shall be out of irons, and all manner of bonds, so that their pain shall

25  not take away any manner of reason." *Spain v. Rushen*, 883 F.2d 712, 723 (9th Cir. 1989) (citing

26  sources).  Yet, in San Francisco Immigration Court, ***all*** immigration detainees – who are not

27  "felons," but rather civil detainees – are required to appear and testify in hard metal restraints

28  around their wrists, ankles, and waists.

3.     This harm is compounded by the fact that most immigration detainees that appear in San Francisco Immigration Court are housed in facilities several hours away.  They are placed in shackles for transport before and after their hearings, such that most immigration detainees spend ten hours in shackles – before, during, and after their appearances in front of an immigration judge.  In imposing these restraints during immigration court proceedings, Defendant Immigration and Customs Enforcement ("ICE") refuses to provide Plaintiffs with the most basic element of due process – an individualized determination regarding the need for *any* restraint, much less the use of deeply intrusive shackles.

4.     In San Francisco Immigration Court, Defendant ICE has adopted a practice of shackling all adult immigration detainees in its custody without conducting an individualized review of the need for restraints.  ICE's ability to execute this unconstitutional practice has been aided by the participation of the other Defendants in this matter, who have authorized or ratified the blanket shackling of immigration detainees, or have abdicated their legal responsibilities, turning a blind eye to and acquiescing in ICE's unlawful and inhumane practices.

5.     Detainees' requests to have their shackles removed during their immigration hearings have been a futile exercise.  Defendant Executive Office for Immigration Review ("EOIR") – the agency that employs San Francisco's immigration judges and administers immigration courts – has refused to exercise its legal responsibility to regulate the conduct of immigration court hearings and safeguard the due process rights of detainees appearing in its courtrooms.  Instead, EOIR has abdicated all responsibility to ICE.  Consequently, even if a presiding immigration judge believed that shackles were unwarranted in particular cases, he or she would be powerless to modify the restraints.

6.     EOIR's abdication of authority to ICE is particularly alarming given ICE's role in immigration cases.  ICE acts as the prosecutor in such cases, advocating to the immigration judge as to why an individual should be removed from the country.  In many cases, ICE's ability to persuade a judge to deny an individual relief from deportation is tied to ICE's ability to portray that individual as untrustworthy and lacking credibility, or a danger to the community.

3702243_22.DOC
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1        7.    Plaintiffs Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose, and Mi

2    Lian Wei have been the victims of these blanket shackling practices.  Like the vast majority of

3    the class members they seek to represent, none of the named plaintiffs has a history of violence

4    or disruption in court, has attempted to escape from custody, or has avoided prosecution of his or

5    her immigration case.  All of them experience pain associated with the use of shackles before,

6    during, and after their hearings, and all find the use of shackles demeaning, distracting, and

7    disempowering.

8        8.    However, the named plaintiffs are merely four of the thousands of immigration

9    detainees who will continue to suffer harm as a result of these unconstitutional and inhumane

10   practices.  Thousands of immigration detainees, including the elderly and individuals with

11   physical or mental disabilities, are being unnecessarily subjected to hours in confining and

12   painful shackles in court, without justification.  This shackling is not only physically painful and

13   dehumanizing, but it also hinders detainees' ability to communicate confidentially with their

14   attorneys and meaningfully participate in their cases.

15       9.    Consequently, this class action is brought on behalf of all current and future adult

16   immigration detainees who have or will have proceedings in San Francisco Immigration Court.

17   Plaintiffs seek declaratory and injunctive relief requiring Defendants to cease their cruel,

18   degrading, and unconstitutional practice of shackling detainees for in-court appearances without

19   an individualized determination that such restraints are necessary.

20                                       **JURISDICTION**

21       10.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal

22   question), 28 U.S.C. §§ 2201 and 2202 (declaratory relief), and 5 U.S.C. § 706 (waiver of

23   sovereign immunity).

24       11.    Personal jurisdiction exists over Defendants in this case, owing to, among other

25   things, the federal nature of Defendants' conduct.

26

27

28

-4-

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1

## VENUE

2        12.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

3  1391(e) because a substantial part of the events and omissions giving rise to Plaintiffs' claims

4  occurred, and continues to occur, in this district.

5

## INTRADISTRICT ASSIGNMENT

6        13.    Assignment to the San Francisco Division of this Court is proper under Local Rule

7  3-2(d) because a substantial part of the events or omissions giving rise to Plaintiffs' claims

8  occurred, and continues to occur, in San Francisco County.

9

## THE PARTIES

10  **Plaintiffs**

11       14.    Plaintiffs Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose, and Mi

12  Lian Wei presently are immigration detainees in ICE custody.

13       15.    Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose, and Mi Lian

14  Wei are collectively referred to herein as "Named Plaintiffs." Uelian De Abadia-Peixoto, Esmar

15  Cifuentes, Pedro Nolasco Jose, and Mi Lian Wei, along with the above-described class, are

16  collectively referred to herein as "Plaintiffs."

