NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UELIAN DE ABADIA-PEIXOTO, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*,<br><br>　　　　　　　Defendants. | Case No.  CV 11-04001 RS<br><br>**CLASS ACTION**<br><br>**JOINT LETTER CONCERNING<br>DISCOVERY DISPUTES**<br><br>Magistrate Judge Kandis A. Westmore |

**CERTIFICATION PURSUANT TO STANDING ORDER**

Counsel for the parties to this action certify that they have met and conferred telephonically prior to filing this joint letter.

　　　　　/s/                                             　　　　　/s/                                       
Catherine E. Moreno                             Samuel Go
WILSON SONSINI GOODRICH & ROSATI    UNITED STATES
650 Page Mill Road                                 DEPARTMENT OF JUSTICE
Palo Alto, CA 94304                               Office of Immigration Litigation
                                                          P.O. Box 868,
PAUL CHAVEZ                                      Ben Franklin Station
LAWYERS' COMMITTEE FOR CIVIL RIGHTS   Washington, DC 20044
131 Steuart Street, Suite 400
San Francisco, CA 94105                       *Attorneys for Defendants*

JULIA HARUMI MASS, State Bar No. 189649
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111

*Attorneys for Named Plaintiffs and the Class*

I. **Introduction and Relevant Factual Background**

Plaintiffs served their first sets of written discovery on January 24, 2012. Defendants sought both a stay of discovery and an exception to that stay to take the deposition of class representative Esmar Cifuentes. Plaintiffs agreed to extend Defendants' discovery deadline 30 days and make Mr. Cifuentes available for deposition on Defendants' schedule. Thereafter, Defendants sought an additional stay of discovery of 45 days. Although Plaintiffs offered a shorter extension, Defendants filed a motion to stay discovery, which was denied, making Defendants' responses immediately due on April 4, 2012. Defendants served responses to Plaintiffs first sets of Requests for Admission (RFAs) and Interrogatories April 9. Defendants served their response to Plaintiffs' First Set of Requests for Production of Documents (RFAs) May 17 and began producing documents on a rolling basis thereafter. The production was Bates stamped, but there were gaps in the Bates numbered pages. Plaintiffs contended that Defendants' initial privilege log, served June 29, did not identify as privileged or otherwise account for the approximately 15,000 missing Bates-numbered pages. Defendants responded that these documents were nonresponsive and are not normally included in a privilege log. The parties continue to have differences regarding the nature and appropriate method of accounting for these documents.

The parties have met and conferred by telephone and corresponded via U.S. mail and electronic mail several times, including telephonic meet-and-confer calls on July 3, July 25, August 27, and October 15. On August 31, Plaintiffs lodged a motion to compel (which would have been filed but for the inclusion of information designated as confidential by Defendants) specifying five areas of concern, namely: (1) Defendants' refusal to produce responsive documents from outside San Francisco; (2) Defendants' refusal to search for and produce responsive documents created, obtained or maintained prior to January 2011; (3) Defendants' refusal to produce responsive documents created, gathered, or maintained by county jails who have custody of class members pursuant to Intergovernmental Service Agreements with Defendants; (4) Defendants' invocation of the law enforcement and deliberative process privileges; (5) Defendants' method of accounting for missing pages in their production and failure to produce legible, Bates-stamped copies of other documents. Also on August 31, Defendants filed a motion for protective order seeking to limit the geographic scope of discovery. That motion is currently set for hearing before this Court on November 1, 2012. Pursuant to this Court's standing order, the parties further met and conferred via telephone on October 15, 2012, with follow up electronic and written correspondence after October 15, 2012, to narrow the issues to be presented in this joint statement. Pursuant to the parties' negotiations, Defendants have agreed to conduct additional searches, produced additional documents, and made several revisions to their privilege log, including entries that Defendants believe explain the gaps in the Bates-numbered pages and that ensure that any illegible Bates stamps are specifically referenced in the privilege log. Plaintiffs contend that Defendants' additional production efforts are inadequate to fully respond to the pending discovery requests.

II. **Issues in Dispute**

Despite the parties' diligent efforts to meet and confer, they have been unable to come to resolution on the following topics.

