1

2

3       United States District Court
        Northern District of California

4

5

6   UELIAN DE ABADIA-PEIXOTO, et al.,        Case No.: CV 11-04001 RS (KAW)

7              Plaintiffs,                    ORDER DENYING DEFENDANTS'
                                             MOTION FOR PROTECTIVE ORDER
8          v.

9   U.S. DEPARTMENT OF HOMELAND
    SECURITY, et al.,

10             Defendants.

11

12

13          Plaintiffs filed this class action alleging that Defendants' blanket policy and practice of

14   shackling detainees during immigration court proceedings in San Francisco constitutes a

15   deprivation of due process. (*See* Pls.' Compl., Dkt. No. 1, ¶ 1.)  On August 31, 2012, Defendants

16   filed their motion for protective order, wherein they requested relief from providing the

17   information and documents requested regarding of U.S. Immigration and Customs Enforcement's

18   shackling policies and practices in immigration courts outside of San Francisco. (Defs.' Mot. for

19   Protective Order ("Defs.' Mot."), Dkt. No. 83, at 2-3.)

20          On September 4, 2012, this matter was referred to U.S. Magistrate Judge Kandis A.

21   Westmore for discovery purposes.

22          On November 1, 2012, the Court held a hearing, and after careful consideration of the

23   parties' arguments, the Court DENIES Defendants' motion without prejudice for the reasons set

24   forth below.

                              I.        BACKGROUND

26          Plaintiffs served their first sets of Requests for Admission, Requests for Production of

27   ///

28   ///

United States District Court
Northern District of California

United States District Court
Northern District of California

Documents and Interrogatories on Defendants on January 24, 2012. (*See* Decl. of Catherine E. Moreno ("Moreno Decl."), ¶¶ 5, 7-8.[1]) After a series of extensions, Defendants filed a motion to stay discovery until May 3, 2012. (Defs.' Mot. to Stay, Dkt. No. 67.) The Court denied Defendants' motion (Dkt. No. 71) on April 4, 2012.

Defendants served their responses to Plaintiffs' first sets of Requests for Admission and Interrogatories on April 9, 2012. (Moreno Decl., Ex. F, Ex. G)  Defendants served their response to Plaintiffs' first set of Requests for Production on May 17, 2012. (Moreno Decl., Ex. D.) Plaintiffs served deposition notices on Defendants U.S. Department of Justice's Executive Office for Immigration Review (EOIR) and U.S. Department of Homeland Security's Immigration and Customs Enforcement (ICE) on July 2, 2012. (Moreno Decl., Ex. I.)

Plaintiffs served their second set of Interrogatories on July 11, 2012 and their Amended Requests for Production on July 12, 2012. (Moreno Decl., ¶¶ 11, 12.)  Plaintiffs received Defendants' Objections and Responses to Plaintiffs' requests on August 13, 2012 and August 14, 2012. *Id.* The parties again attempted to meet and confer, and Plaintiffs sent a letter to defense counsel on August 23, 2012 outlining their interpretation of the parties' negotiations to date, and what transpired during the parties' meet and confer session on August 27, 2012. (Moreno Decl., ¶14; Ex. C.)

The parties were unable to resolve their disputes without court intervention, and Defendants filed the instant motion on August 31, 2012.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) governs the process for obtaining a protective order:
> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> **(A)** forbidding the disclosure or discovery;

---

[1] For the purposes of this order, the Court will refer to the exhibits contained in Plaintiffs' Opposition for those documents produced by both sides, as Defendants failed to mark their exhibits.

**(B)** specifying terms, including time and place, for the disclosure or discovery;
...
**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters....

Fed. R. Civ. P. 26(c)(1).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see also Navarro v. Eskanos & Adler*, 2007 WL 902550, *2-3 (N.D. Cal. March 22, 2007). If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. *Phillips*, 307 F.2d at 1211.

So under the Federal Rules, the Government bears the burden of showing that (1) it conformed to Rule 26(c)'s procedural requirements, and (2) that good cause exists to grant the protective order.