17       16.    Plaintiff Uelian De Abadia-Peixoto is in immigration custody at the Yuba County

18  Jail. She is currently in removal proceedings before the San Francisco Immigration Court and

19  plans to seek relief through a U-Visa based on having been the victim of and witness to a violent

20  crime. She may, in the alternative, seek relief through a T-Visa for victims of trafficking or

21  asylum, withholding of removal, and relief under the Convention Against Torture based on her

22  fear of persecution in Brazil. She has appeared five times since January 2011 in immigration

23  court in metal restraints on her wrists, waist, and ankles, and has been injured by application of

24  such restraints. Defendants have not afforded Plaintiff De Abadia-Peixoto any individualized

25  determination regarding the likelihood that she would pose a security or flight risk if allowed to

26  appear in immigration court without restraints. Her next hearing is scheduled for September 16,

27  2011.

28

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

17. Plaintiff Esmar Cifuentes is in immigration custody at the Yuba County Jail. He is currently in removal proceedings before the San Francisco Immigration Court and is seeking relief through cancellation of removal based on hardship to his U.S. citizen child if deported. He has appeared three times since May 2011 in immigration court in metal restraints on his wrists, waist, and ankles, and has been injured by the application of such restraints. Defendants have not afforded Plaintiff Cifuentes any individualized determination regarding the likelihood that he would pose a security or flight risk if allowed to appear in immigration court without restraints. His next hearing is scheduled for August 16, 2011.

18. Plaintiff Pedro Nolasco Jose is in immigration custody at the Yuba County Jail. She is currently in removal proceedings before the San Francisco Immigration Court and is seeking relief through an application for a U-Visa.[1] She has appeared about five times since June 2011 in immigration court in metal restraints on her wrists, waist, and ankles, and has suffered mental and physical injury through the application of such restraints. Defendants have not afforded Plaintiff Nolasco Jose any individualized determination regarding the likelihood that she would pose a security or flight risk if allowed to appear in immigration court without restraints. Her next hearing is scheduled for September 9, 2011.

19. Plaintiff Mi Lian Wei is in immigration custody at the Sacramento County Jail. She is currently in removal proceedings before the San Francisco Immigration Court and is seeking relief through an asylum application based on domestic abuse in her home country. She has appeared three times since June 2011 in immigration court in metal restraints on her wrists, waist, and ankles, and has suffered mental and physical injury through the application of such restraints. Defendants have not afforded Plaintiff Wei any individualized determination regarding the likelihood that she would pose a security or flight risk if allowed to appear in immigration court without restraints. Her next hearing is scheduled for September 30, 2011.

---

[1] Pedro Nolasco Jose was born male, but has a female gender identity. She is recognized as transgender by the Yuba County Jail and subject to different housing conditions as a result of this identity. Plaintiffs will refer to Pedro Nolasco Jose as "Ms. Nolasco" and "she" for purposes of this litigation.

3702243_22.DOC

**Defendants**

20.    Defendant United States Department of Homeland Security ("DHS") is the arm of the federal government responsible for enforcement of immigration laws.  In 2003, DHS assumed responsibility for immigration enforcement from the Immigration and Naturalization Service ("INS"), which ceased to exist.

21.    Defendant Janet Napolitano is the Secretary and highest-ranking member of the DHS.  As Secretary of DHS, Ms. Napolitano has oversight over Immigration and Customs Enforcement, and is responsible for DHS's policies, practices and procedures.  Ms. Napolitano is being sued in her official capacity.

22.    Defendant Immigration and Customs Enforcement ("ICE") is a federal law enforcement agency within the Department of Homeland Security.  ICE is responsible for transporting immigration detainees to and from – and overseeing them during – immigration hearings.

23.    Defendant John T. Morton is the Director of ICE.  As head of ICE, Mr. Morton is responsible for ICE's practices, policies, and procedures.  Mr. Morton is being sued in his official capacity.

24.    Defendant Timothy Aitken is the Field Office Director for the San Francisco District of ICE, which is responsible for the transportation and oversight of immigration detainees in several geographic regions, including Northern California.  Mr. Aitken oversees the San Francisco District Field Office's functions and operations and the immigration detainees within its jurisdiction, including immigration detainees appearing in San Francisco Immigration Court.  Mr. Aitken is being sued in his official capacity.

25.    Defendant Eric H. Holder, Jr. is the Attorney General of the United States and the head of the Department of Justice ("DOJ").  Mr. Holder shares responsibility for implementation and enforcement of the immigration laws with Defendant Janet Napolitano.  Mr. Holder is being sued in his official capacity.

26.    Defendant Executive Office for Immigration Review ("EOIR") is an agency within the DOJ with the primary mission of adjudicating immigration cases, including cases involving

3702243_22.DOC

1  detained immigrants.  One of EOIR's immigration courts is located at 630 Sansome Street in San

2  Francisco, California.

3       27.    Defendant Juan P. Osuna is the Director of EOIR.  As director of EOIR, Mr.

4  Osuna is responsible for EOIR's practices, policies and procedures.  Mr. Osuna is being sued in

5  his official capacity.

6       28.    DHS, Janet Napolitano as Secretary of DHS, ICE, John Morton as Director of ICE,

7  Timothy Aitken as Field Office Director of the San Francisco ICE District Office, Eric Holder as

8  Attorney General, EOIR, and Juan P. Osuna as Director of EOIR are collectively referred to

9  herein as "Defendants."