1.  ***The time period for which documents responsive to RFP Nos. 2, 4, 6, 8, 10, 12, 14, 16, and 22 should be produced***.[1]

    **Plaintiffs' Position**

    Plaintiffs have propounded documents requests calling for the production of documents reflecting current and past policies or practices regarding the use of shackles, including communications to or from immigration judges regarding such policies or practices. *See* Ex. A, Request Nos. 2, 4, 6, 8, 10, 12, 14, 16, and 22. These records, for example, may show how the current challenged policies and practices came into existence; what individualized determinations, if any, were made under prior policies; the effectiveness of these policies in balancing the government's alleged security interests; and concerns raised by outside parties, or immigration judges regarding the consequences of shackling.

    During the parties' July 3, 2012 meet and confer teleconference, Defendants took the position that documents created prior to January 2011 were not relevant and that the requests were overly burdensome as to time frame.[2] Defendants agreed, however, to investigate whether documents created prior to January 2011 were reasonably accessible notwithstanding their relevance objection. While Defendants claim they have searched some data sources without regard to time frame, they have not responded to repeated requests to explain how far back those records go. Furthermore, Defendants admit that their searches for relevant ICE email records and DHS detainee complaint records only went back to 2010. The documents that have been produced as a result of Defendants' pre-2010 searches have not yielded nearly the volume of documentation that Plaintiffs would expect. For example, excluding 37 pages of pre-2010 documents attached to post-2010 emails, the only pre-2010 documents that have been produced by defendant DHS are 20 pages of documents solely relating to the Named Plaintiffs' specific immigration cases.[3]

    *Plaintiffs' final compromise position*: Plaintiffs offered to limit the time frame of these requests to the period January 2007-present, and the period 1983-1993 (which represents a period of five years before and five years after the 1988 delegation of authority that granted authority for courtroom security to the then-INS).

---

[1] The geographic scope of these requests is the subject of the pending motion for protective order before this court.

[2] Defendants also implied that the January 2011 production backstop was warranted because that is when Defendants claim to have first received a letter from Plaintiffs' counsel indicating impending litigation and, in response, initiated a litigation hold. This argument borders on the frivolous. The basis for relevance under the Federal Rules is not the date of any single party's decision to issue a litigation hold memo to its employees. Moreover, counsel for Plaintiffs have been communicating with Defendants regarding their unconstitutional shackling practices since as early as January 2009.

[3] While Defendants produced a limited number of EOIR documents prior to 2011, the only DHS documents produced in response to the July 3 meet and confer consisted of documents relating to the Named Plaintiffs.

2

**Defendants' Position**

Plaintiffs seek nation-wide discovery regarding past and current policies and practices concerning the use of restraints in immigration proceedings. The geographic and temporal scope of those requests is addressed in the Government's Motion for Protective Order. However, Defendants have in fact conducted searches for such documents, as relevant to San Francisco. ICE conducted searches in its Enforcement and Removal (ERO) nationwide database concerning policies without a date restriction and have produced all responsive documents. ICE ERO San Francisco also searched on-site electronic records dating back to January 2010, producing all non-privileged, responsive documents. January 2010 is a reasonable cut-off date because Plaintiffs first wrote to Defendants seeking information regarding the restraints policy and threatening future litigation, by a year. EOIR has similarly conducted searches for responsive documents. EOIR searched all emails in onsite electronic databases without a date restriction. At the request of Plaintiffs, EOIR also contacted all San Francisco immigration judges to determine if any complaints relating to the use of restraints had been raised. No judge recalled complaints relating to adult detainees. Further, EOIR searched all onsite paper records without a date restriction. All responsive documents have been produced.

Plaintiffs also seek discovery regarding past restraints policies and practices within five years of 1988, when the then Immigration and Naturalization Service (INS) and EOIR agreed to delegate primary authority for immigration courtroom security in detained cases to the INS. A search of on-site electronic and paper records at EOIR's headquarters and the San Francisco Immigration Court produced nothing responsive other than the memorandum of understanding (MOU) between INS and EOIR in 1988, which has been produced. Off-site records somewhere in the United States are unlikely to exist, and finding responsive documents would require review of potentially huge amounts of paper documents by hand. Such a search is unduly burdensome, particularly in light of the fact that on-site electronic and paper record searches have turned up just one document. Moreover, even if such searches discover responsive documents, they would likely be covered by the deliberative process privilege, as they would have been part of the predecisional process leading up to the MOU between EOIR and the INS. Accordingly, Defendants have satisfied their burden concerning the period of 1983 to 1993.