### III.    DISCUSSION

Defendants seek a protective order to preclude Plaintiffs from obtaining deposition testimony and written discovery regarding the practices and policies concerning the use of restraints in immigration courts outside of San Francisco. (Defs' Mot., Dkt. No. 83.) Defendants contend that this information is not relevant, because the current action only concerns practices in San Francisco, and that to produce that information would be unduly burdensome. *Id.*

Plaintiffs' contend that the information requested is relevant to their claims and Defendants' defenses and has offered to narrow the propounded discovery to relieve some of Defendants' burden of production. (*See* Pls.' Opp'n, Dkt. No. 92.)

### A.  Procedural Meet and Confer Requirement Not Satisfied

Pursuant to Rule 26(c), a party must certify that it has met and conferred in *good faith* to resolve the dispute prior to seeking court intervention. Fed. R. Civ. P. 26(c)(1).  Defense counsel failed to declare under penalty of perjury that they met and conferred in good faith, instead opting

United States District Court
Northern District of California

to include this information in a footnote. Defs.' Mot at 3, n. 1.  The Court declines to make a determination at this time as to whether this deficiency is fatal to Defendants' instant motion.  In the future, Defendants should certify such matters in a declaration, wherein they may attach marked exhibits and certify that they are true and correct copies.

Substantively, Defendants repeatedly contend that Plaintiffs' discovery requests are overly broad and unduly burdensome because they ask for temporally and "geographically limitless discovery." (Defs.' Mot., Dkt No. 83; Defs.' Reply, Dkt. No. 96.)  These assertions ignore what transpired during Plaintiffs' attempt to meet and confer with Defendants.  On July 9, 2012, Plaintiffs offered to limit the geographic scope of discovery by "identify[ing] specific jurisdictions from which documents could be collected and produced without undue burden." *See* Moreno Decl., Ex. A.  Defendants, instead of disclosing the substance of these discussions that appear to considerably narrow the issues in dispute, provide only the dates on which phone calls between the parties occurred. (*See* Defs.' Mot. at 3, n. 1; *see also* Decl. of Erez Reuveni ("Reuveni Decl.").)

A substantive, good faith meet and confer requires both sides to work together to attempt to resolve a dispute without court intervention.  From the correspondence provided, it appears that Plaintiffs attempted to narrow the scope of the discovery. In response, the Government appears to have repeatedly refused to produce any information, instead relying on its objections to refuse compliance.  The Government's reliance on unsustainable objections does not relieve them of Rule 26(c)'s meet and confer requirement.  The Government has not shown that they conferred in good faith prior to seeking court intervention, so the motion may be properly denied for failure to comply with Rule 26(c).

**B.  The Government Has Not Shown Good Cause.**

Even if the Government satisfied Rule 26(c)'s procedural requirements, as the moving party, the Government bears the burden of showing that good cause exists to limit discovery by way of the issuance of a protective order.  The Government asserts that the discovery is (1) not relevant and (2) unduly burdensome to produce. (*See* Defs' Mot. at 2.)

///

1.  <u>Relevancy</u>

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Despite this broad definition, Defendants seek a protective order to preclude the discovery of any and all information pertaining to any immigration courts outside of San Francisco, because the litigation only concerns the shackling of detainees in the San Francisco court.  In defending its position, the Government cites *United States v. Howard*, 480 F.3d 1005 (2007), along with the presiding judge's findings in his December 2011 order, to support its contention that since the permissibility of a blanket policy turns on a number of factors— including security concerns, staffing, and the physical layout of the facility— that discovery from other immigration courts is irrelevant because no two courts are exactly the same. (*See* Defs.' Mot. at 9, 13; *cf.* Order Den. Defs.' Mot. to Dismiss, Dkt. No. 52 at 4-5.)  This position confuses the distinction between determinations of law and the rules of discovery.  Documents relevant for discovery purposes "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Discovery concerning the policies and practices of other immigration courts outside of San Francisco may be relevant, even if the individual factual considerations, which may affect the constitutionality of a particular shackling policy, are different.