10                          **CLASS ALLEGATIONS**

11      29.    Named Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23

12  on behalf of a class of current and future immigration detainees who are age eighteen or over

13  who have or will have proceedings in San Francisco Immigration Court (the "Plaintiff Class").

14  Named Plaintiffs are members of the class they seek to represent.

15      30.    Plaintiffs do not seek compensatory or monetary damages.  Instead, Plaintiffs seek

16  injunctive and declaratory relief broadly applicable to members of the Plaintiff Class.

17      31.    The proposed class meets the requirements of Federal Rule of Civil Procedure

18  23(a)(1).  Each year, thousands of immigration detainees are shackled when they attend

19  immigration court hearings in their cases in San Francisco Immigration Court.  According to

20  EOIR Statistics, in fiscal year 2010, the San Francisco Immigration Court completed proceedings

21  in 3,281 detained cases.  *FY Statistical Year Book*, U.S. Department of Justice, at B3 Table 1

22  (January 2011); available at http://www.justice.gov/eoir/statspub/fy10syb.pdf (last visited

23  August 12, 2011).  This figure does not include thousands of cases that were also heard but not

24  completed during the fiscal year.   In addition, because ICE detainees are frequently removed

25  from the country, released from detention, or transferred to other regions of the country, the

26  membership of the class changes constantly.  Therefore, the class is so numerous, and

27  membership in the class is so fluid, that joinder of all members is impractical.

28

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

32.     The proposed class meets the requirements of Federal Rule of Civil Procedure 23(a)(2).  First, the Plaintiff Class seeks only injunctive and declaratory relief.  Second, there are several common questions of law and fact common to all members, including (i) whether ICE shackles all adult immigration detainees in San Francisco Immigration Court without an individualized determination of the need for such restraints, and without affording members of Plaintiff Class an opportunity to contest the decision before an independent decision-maker; and (ii) whether this practice violates the Due Process Clause.  All class members have a common interest in ending this practice.  Questions of law and fact are clearly common to all class members and predominate over any questions affecting individual members.

33.     The proposed class meets the requirements of Federal Rule of Civil Procedure 23(a)(3).  The claims of the representative parties are typical of the claims of the class members.  Like all proposed class members, Named Plaintiffs are immigration detainees who have been and will again be shackled during their appearances in San Francisco Immigration Court pursuant to Defendants' blanket shackling practices without an individualized determination of the need for shackles.  Named Plaintiffs and the class they represent have been directly injured by Defendants' unconstitutional shackling policies and practices, and are likely to suffer future harm from continuation of these policies and practices.

34.     The proposed class meets the requirements of Federal Rule of Civil Procedure 23(a)(4).  Named Plaintiffs will fairly and adequately represent the interests of the class because they seek relief identical to the relief sought by all class members, and because they have no interests adverse to other class members.  Plaintiffs are represented by *pro bono* counsel from Wilson, Sonsini, Goodrich & Rosati, P.C., the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and the American Civil Liberties Foundation of Northern California, who will vigorously prosecute this action and are experienced in class action and civil rights litigation.

35.     Class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) is also appropriate because Defendants have acted and refused to act on grounds generally applicable to the Plaintiff Class, thereby making appropriate final injunctive and declaratory relief with respect

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1   to the class as a whole. Indeed, this action is particularly suited for class certification because a

2   central allegation in the case is that the Plaintiff Class is harmed and/or threatened by

3   Defendants' unconstitutional policies, practices, acts and omissions pertaining to ICE's practice

4   of shackling all members of Plaintiff Class without conducting any individualized determination

5   of the need for such restraints, and have also denied members of the Plaintiff Class an

6   opportunity to contest the shackling decision before an independent decision-maker. Further,

7   class certification is appropriate because class actions for declaratory or injunctive relief help

8   avoid mootness and facilitate enforcement of judgments. The members of the Plaintiff Class are

9   entitled to declaratory and injunctive relief to end Defendants' unconstitutional policies and

10  practices concerning the shackling of immigration detainees in San Francisco Immigration Court.

11                              **STATEMENT OF FACTS**

12          36.    ICE shackles all detainees who appear in immigration court in San Francisco –

13  including refugees fleeing persecution and torture in their native countries, the elderly, and the

14  physically and mentally disabled – without conducting an individualized determination of the

15  need for shackles.

16          37.    The use of shackles for detainees' court appearances is not limited to San

17  Francisco, but it is also not a nation-wide practice. It is, however, a consistent practice within

18  the San Francisco Immigration Court.

19          38.    ICE's blanket shackling practices cause substantial harm to the Named Plaintiffs

20  and the Plaintiff Class (as defined above). This harm includes physical pain and discomfort,

21  embarrassment and humiliation, mental and emotional distress, and a sense that the detainee is

22  being misjudged to be an exceptionally dangerous person. Immigration detainees consistently

23  describe their experience of shackling as humiliating, embarrassing, and unfair. They feel that

24  being forced to wear shackles falsely portrays them as serious and violent criminals. Many

25  comment that they are treated like "animals." Common sentiments expressed by detained

26  immigrants regarding the mandatory use of restraints include, "They treat us like we're nothing.

27  We're people. We're not going to hurt anyone."

28

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

39.     Many immigration detainees seek asylum or other relief related to abuse by foreign governments or private parties.  For detainees who have suffered such abuse, the imposition of shackles often reignites prior traumatic experiences and causes independent injuries.