2. ***Whether responsive documents, including complaints and medical records of immigration detainees in federal custody through intergovernmental service agreement (IGSAs) with Yuba, Sacramento and Contra Costa Detention Facilities should be produced.***

   **Plaintiffs' Position**

   Plaintiffs have requested documents relating to immigration detainees' requests to be released from shackles, complaints regarding the use of shackles during transportation, and any alleged harm caused by shackles, including medical reports or requests for medical treatment relating to the use of shackles. *See* Exs. A and B, Request Nos. 18, 19, 20, 21, 23 (first set), 33, 34, 35 (second set). During the parties' July 3 meet and confer, Defendants asserted that responsive documents that were generated or maintained by county jails housing federal detainees – or other contractors providing similar services – would be outside their possession, custody or control.

   Defendants have declined Plaintiffs' oral requests for copies of Defendants' applicable IGSA agreements with Yuba, Contra Costa and Sacramento. Instead, Defendants' assertion that such documents are outside their "possession, custody or control" is just that—an assertion

3

without any justification or evidence to support it.[4] The requirement that a party produce requested documents and things which are in their possession, custody or control does not require "actual possession of the requested documents." *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995). Instead, a court may order a party "to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Id*. "The term 'control' includes the 'legal right of the producing party to obtain documents from other sources upon demand.'" *Id.* (finding it "inconceivable" that a municipality could lack the ability to obtain medical records conducted and maintained by a non-party and performed at its request).[5]

*Plaintiffs' final compromise position*: Defendants should be required to obtain all potentially responsive records gathered or maintained by third parties with whom it contracts for detention services, review them, and produce responsive documents.

**Defendants' Position**

Defendants have searched DHS records for documents related to complaints by immigration detainees regarding the use of restraints during appearances in San Francisco immigration court, or in the transportation to and from San Francisco for a reasonable time-frame. DHS searched records of sources that would yield those types of complaints compiled by the Joint Intake Center with no date restriction and identified no responsive documents. Defendants also searched DHS records of detainee complaints/requests made at Contra Costa, Sacramento, and Yuba counties' jails to ICE ERO officers during their weekly visits to the jails. Those searches date back to 2010 for Contra Costa, 2009 for Sacramento, and 2007 for Yuba. All responsive documents have been produced.

As for documents currently held by Contra Costa, Sacramento, and Yuba counties concerning complaints regarding restraints or medical records, these records are not within the custody, control, or possession of Defendants. In the Ninth Circuit "control is defined as the legal right to obtain documents on demand." *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). "The party seeking production. . . bears the burden of proving that the opposing party has such control." *Id.* "[P]roof of theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). Plaintiffs cannot satisfy this burden.

---

[4] Defendants may claim that the detention facilities will not provide medical records without a third party subpoena. But Defendants cannot simply rest on the knee-jerk refusal of a contractor to provide records in asserting that such documents are outside their "possession, custody or control". In fact, a publicly available copy of a previous IGSA agreement between Defendant DHS and Yuba County specifically provides that the detention center must "grant ICE access to any record in its possession . . . concerning any detainee held pursuant to this agreement." *See* http://www.co.yuba.ca.us/Departments/BOS/documents/agendas/2008/MG61421/AS61427/AS61430/AS61450/AI62572/DO62575/DO_62575.PDF) (site last visited October 22, 2012).

[5] Defendants appear to have produced only one document relevant to any of the above requests. That single document demonstrates how relevant the discovery sought is to Plaintiffs' case. The document reflects injuries sustained by a female detainee during transportation from immigration court in San Francisco to the detention facility in Yuba County, noting that her injuries were the result of the handcuffs and shackles she was forced to wear.

4

Even though Defendants maintain that they do not have possession, custody, or control over the jail's records, at Defendants request, each jail conducted additional searches of their complaint records for incidents related to ICE restraints. Yuba county jail conducted a search for responsive complaint documents created and maintained at the Yuba County jail of its records dating back to 2007, and through the ICE ERO compliance officer stationed at the facility. One responsive document was produced and four more responsive documents will be produced. Sacramento county jail conducted a search for responsive complaint documents created and maintained at the Sacramento county jail of its records without a date restriction and no responsive documents were found. Contra Costa county jail conducted a search for responsive complaint documents created and maintained at the Contra Costa county jail dating back to 2010 and no responsive documents were found. Searches prior to 2010 are not possible, as ICE only began to detain immigration detainees at that facility in 2010.