Plaintiffs' purport to seek information about Defendants' shackling policies and practices outside of San Francisco to "shed light on different approaches to determining when restraints are used in immigration courts, as well as Defendants' capacity under certain circumstances to use varying approaches. (Pls' Opp'n. at 8-9.)  Since the Ninth Circuit has been clear that shackling is a fact-based inquiry turning on a number of factors, these requests, on their face, are relevant to Defendants' anticipated defenses in this action, including "that the staffing and physical layout of the courthouse justify the frequency and degree of Defendants' use of shackles in immigration court proceedings in San Francisco." (Pls' Opp'n. at 10.) The Defendants' policies in immigration courts in other jurisdictions is relevant to compare staffing, physical layout of the courthouses, and other factors that may or may not result in Defendants' use of shackles.  If a blanket policy is

used by Defendants in all jurisdictions, it will become clear that Defendants are not making fact-based determinations regarding the need to always use shackles on all Defendants in all designated immigration court proceedings.  At the hearing, Defendants confirmed that in-custody detainees are currently shackled for two of the three types of hearings: bond hearings and master calendar hearings. Out-of-custody detainees are not shackled for merit hearings.  Thus, Defendants concede that there is a blanket policy of shackling detainees at all bond and master calendar hearings in San Francisco.

Plaintiffs made it clear during their meet and confer effort that they were willing to narrow the geographic scope of discovery at this time to selected immigration courts, including targeting discovery at those courts located in Boston, MA and Arlington, VA. (*See* Moreno Decl., Ex. I (deposition notices).)  Defendants' assertion that the ICE shackling policies at other immigration courts was irrelevant to the proceedings shifted the burden to Plaintiffs to illustrate why such discovery was relevant to the current action.  Plaintiffs have satisfied this burden through their assertions set forth above.

As the Government has not shown good cause as to why the information requested is not relevant to the current proceedings.

2.  Unduly Burdensome

In its moving papers, Defendants reiterate the same limitless, nationwide discovery argument in its assertion that the requests are unduly burdensome. (Defs.' Reply at 10-11.)

At the hearing, Defendants elaborated on how potentially unduly burdensome it could be to produce documents on the policies and practices for all of the immigration courts, as there is no national repository for these policy documents, and some jurisdictions do not have formal, written policies.  In those cases, the policies may be contained in emails, checklists, and other writings. However, Defense counsel conceded that Defendants have made no attempt to obtain these policy documents from any of the other immigration courts, and instead assume that the same degree of difficulty in obtaining documents in San Francisco would hold true for the rest of the country.

Still, Defendants' argument fails to take into account Plaintiffs' willingness to narrow the scope of their requests.  This willingness was reiterated by Plaintiffs' counsel at the hearing,

wherein he suggested that Plaintiffs could narrow their current requests to 5-10 jurisdictions from which to obtain information regarding shackling policies and practices, as well as other discoverable information.

While the Court recognizes that the very nature of the discovery process is burdensome on the party to whom discovery has been propounded, Defendants have not sufficiently shown how the potentially narrowed discovery would be unduly burdensome.  At the hearing it became clear that Plaintiffs must more clearly define the information that they are seeking, and Defendants must look at the possibility of producing the information in light of Plaintiffs' willingness to limit their requests.  Defendants should make a good faith effort to find out what is involved with producing limited information and meet and confer with Plaintiffs to reach a resolution.  Only after all efforts to resolve the dispute in good faith have failed should a request for court intervention be made.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for protective order is DENIED without prejudice.

The parties are ordered to further meet and confer by November 15, 2012 to agree upon up to ten (10) immigration courts outside of San Francisco from which to focus discovery.  Should any disputes remain following this meet and confer effort, the parties are ordered to file a joint letter consistent with the Court's Standing Order by November 19, 2012.

IT IS SO ORDERED.

DATE: November 13, 2012

_____
KANDIS A. WESTMORE
United States Magistrate Judge