40.     In addition to the physical and psychological injuries caused by in-court shackling, the practice also impedes an individual's mental acuity, confidence, and energy necessary to participate fully and fairly in immigration proceedings.

41.     The mandatory use of in-court shackles for all detained immigrants also threatens the privacy and privilege of the attorney-client relationship, forcing detainees to disclose personal, sometimes humiliating, information within earshot of other detainees or otherwise risk withholding from their counsel information which could be crucial to their removal cases. Moreover, shackles inflict pain on detained immigrants when they attempt to review and/or sign documents presented to them, to scratch an itch or wipe away tears.  Shackles also prevent detainees from raising their hands to be sworn in before providing testimony, gesturing while testifying, communicating to counsel during proceedings, and taking notes during the course of a proceeding where they may be representing themselves.

**Immigration Detainees As a Class Are Not Likely To Pose a Security Threat in Court**

42.     ICE runs the largest civil detention program and supervised release program in the country, with more than thirty-one thousand immigrants in detention at more than three hundred facilities throughout the nation.

43.     Immigrants who are brought to ICE's attention by a local law enforcement agency may not have been convicted of a crime.  Under a new federal immigration program implemented in 2008, ICE receives the fingerprints of all individuals who have been booked at a county jail, regardless of whether they have actually been convicted of a crime (or claim to be the victim of the crime).  Others may have completed their criminal sentence or have been convicted of a minor offense when they are placed on an immigration hold.  Such individuals may be denied bond by ICE agents—and therefore become immigration detainees subject to mandatory in-court shackling—even if an immigration judge later decides to grant bond.

3702243_22.DOC

44.     The in-court use of shackles is reserved for detained immigrants, and is a requirement for all detained immigrants, even those whose detention may be due to a financial inability to post bond.  Thus, identical immigration and criminal backgrounds may lead to shackling for an indigent immigrant, but not for an immigrant who posts bond.  In this way, shackling for in-court proceedings is a condition of immigration detention for immigrants appearing in San Francisco Immigration Court.

45.     The reasons immigration detainees are in detention vary.  Individuals may be detained because of non-violent crimes, such as forgery or drug possession, which may result in mandatory detention.  In fact, an October 2009 ICE report indicates that approximately 95% of immigration detainees were not violent felons. *Immigration Detention Overview and Recommendations*, at 2; available at http://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf (last viewed August 8, 2011).  Individuals may be detained pending adjudication of an application for relief such as asylum, a petition under the Violence Against Women Act, or cancellation of removal based on family hardship.  In the vast majority of cases, the reasons purportedly justifying immigration *detention* are not sufficient to justify *shackling* to prevent in-court violence or disruption or risk of flight.  Even detainees with convictions for violent crimes are entitled to an individualized determination to consider whether their prior convictions and other conduct require the use of any restraints in court, much less hard metal shackles on their wrists, waists, and ankles.

**Removal Proceedings for Detained Immigrants**

46.     Once ICE determines to place an individual into removal proceedings, the next step is to determine whether they should be released or detained.  This initial determination, as well as any initial bond amount, is made by an ICE agent rather than a neutral magistrate.  Most immigration detainees processed by ICE in San Francisco do not have access to an immigration judge for the purpose of seeking review of ICE's bond determination for two or more weeks.

47.     Adult immigrants who are denied bond or unable to post bond are housed at either a federal immigration facility or a facility with which immigration authorities contract to house ICE detainees.  In Northern California, there are no facilities dedicated to housing solely

3702243_22.DOC
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    immigration detainees.  As a result, adult detainees are housed in criminal facilities, including

2    Sacramento County Jail, West Contra Costa County Detention Facility, and Yuba County Jail.

3         48.     All detainees appear at master calendar hearings, which are analogous to

4    preliminary hearings in criminal cases.  Many detainees have access to bond hearings in which

5    they can seek release on bond for an amount lower than was granted by the ICE agent or can seek

6    bond from an immigration judge if the ICE agent denied bond.  Detainees also appear at individual

7    merits hearings – during which detainees often give testimony to determine whether the particular

8    detainee is eligible for relief from removal, such as asylum.  Post-removal order bond hearings are

9    also available to detained immigrants in the event of a lengthy appeal process or if the government

10    is unable to effectuate the individual's removal in a reasonable amount of time.

11         49.     Immigration detainees appearing for any of these types of hearing in San Francisco

12    Immigration Court are required to appear in full shackles which include ankle and wrist restraints.

13    Wrist restraints are connected to a chain around the detainee's waist with about four inches length

14    of chain between the waist chain and wrist restraint.

15         50.     Many detainees are in custody for months, and they may have numerous court

16    appearances – during each of which they are shackled.  According to ICE statistics, the average

17    length of stay for an ICE detainee was over 30 days in fiscal year 2008, and some detainees

18    remain in custody for a year or more. *See Id.* at 6.  Adult detainees are detained until they are

19    released on bond, granted affirmative relief from removal (and any appeal by the government is

20    denied, which can take years), voluntarily depart or are removed from the country following an

21    order of removal and any appeals of that order.