Responsive medical records in DHS' possession, custody or control will be produced, including those medical records created and/or maintained by the ICE Health Service Corp. As to medical records created and maintained by the Yuba, Sacramento and Contra Costa county jails, Defendants do not have possession, custody, or control over those records, and cannot as a matter of law produce those records. Second, Defendants do not create, maintain, or control the medical records maintained at the county jails for each detainee. The Defendants right to access those records is a limited one related to the medical care of the detainee.[6] They therefore do not have any legal right to demand medical records. *See Int'l. Union of Petroleum*, 870 F.2d at 1452.

Defendants' position is supported by case-law, both in this circuit and elsewhere. As a matter of law, "Plaintiffs have not established that Defendants have possession, custody or control of third party documents where Defendants are not in physical possession of the documents . . ., and where Defendants have no legal right to demand that these third parties provide Defendants with the documents." *MGA Entm't, Inc. v. Nat'l Prods.*, 2011 U.S. Dist. LEXIS 113557; *see Int'l. Union of Petroleum*, 870 F.2d at 1452; *Ashman v. Solectron Corp.*, No. 08-14330, 2009 U.S. Dist. LEXIS 57040, *11 (N.D. Cal. June 12, 2009); *cf. Hitachi, Ltd. v. Amtran Tech. Co*, 2006 U.S. Dist. LEXIS 52361 (observing legal right to obtain documents on demand, rather than just principal/agent relationship, is needed); *accord Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents" and the party does not have "access and the practical ability to possess documents not available to the party seeking them"); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993) (party "did not have custody or control" because "they could not order [third party] to surrender the [requested documents] to them").

Indeed, where, as here, a party seeks documents from a third-party not within the control of a party to the case, the appropriate vehicle to employ is a subpoena to that third-party. *See*

---

[6] Defendants' contracts with Contra Costa and Sacramento do establish any right to access or demand such documents. Defendants' contract with Yuba County grants ICE a limited right to inspect detainee records concerning detainee behavior, but such access is tied to review of whether Yuba County is complying with service agreement and does not grant Defendants any control, custody, or possession of the records. A separate provision permits access to health care records where such review is needed to determine whether off-site non-emergency medical treatment can be authorized by ICE. No other use of such information is contemplated by the contract. Indeed, were the contract to permit such access, it would be preempted by two federal laws precluding the release of detainee medical records without their consent, the Privacy Act, 5 U.S.C. § 552a(b), and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). *See* 42 U.S.C. § 1320d-2, *et. seq.*; 45 CFR § 164.512. Because no contract exists establishing a legal right to obtain Contra Costa, Sacramento, and Yuba counties' medical records, Defendants do not have custody, control, or possession of those documents.

*Shcherbakovskiy*, 490 F.3d at 138; *Chaveriat*, 11 F.3d at 1426; *Nosal v. Granite Park LLC,* 269 F.R.D. 284 (S.D. N.Y. 2010). This is so even if the party resisting production could hypothetically have secured these documents from a third-party if only it had "tried hard enough" or otherwise expended additional effort to request documents from other parties. *Chaveriat*, 11 F.3d at 1426; *accord Shcherbakovskiy*, 490 F.3d at 138.

In short, Defendants have produced, and will continue to produce, all responsive documents concerning complaints and medical records related to restraints that they have possession, custody, or control. Beyond that, they have in good faith asked Contra Costa, Sacramento, and Yuba counties to search records not in Defendants' possession, custody, or control for responsive documents, and those facilities have done so. Defendants were not required to do so, but nevertheless endeavored to cooperate with Plaintiffs to the best of their abilities. Should Plaintiffs want more documents, their remedy is to subpoena the relevant third party's directly.[7]

*3.     Whether documents subject to the deliberative process privilege should be produced.*