22         51.     Detainees who appear in San Francisco Immigration Court are bused from a

23    detention center located outside of San Francisco.  In many instances, detainees are housed as far

24    away as Yuba County, California, which is more than one hundred and twenty miles from the San

25    Francisco Immigration Court.  When detainees have court appearances, they often are awakened

26    as early as 2:00 a.m. and shackled in preparation for transport.  They remain shackled as they

27    await the arrival of their bus and for the duration of the journey to San Francisco Immigration

28    Court.  Upon arrival at the courthouse, detainees are taken to a secure room and unshackled while

1    they await their court hearing. Detainees are then re-bound and taken into the courtroom in

2    shackles for their immigration court hearings. They remain shackled during the entirety of the

3    proceedings. After their court hearings, detainees may be taken to a secure room again and

4    unshackled to await their return transport to the detention facility. Before beginning their

5    transport back to the detention facility, the detainees are re-shackled and remain in shackles during

6    the entire return trip to the detention facility. In many instances, detainees are shackled for ten to

7    twelve hours in a single day.

8       52.    ***Master Calendar Hearings.*** At master calendar hearings, detained immigrants are

9    often chained to one another, in what is euphemistically called a "daisy-chain" – a metal chain or

10    seatbelt-style restraint fastened around each detainee's waist, connected to his or her wrists, and

11    linked to the adjacent detainee. Additionally, each detainee's ankles are shackled together.

12    Detainees often are seated four to a bench and remain handcuffed together throughout the court

13    proceedings. The various shackles restrict the detainees' mobility, causing pain and discomfort if

14    they need to review or sign required documents and preventing them from taking notes during

15    their hearing, shifting their leg positioning while seated, gesturing, or simply placing their hands in

16    their laps.

17       53.    Detainees who are represented by counsel must remain handcuffed to other

18    detainees while their attorney stands next to them in the gallery and attempts to whisper

19    confidential, attorney-client privileged information. This information is easily overheard by the

20    persons to whom they are handcuffed, who are, at most, one foot away. This practice is

21    particularly problematic for detainees who have grounds to seek asylum because they may, for

22    example, fear persecution based on their HIV status, gender (including having been the victim of

23    domestic violence in their native country), sexual orientation, gender identity, or other protected

24    grounds. Because they are shackled to other individuals, such detainees are forced either to

25    disclose this information in front of others, causing humiliation and emotional distress, or to

26    withhold this information from their counsel, thereby prejudicing their ability to fully present their

27    cases.

28

3702243_22.DOC

54.     When the immigration judge calls a detainee's case during his or her master calendar hearing, the detainee is generally not permitted to approach his or her counsel's table. The only way the attorney and detainee can consult during the proceeding is if the attorney requests a moment to walk back to the gallery to speak with his or her client—but within earshot of other detainees.

55.     A detainee who does not have counsel to explain the proceedings to him or her may not know the disposition of his or her case. This is because it is often impossible to clearly hear the judge from where the shackled detainees are situated in the gallery. If the detainee is asked to speak, his or her response might not be recorded, thereby precluding a complete record on appeal. ICE agents and/or private security with whom ICE contracts are armed with guns and other weaponry and oversee the gallery at all times.

56.     ***Bond and Individual Merits Hearings.*** Detainees are shackled during their bond and individual merits hearings as well. During these hearings, armed ICE agents and/or security contractors are again present in the courtroom. While detainees typically are not shackled to other detainees during bond and individual merits hearings, each detainee's ankles are shackled together and their wrists are shackled to a metal chain or seatbelt-style restraint fastened around their waists such that they cannot take notes, sign or review required documents without discomfort, present evidence, use body language to help communicate their stories, or gesticulate for emphasis.

57.     This practice is particularly problematic for detainees who do not have the benefit of counsel to advocate and clarify on their behalf and for detainees who are not fluent in English or have difficulty conveying their testimony solely through words. Even worse, when a detainee is unrepresented, the shackles hinder the detainee from effectively presenting a case, inhibiting his or her ability to manipulate important papers to present to the judge, read materials that have been distributed to the detainee, or even to make a basic gesture to demonstrate a point about which the detainee is testifying.

58.     Even when counsel is present, detainees cannot do something as basic as jot notes to counsel or put on their eyeglasses. They cannot gesture while testifying, brush their hair aside, attend to an itch, or wipe a tear as they plead for their release on bond or for the merits of their

1   case. Indeed, when individual detainees are sworn in to give testimony in their own defense, the

2   shackles prevent them from raising their right hands, while they watch court interpreters and

3   witnesses take the oath with hands held high.

4        59.    Whether or not detainees are represented, shackles painfully interfere with their

5   ability to participate in their own proceedings, make them more nervous and less confident, and

6   compound the physical pain, mental distress, humiliation, and confusion that detainees experience

7   from being unjustifiably shackled.

8        60.    Adult detainees are shackled regardless of the effect of such shackling on their

9   mental state or physical condition. Thus, even asylum applicants, who may have endured torture

10  or abuse involving restraints and are at severe risk of re-traumatization, are shackled. Detainees

11  are shackled for the duration of their bond and individual merits hearings. In some instances,

12  individual merits hearings can last hours or extend over the course of several days. During this

13  time, the detainee is shackled the duration of each courtroom appearance and despite the

14  consistent presence of ICE agents and/or private security personnel in the courtroom.