**Plaintiffs' Position**

Defendants have withheld nearly two dozen documents on the grounds of "deliberative process privilege." The deliberative process privilege can "permit[] the government to withhold documents that reflect[ ] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Hongsermeier v. Comm'r of Internal Revenue*, 621 F.3d 890, 904 (9th Cir. 2010) (internal quotation marks omitted); *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003). "To qualify for . . . the deliberative process privilege, a document must be *both* (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (internal quotation marks omitted). The privilege does not protect purely factual material and it does not protect communications made after a decision and designed to explain the decision. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975). The agency has the burden of showing the privilege applies and specifically what deliberative process is involved and the role in that process played by the documents at issue. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Furthermore, the privilege is a *qualified* one – "[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Fed. Trade Comm'n v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

Defendants have fallen far short of satisfying the procedural requirements for asserting the deliberative process privilege. First, they have failed to provide the required declaration or affidavit supporting their broad assertions of the privilege, and for this reason alone, their claim of privilege cannot be sustained. *See, e.g., L.H. v. Schwarzenegger,* No. CIVS-06-2042 LKK

---

[7] During discovery, Defendants inadvertently received a document from one of the jails protected by HIPAA, which does not permit the disclosure of medical records absent consent of the patient. *See* 42 U.S.C. § 1320d-2, *et. seq.*; 45 CFR § 164.512. That document is technically in Defendants' control, but cannot be produced until the amended protective order is entered by the Court.

GGH, 2008 WL 2073958, *7-8 (E.D. Cal. May 14, 2008) (explaining the declaration requirement and finding that defendants waived the privilege in failing to provide a declaration).

Similarly, the inadequacies of their privilege log doom Defendants' invocation of the privilege. Courts (and plaintiffs) must be able to determine how each document or section "fits into the deliberative process." *Cal. Native Plant Soc'y v. U.S. Envtl. Protection Agency*, 251 F.R.D. 408, 413 (N.D. Cal. 2008) (citation omitted). A proper privilege log, in contrast to the one here, should be quite detailed and include the decision or policy for which the document was prepared; "an index of documents, providing just basic information and a brief description, is inadequate even when accompanied by conclusory affidavits." *Id.*; *see also id.* at 415. Here, Defendants have not provided sufficient information that might enable Plaintiffs, or this Court, to determine whether particular withheld or redacted documents are predecisional or deliberative. *See* Ex. C.

In particular, Defendants have in numerous instances failed to point to any specific decision or policy to which any withheld (or even redacted) document might relate. An example is illustrative: DHS 017467-71 was withheld for the deliberative process privilege, yet the only information given is the fact that the document is a letter, the title of the author, the date, the notation "personal information, file number, and internal processing and routing sheets", accompanied by the boilerplate language that it "[c]ontains internal predecisional communications and deliberations." *See* Ex. C at 42. This falls far short of demonstrating why this particular document is predecisional. Simply reciting the definition of the privilege itself does not suffice. Neither Plaintiffs nor this Court can divine whether or not this letter contains opinions, recommendations, or advice that would ultimately undermine the agency's ability to perform its functions.

Moreover, even if Defendants had met their burden and made the required threshold showing, the privilege would be overcome because the need for accurate fact-finding overrides the government's interest in nondisclosure. While Defendants have provided insufficient information to allow a document-by-document analysis, what is clear is that Defendants' deliberative process – in particular, how Defendants have decided whom to shackle – is at the heart of this suit. The government's role in the litigation is thus similar to that in *North Pacifica*, where "the decisionmaking process 'is not swept up into the case, it *is* the case.'" 274 F. Supp. 2d at 1124 (quoting *United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989)). Documents that are relevant to Plaintiffs' claims cannot be withheld on the basis of the deliberative process privilege and must be produced.

*Plaintiffs' final compromise position*: Plaintiffs have repeatedly asked Defendants to provide sufficient information to allow Plaintiffs and the Court to assess the invoked privilege. Defendants' ongoing failure to do so, their failure to comply with the requirements for the invocation of the privilege, and the centrality of Defendants' deliberations about policies regarding the impositions of restraints in court, compel Plaintiffs to request that Defendants be deemed to have waived the privilege and ordered to produce all redacted material related to the use of restraints on immigration detainees for which Defendants have invoked the deliberative process privilege.

**Defendants' Position**:

In the Ninth Circuit, the deliberative process privilege protects documents from discovery where the documents are "predecisional" and "deliberative," meaning documents "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997). "A predecisional document is part of the 'deliberative process,' if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* In order to invoke the privilege, a party must provide the court sufficient factual matter demonstrating "how each document fits into the deliberative process" and "point to the decision or policy for which the agency prepared the document." *See Cal. Native Plant Soc'y v. EPA*, 251 F.R.D. 408, 413 (N.D. Cal. 2008). A privilege log can satisfy this burden. *See, e.g.*, *Hongsermeier v. Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010).