15       61.    Defendants' failure to make an individualized determination whether in-court

16  shacking is necessary for each detainee is particularly egregious where the detainees have already

17  endured hours of shackling during transport and are understandably anxious given what is at stake

18  for them and their families. For instance, a detainee's appearance before an immigration judge

19  determines whether he or she will be permitted to remain in the United States (where spouses,

20  children, and other relatives may reside). If the detainee loses his or her immigration case, he or

21  she may face removal to a country where he or she has not lived since he or she was an infant and

22  where he or she may not know anyone, or he or she may face persecution, torture, or even death.

23  **EOIR'S Complicity in Constitutional Violations**

24       62.    ICE has claimed responsibility for immigration courtroom security pursuant to a

25  1988 memorandum titled "Operating Policies and Procedures Memorandum 88-9: Courtroom

26  Security." In this memorandum, EOIR purports to delegate its authority for courtroom security to

27  the INS, the predecessor entity to ICE. This memorandum states that ICE (then INS) will have

28  "primary responsibility" for providing security in immigration court.

63. EOIR, which claims to have delegated oversight for courtroom security to ICE, has refused to fulfill its legal obligations by allowing ICE to shackle all immigration detainees for court appearances without an individualized determination as to a detainee's threat of flight, violence or disruption in the courtroom.

64. While the Constitution requires judges to make determinations about the need for, and less restrictive alternatives to, the use of restraints in the court room in criminal cases, EOIR has refused to exercise its legal responsibility to regulate the conduct of immigration court hearings and safeguard the due process rights of detainees appearing in its courtrooms. EOIR has abdicated authority to ICE, despite the fact that ICE also functions as the prosecutor in immigration cases and therefore (unlike marshals or bailiffs in criminal cases) may benefit from conditions that make detainees appear untrustworthy and lacking credibility, such as appearing in shackles typically reserved for only the most dangerous and disruptive criminal defendants.

65. Letters to DHS and EOIR in 2010 and 2011 detailing these unconstitutional practices have been unsuccessful in bringing about any remediation. Despite being informed of the wide ranging nature of ICE's unlawful shackling practices, DHS and EOIR have refused to remedy ICE's ongoing violations of immigration detainees' constitutional rights.

## ALLEGATIONS OF NAMED PLAINTIFFS

**Uelian De Abadia-Peixoto**

66. Plaintiff Uelian De Abadia-Peixoto is a 35-year-old woman currently in immigration custody in Yuba County. She is a native and citizen of Brazil. Prior to being placed in custody, Ms. De Abadia-Peixoto lived in South San Francisco, CA with her then-five-year-old son, Fabricio, Jr.

67. Ms. De Abadia-Peixoto received a Notice to Appear commencing her removal proceedings on January 4, 2010, and charging her with removability on the grounds that she entered the United States without inspection.

68. Ms. De Abadia-Peixoto's immigration case was assigned to the San Francisco Immigration Court in April 2010 and remains pending there. Her next immigration hearing is scheduled for September 16, 2011.

1     69.    Ms. De Abadia-Peixoto has been in immigration custody in northern California

2 since about January 2011. She was not considered for release on bond and has not received a

3 bond hearing in San Francisco because the government alleges she is subject to mandatory

4 detention under 8 U.S.C. § 1226(c) based on a prior controlled substances conviction.

5     70.    Ms. De Abadia-Peixoto has been placed in metal hand and leg restraints for travel

6 to and participation in immigration court proceedings in San Francisco on about five occasions.

7 On one of these occasions, she was chained to other immigration detainees.

8     71.    For every immigration court hearing in San Francisco she has attended since

9 January 2011, Ms. De Abadia-Peixoto has appeared in full shackles—ankle and wrist restraints

10 and a belly chain.  In the event she has to testify, she cannot raise her hand to be sworn in.

11     72.    As a result of previous injury, Ms. De Abadia-Peixoto has plastic and steel plates in

12 her knees, legs, and feet. The shackles used during transportation and in-court proceedings

13 aggravate her previous injury and current medical condition. In one instance, the use of metal

14 restraints led her to cry in pain. The guards, however, refused to move them and afterwards, her

15 legs were bruised and swollen. On or about June 19, 2011 she asked the nurse at Yuba County if

16 she could be provided pain medication to dull the effect of the chains on a future bus ride.

17     73.    A domestic violence survivor, Ms. De Abadia-Peixoto's injury from being shackled

18 is intensified by the memories it raises of her having been bound and raped by her abusive

19 husband and his brother many years ago.

20     74.    Ms. De Abadia-Peixoto has limited mobility due to previous injuries and she has no

21 history of violence or disruption in court or in custody. She would pose no threat to the safety and

22 security of the courtroom or risk of flight if allowed to appear without physical restraints.

23     75.    Ms. De Abadia-Peixoto feels that by forcing her to appear during her court

24 proceedings in shackles, Defendants "treat her like nothing," and "treat her like a violent

25 criminal."

26

27

28

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**Esmar Cifuentes**

76.     Plaintiff Esmar Cifuentes is a 39-year-old man currently in immigration custody in Yuba County. He is a native and citizen of Guatemala. Prior to being placed in custody Mr. Cifuentes lived in San Rafael, California.