Consistent with this framework and the Court's standing order, Rule 19, Defendants provided Plaintiffs with a privilege log listing, among other things, what documents have been withheld pursuant to the privilege.[8] *See* Ex. C. Each entry on the privilege log invoking the deliberative process privilege lists the relevant bates numbers, dates the document was prepared, its author and source, and description as to why the document is privileged. *See id.* at 6, 31-32, 42, 45-46, 47, 50, 51-53. Each of these documents concerns discussions among government officials regarding what the ICE's final restraints policy should be, how the policy should be modified or implemented in light of ongoing litigation and changing security needs, and draft documents created during the process of modifying, finalizing or implementing the policy. *Id.* These are precisely the sorts of predecisional deliberations the privilege is meant to protect. *See, e.g.*, *Hongsermeier*, 621 F.3d at 904; *Maricopa Audobon*, 108 F.3d at 1094; *Newport Pac., Inc. v. County of San Diego*, 200 F.R.D. 628, 637 (S.D. Cal. 2010).

Should the Court find the log insufficient, Defendants are willing to submit a declaration explaining why the privilege applies, or the documents specified in the privilege log for *in camera* review.[9] Courts in this Circuit employ both approaches. *Compare Desert Valley*

---

[8] The privilege log filed here includes references to law enforcement privileged information. Defendants agreed to produce such information once the amended protective order is entered by the court. Should the Court ask, Defendants are willing to produce a new log removing such information.

[9] Defendants have not filed a declaration with the court because the Court's Standing Order precludes the filing of declarations with this Joint Letter, s*ee* Standing Order, Rule 12, but can produce a declaration should the Court find the privilege log inadequate and prefer a declaration to *in camera* review. In any event, Plaintiffs are wrong to suggest that the failure to provide them with a declaration along with a privilege log somehow waives the privilege. *See* Motion to Compel at 15-22. In the normal course, "[t]he reason for requiring [a declaration] is to provide the court with the necessary information to weigh the competing interests" in a motion to compel. *Bernat v. City of California City*, 2010 U.S. Dist. LEXIS 111538, *7 (E.D. Cal. 2010). Thus, while the failure to submit a declaration in opposition to a motion to compel might waive the privilege in some circumstances, the failure to submit a declaration at some earlier hypothetical point does not. *See, e.g. Hajro v. United States Citizenship & Immigration Servs.*, 832 F. Supp. 2d 1095, 1111-14 (N.D. Cal. 2011); *In re McKesson*, 264 F.R.D. 595, 602-03 (N.D. Cal. 2009). In any event, where documents are produced for *in camera* review, a declaration is not required. *Coalition for a Sustainable Delta v. Koch*, 2009 U.S. Dist. LEXIS 100728, *15 (E.D. Cal. Oct. 15, 2009).

*Painting & Drywall, Inc. v. United States*, No. 10-cv-490, 2012 U.S. Dist. LEXIS 145771, *15-16 (D. Nev. Oct. 9, 2012) (stating that where privilege log is inadequate, parties should submit documents for *in camera* review) *with Cal. Native Plant Soc'y*, 251 F.R.D. 408, 413 (requiring declaration filed at time opposition to motion to compel is filed).

**4. Whether Defendants should be required to produce a sample of documents that Defendants claim are "non responsive" so that Plaintiffs can verify that documents withheld on the basis of non-responsiveness do not contain relevant, responsive material.**

**Plaintiffs' Position**

The problems with Defendants' production have been too numerous to count. Without burdening the Court with the full nature of shortcomings in the form of Defendants' production, suffice it to say that the government's production spans 18,251 Bates pages, yet 15,289 Bates pages are completely missing. Excluding one large gap of 12,835 pages, there are 2,454 missing pages (or "gaps") interspersed throughout Defendants' production. These gaps have been unaccounted for in any of Defendants' various privilege logs or anywhere else. Defendants' counsel has suggested on several occasions that these missing pages were nonresponsive documents (for example, during the parties' July 3, 2012 meet and confer). The facts, however show this assertion to be unreliable at best. On August 31, 2012, Defendants produced 106 pages of documents that were previously "gaps" in the production. These documents were plainly responsive to Request Nos. 1, 2, 3, 4, 9, 10, 11, 12, 17, 18, 19, 20, 21, 22, 23, and 24 of Plaintiffs' first set of document requests.[10]