77.     Mr. Cifuentes received a Notice to Appear commencing his removal proceedings on or about May 5, 2011. He was placed in ICE detention on or about May 5, 2011. An immigration judge denied Mr. Cifuentes bond on the grounds that he was a danger to the community because of several incidents of driving under the influence. Mr. Cifuentes's next immigration hearing is scheduled for August 16, 2011 and he is seeking relief through cancellation of removal based on hardship to his U.S. citizen children.

78.     Mr. Cifuentes has been placed in metal hand and leg restraints for travel to and participation in immigration court proceedings in San Francisco on about three occasions. On one of these occasions, he was chained to other immigration detainees in such a fashion that he could not speak confidentially with a consulting attorney.

79.     For every immigration court hearing he has attended since May 2011, Mr. Cifuentes has appeared in full shackles—ankle and wrist restraints and a belly chain. As a result of these shackles, during his bond hearing, he was not able to raise his hand to be sworn in to testify.

80.     Several years ago, Mr. Cifuentes cut his foot badly and developed permanent nerve damage. Due to this injury, Mr. Cifuentes experiences intense pain when he is shackled for immigration court appearances. After traveling to and appearing at his bond hearing, he had bruises and marks that were visible for three days. His foot falls asleep during court proceedings due to the shackles, causing him discomfort, distracting him from the proceedings, and negatively impacting his ability to concentrate and answer questions. The forced lack of movement from shackling also leads to body aches and leaves Mr. Cifuentes feeling confused and punished in court. In response to requests by Mr. Cifuentes, agents have ignored him or refused to adjust the shackles.

3702243_22.DOC

1    81.    Mr. Cifuentes has no history of violence or disruption in court and would pose no

2    threat to the safety and security of the courtroom or threat of flight if allowed to appear without

3    physical restraints.

4    82.    Mr. Cifuentes feels "humiliated with the chains especially when I got to court and

5    people see me and feel like I did something wrong." He feels like it is "punishment" and worries

6    that when "my family comes to see me . . . my children might think I did something evil like kill

7    somebody."

8    83.    Shame and discomfort caused by the use of in-court shackles undermine Mr.

9    Cifuentes's ability to participate in his own hearing. In his words, "Sometimes they ask questions

10   and I don't even know how to answer because I'm so embarrassed."

11   84.    Mr. Cifuentes's hearing scheduled for August 16, 2011 is a merits hearing. If his

12   application for cancellation of removal is denied, he plans to appeal the decision to the Board of

13   Immigration Appeals (BIA) and, if necessary, the Ninth Circuit Court of Appeals. Even if his

14   application is granted, the government could choose to appeal the decision to the BIA, during

15   which time Mr. Cifuentes could remain detained, although he would be entitled to another bond

16   hearing before an immigration judge based on changed circumstances. Pursuant to Ninth Circuit

17   case law, he will also be entitled to seek another bond hearing before an immigration judge if the

18   court of appeals stays his removal pending appeal of an adverse BIA order.

19   **Pedro Nolasco Jose**

20   85.    Plaintiff Pedro Nolasco Jose is a 32-year-old transgendered woman currently in

21   immigration custody in Yuba County. She is a native and citizen of Mexico. Prior to being

22   placed in custody, Ms. Nolasco lived in Santa Rosa, California.

23   86.    Ms. Nolasco received a Notice to Appear on or about May 20, 2011, commencing

24   removal proceedings against her on the grounds that she entered the United States without

25   inspection.

26   87.    An immigration judge denied Ms. Nolasco bond on the grounds that she was a

27   danger to the community because of multiple incidents of driving under the influence. Ms.

28   Nolasco's next hearing is scheduled for September 9, 2011 where she will pursue her application

1  for a U-Visa, available for crime victims. If unsuccessful, she may pursue an asylum claim based

2  on fear of persecution due to her transgender identity.

3    88.    Ms. Nolasco has been placed in metal hand and leg restraints for travel to and

4  participation in immigration court proceedings in San Francisco on about five occasions.

5    89.    For every immigration court hearing since May 2011, Ms. Nolasco has appeared in

6  full shackles—ankle and wrist restraints and a belly chain. Every time she is subjected to

7  shackling, Ms. Nolasco suffers from raised veins and swelling in her ankles, with accompanying

8  pain. She finds it difficult and uncomfortable to walk.

9    90.    When appearing in court with shackles, Ms. Nolasco feels ashamed and believes

10  that the shackles inaccurately suggest that she is a serious and violent criminal. When her case is

11  called, Ms. Nolasco finds it difficult to look at the immigration judge's face due to shame and

12  embarrassment caused by being in shackles, and instead walks with her head down as she

13  approaches counsel table. Shackling causes Ms. Nolasco physical discomfort that is distracting

14  when she is in court. The shackles undermine her confidence in court and make her more nervous

15  than she would otherwise be, making it impossible for her to participate and testify to her fullest

16  ability.

17    91.    Ms. Nolasco has no history of violence or disruption in court or in custody and

18  would pose no threat to the safety and security of the courtroom or threat of flight if allowed to

19  appear without physical restraints.