Because of Plaintiffs' substantial doubts as to whether the 2,400 "gaps" in the production are truly populated with only non-responsive material, they have requested that Defendants produce a sample of pages from the "gaps" so that Plaintiffs can review them to ensure that responsive material is not being improperly withheld. Despite being unable to articulate any burden associated with Plaintiffs' request, Defendants have flatly refused to do so. Given the substantial expense and inconvenience Plaintiffs have suffered as a result Defendants' flawed and disorganized production, Defendants should be ordered to comply with Plaintiffs' modest request.

*Plaintiffs' final compromise position*: Plaintiffs request that Defendants re-confirm, in writing, that they have reviewed the gaps in the production and verify that no responsive documents are being withheld as "non-responsive." Plaintiffs further request that Defendants produce a sample of 500 pages (based on Bates numbers randomly selected by Plaintiffs or the Court) previously deemed "non responsive" which appeared as gaps in Defendants' production so that Plaintiffs can verify Defendants' assertion that the remaining gaps in the production do not contain responsive information.

---

[10] For example, the documents produced on August 31, 2012 included DHS 018331-32 (previously gap in production at DHS 002908-9); DHS 018303-4 (previously gap in production at DHS 2310-11); DHS 018313-20 (previously gap in production at DHS 002379-96). Each of these documents reflects information about the shackling policies in San Francisco.

**Defendants' Position**

In response to the Plaintiffs' discovery requests, Defendants conducted searches of their records using broad search terms in their database software. This process produced a large number of non-responsive documents that were nevertheless bates numbered prior to review. Accordingly, of the 18,251 bates numbered pages, the majority are non-responsive. For example, Bates numbers DHS4174-16791 are columns on a spreadsheet that were printed out and bates numbered as individual columns. Likewise, many such non-responsive documents now referenced in the privilege log were found through broad searches that referred to the names of Plaintiffs, some of which are quite common. *See, e.g. id* at DHS4002-4020. Other documents are duplicates. *Compare, e.g., id.* at 2180-2194; 2471-2475; 2476-2480; 2517-2531; 2540-2554; 2702-2716; 2738-2752; 2982-2996; 3066-3080; 3571-3585; 3608-3622; 3648-3662; 4153-4167; 16792-16806. And other documents otherwise non-responsive – for example, courtroom calendars and a database printouts where no restraints determinations were made, *see* missing pages between 16979-17456 and 17477-17815 – and are so marked on the privilege log.

Plaintiffs ask that Defendants produce a "sample" of these non-responsive documents for Plaintiffs' review, yet the Federal Rules of Civil Procedure do not require the production of non-responsive documents. Moreover, a random sample of such documents could contain privileged information concerning other matters. Defendants have explained the reason for the bates numbering confusion and have repeatedly modified their privilege log and conducted further review in order to accommodate Plaintiffs. That should end the matter. Should the Court rule otherwise, Defendants suggest that a small sample of documents from the "non-responsive" category on the privilege log by submitted to the Court for *in camera* review. In any event, Defendants continue to produce responsive, unprivileged documents as they turn up. These include documents that were not responsive, documents Defendants objected to producing in response to the first set of discovery requests, but that did appear responsive to Plaintiff's narrower second set of discovery requests without objection, and documents previously deemed privileged by Defendants but later determined to not in fact be privileged. These documents were produced on August 31, 2012, and Defendants anticipate further production if new information is discovered.

\* \* \*

We look forward to receiving the Court's guidance in addressing these issues.

Plaintiffs' position is that should the Court desire it, they will be prepared to answer any questions regarding this joint submission at the November 1, 2012 hearing date for the pending motion for protective order, or at any other date the Court desires. Defendants, on the other hand, believe that in light of the court's standing order, absent a court order, it would be inappropriate to raise issues arising from the joint letter at the November 1, 2012 hearing for the pending motion for protective order. However, should the Court determine that a hearing regarding the Joint Letter is needed (whether on November 1 or some other date), Defendants are available at the Court's convenience.