20  **Mi Lian Wei**

21    92.    Mi Lian Wei is a 38-year-old woman in immigration custody in Sacramento

22  County. She is a native and citizen of the People's Republic of China. For several years prior to

23  being in custody Ms. Wei lived in northern California, including San Francisco.

24    93.    Ms. Wei received a Notice to Appear commencing her removal proceedings on or

25  about June 8, 2011 and charging her with being an arriving alien without a valid entry document.

26  The government has taken the position that Ms. Wei is not entitled to a bond redetermination

27  hearing before an immigration judge because she is an arriving alien within the meaning of 8

28  C.F.R. § 1003.19(h)(2)(i)(B).

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

94.     Ms. Wei has a pending asylum claim based on domestic violence she suffered in her marital relationship in China.  Ms. Wei's next immigration hearing is scheduled for September 30, 2011.

95.     Ms. Wei had been to court three times in shackles on her wrists, ankles, and waist. She complained to an ICE agent or private security guard overseeing the shackling and transportation of detainees that the chains were tight and the shackles later left marks where she had been restrained.  The agent told Ms. Wei that everyone had to have the shackles.

96.     Being forced to wear shackles makes Ms. Wei feel very unhappy and makes her "heavy-hearted."  In her court appearances thus far, she has not had to engage with the court, but she fears that since she has no attorney to represent her in court the shackles will significantly interfere with her ability to present her positions in her September 30 hearing.  Ms. Wei fears that being in shackles will make her nervous and intimidated and will make her appear to the judge as a "crazy old lady."  She fears that she will find it much more difficult to speak well and feel confident in shackles during the hearing on her asylum application.

97.     Ms. Wei has no history of violence or disruption in court or in custody and would pose no threat to the safety and security of the courtroom or threat of flight if allowed to appear without physical restraints.

### CLAIM FOR RELIEF
**(Violation of Due Process Clause of the Fifth Amendment
to the United States Constitution)
(Against All Defendants)**

98.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 97 above.

99.     Civil immigration detainees have a constitutional liberty interest in being free from physical restraints such as the hard metal shackles that are currently used on their legs, hands, and waists for immigration court proceedings.

100.    Defendants' policies and practices with respect to the shackling of detained immigrants in San Francisco Immigration Court violate Plaintiffs' rights to due process guaranteed by the Fifth Amendment to the United States Constitution.

3702243_22.DOC
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    101.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of

2    Defendants' policies and practices and are entitled to injunctive relief to avoid any further injury.

3    **RELIEF ALLEGATIONS**

4    102.    A class action lawsuit is the only reasonable means for adjudicating the

5    constitutionality of Defendants' policies and practices.  Given the time frame in which many

6    detainees' immigration cases are resolved, as well as the fact that many class members are

7    unrepresented by counsel, class members who are injured by Defendants' shackling policies and

8    practices may never have a means for preventing the harm they suffer.  As a result, Named

9    Plaintiffs seek to proceed with this case as a class action.

10    103.    Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs

11    alleged herein, and the declaratory and permanent injunctive relief sought in this action is the only

12    means of securing adequate and complete relief.  Plaintiffs are now suffering and will continue to

13    suffer irreparable injury from Defendants' blanket shackling of all detained immigrants as a

14    condition of their appearance in immigration court.

15    104.    Plaintiffs are imminently in danger of being shackled as a condition of participating

16    in their immigration proceedings.   Plaintiff Uelian De Abadia-Peixoto has a hearing scheduled

17    for September 16, 2011.  Plaintiff Esmar Cifuentes has a hearing scheduled for August 16, 2011.

18    Plaintiff Pedro Nolasco Jose has a hearing scheduled for September 9, 2011.  Plaintiff Mi Lian

19    Wei has a hearing scheduled for September 30, 2011.  The harm caused by this shackling is

20    irreparable.  There is no means of undoing the harm caused by such harm.  Injunctive relief is

21    therefore appropriate.

22    105.    An actual and substantial controversy exists between Plaintiffs and Defendants as

23    to their respective legal rights and duties.  Plaintiffs contend Defendants policies, practices,

24    conduct and acts alleged herein violate their constitutional rights.  Defendants contend the

25    opposite and have indicated their intent to continue engaging in the challenged conduct.

26

27

28

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.     Issue an order certifying this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.     Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

3.     Issue a judgment declaring that Defendants' policies and practices described herein violate Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States;

4.     Preliminarily and permanently enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from subjecting Plaintiffs to the unconstitutional policies and practices described herein, including the cruel, degrading, and unconstitutional practice of shackling detainees for in-court appearances without an individualized determination that such restraints are necessary, and issue injunctive relief sufficient to remedy the violation of Plaintiffs' constitutional rights;

///

///

-24-

3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1    5.    Grant plaintiffs their reasonable attorney fees and costs pursuant to the Equal

2  Access to Justice Act and any other applicable statute or regulation.

3    6.    Grant such other relief as the Court deems just and proper.

4

5  Dated: August 15, 2011                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
6
                                            By:
7                                              David J. Berger

8                                            LAWYERS' COMMITTEE FOR CIVIL
9                                            RIGHTS

10                                           By:
                                              Paul Chavez
11

12                                           AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION OF NORTHERN
13                                           CALIFORNIA

14
                                            By:
15                                             Julia Harumi Mass

16                                           Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

-25-                                                3702243_22.DOC

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF