United States District Court
Northern District of California

UELIAN DE ABADIA-PEIXOTO, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No.: CV 11-04001 RS (KAW)

ORDER RE 10/22/12 JOINT DISCOVERY LETTER

Before the Court is a joint discovery dispute letter filed on October 22, 2012. (Dkt. No. 99). The letter concerns four disputes pertaining to Plaintiffs' requests for production of documents. (Dkt. No. 99.)  Upon review of the letter, the Court orders Defendants' to produce documents pursuant to the limitations set forth below.

## I.   LEGAL STANDARD

### 1. Discovery Generally

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery in has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case,

///

the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

### 2. Deliberative Process Privilege

The deliberative process privilege permits the government to withhold documents that "reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975).

In order to qualify for the privilege, documents must be both "predecisional" and "deliberative". *Carter v. U.S. Dep't of Commerce,* 307 F.3d 1084, 1089 (9th Cir.2002); *see also Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010).

A document is predecisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). This may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Carter*, 307 F.3d at 1084 (quoting *Assembly of State of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). Alternatively, postdecisional documents "setting forth the reasons for an agency decision already made" are not privileged and are subject to disclosure. *Grumman*, 421 U.S. at 184.

A predecisional document is a part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly*, 968 F.2d at 920. However, documents consisting of only "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 87-88 (1973)

Deliberative process privilege is a qualified privilege, and courts may order discovery even if the government meets its burdens of showing the document is predecisional and deliberative. *See F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

Privileged materials may be obtained if the propounding party's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. *Id.* at 1161 (citing *United States v. Leggett & Platt, Inc.,* 542 F.2d 655, 658 (6th Cir.1976)).

When asserting this privilege, the Government must show that the documents are predecisional and deliberative, and then the burden shifts to the propounding party to show that the privilege should be waived. *See Cal. Native Plant Soc'y v. U.S. Envtl. Prot. Agency*, 251 F.R.D. 408 (N.D. Cal. 2008) (citing *Chevron U.S.A. Inc. v. United States*, 80 Fed.Cl. 340, 355-57 (Fed.Cl. Jan. 30, 2008)).  "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

## II.   DISCUSSION

As an initial matter, and to avoid any confusion, in light of the November 1, 2012 hearing on Defendants' motion for protective order, the geographic scope of discovery will be limited to the San Francisco immigration court and to those 5-10 outside jurisdictions[1] to be mutually-agreed upon by the parties.  Nothing in this order should be interpreted as requiring Defendants to produce nationwide discovery at this time.

1. **Time period for which documents responsive to RFP Nos. 2, 4, 6, 8, 10, 12, 14, 16, and 22 should be produced.**

    a. Limitations in Time Period

Plaintiffs request that documents responsive to the Requests for Production Nos. 2, 4, 6, 8, 10, 12, 14, 16, and 22 be produced for the periods of January 2007-present[2] and 1983-1993. (10/22/12 Joint Letter ("Joint Letter") at 2.) The period of 1983 to 1993 represents the five years

---

[1] At the November 1, 2012 hearing, Plaintiffs offered to limit discovery regarding the shackling policies and practices to 5-10 other immigration courts to alleviate Defendants' burden of producing documents related to the shackling practices in all 59 immigration courts outside of San Francisco.

[2] For the purposes of this order, "present" shall be defined as the date the discovery requests were issued, as Defendants do not have an ongoing discovery obligation.

3

before and the five years after the 1988 delegation of authority that granted the authority for courtroom security to the U.S. Immigration and Naturalization Service (the predecessor agency to the U.S. Immigration and Customs Enforcement).

Defendants contend that January 2010 is an appropriate cut-off as that is when the Government was first notified of the possibility of future litigation. Defendants provide no legal justification for this significant narrowing of time based upon a right to narrow discovery to only those periods after a party is notified of possible litigation.

Defendants also contend that any documents within five years of 1988 would be covered by deliberative privilege. While this is not entirely persuasive, at this time, the Court declines to compel the production of documents from the five years before the INS was given authority over courtroom security, as the expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). However, Defendants are not persuasive in their assertion that they should be relieved from producing documents regarding their policies for the five years after INS was given authority over courtroom security. In fact, to the extent that postdecisional documents explain the decision to hand over authority for security or explain the shackling policies and practices in place, they would be fact-based and not subject to privilege. Should Defendants attempt to withhold documents from this time period due to deliberative privilege, the Government must produce a privilege log that sufficiently states how the privileged documents fit into the deliberative process.

As to time period limitations, the Court finds that Defendants should produce responsive documents dated between 1988-1993 and 2007-present subject to the limitations outlined below. As stated above, the 1988-1993 time period reflects the five years after INS (now ICE) was given full authority over security in immigration courtrooms nationwide. The 2007-present period is a reasonable period in which Defendants' should identify relevant documents. The Court notes that INS was reorganized into ICE in 2002, so the Government should be able to produce many documents without undue burden, as they should be housed in ICE and not with other agencies.

///

///

Should Plaintiffs later request documents from other years, they are ordered to engage in a good faith meet and confer effort with the Government before seeking additional court intervention.

### b. Specific Requests for Production

Plaintiffs' requests at issue in the first dispute fall into four groups: (1) those regarding shackling policies and practices in San Francisco, (2) those involving policies and practices outside of San Francisco, (3) those assumed to involve national policy (as held by Executive Office of Immigration and Review(EOIR)), and (4) those calling for documents purportedly protected by deliberative privilege.

#### i. *San Francisco Policies (Nos. 2, 22)*

Request No. 2 seeks documents relating to past shackling policies and practices in San Francisco. Such documents are relevant to this case, and Defendants are ordered to produce all responsive, non-privileged documents dated between 1988-1993 and 2007-present.

Request No. 22 seeks all documents regarding any communications by or with immigration judges regarding the use of shackles during detainees' appearances in immigration court in San Francisco. Defendants are ordered to produce all responsive, non-privileged documents dated between 1988-1993 and 2007-present.

#### ii. *Practices in Jurisdictions Outside of San Francisco (No. 6)*

Request No. 6 concerns past ICE shackling policies and practices outside of San Francisco. In light of the parties' meet and confer efforts to limit the geographic scope of discovery, the court is not inclined to order that all responsive documents be produced at this time given that to do so would appear to be unduly burdensome and Plaintiffs have not shown that they require discovery from all 59 outside immigration courts to prosecute their case. While this information is relevant to the current action, Defendants are ordered to produce responsive documents from those 10 (or fewer) mutually-agreed upon jurisdictions.

#### iii. *EOIR Documents (Nos. 4, 7)*

Request Nos. 4 and 7 concern the past national policies and practices of EOIR. The Court understands that all national official policy memoranda have already been produced by

5

Defendants. To the extent that additional responsive, non-privileged documents—including unofficial documents—exist, the Government is ordered to produce those documents dated between 1988-1993 and 2007-present.

        *iv.*    *Deliberative Process Privilege (Nos. 10, 12, 14, 16)*

Request Nos. 10, 12, 14, and 16 all seek documents relating to "possible or proposed amendments to, or changes in, past policies or practices...." These requests include documents presumably protected by the deliberative process privilege, and so Defendants are not required to produce any privileged documents in response to these requests for production. To the extent that non-privileged documents exist between 2007-present—as Defendants admit that they only performed an electronic search from January 2010 to present—Defendants are ordered to produce those documents within 30 days of this order.

**2. Shackling release requests and complaints**

Plaintiffs seek to obtain records of detainee requests and complaints occurring in (1) immigration court and (2) state detention facilities, which house the immigration detainees.

        a.    <u>Immigration Court in San Francisco (RFP 18, 20, 21)</u>

Request Nos. 18, 20, and 21 all concern documents that should be in the custody of ICE in San Francisco.

Request No. 18 requests all documents related to requests by detainees to be released from shackles during appearances in immigration court. This is directly relevant to the proceedings, and the Government is ordered to produce all responsive documents in its possession from 2007-present. The 1988-1993 time period relates primarily to the shackling policy, whereas the 2007-present is more likely to provide evidence regarding the impact of the policy. Since these requests concern documentary evidence of impact, the Government is not required to produce documents from 1988-1993.

Request No. 20 seeks all complaints regarding the use of shackles during transport. To the extent that the Government transports the detainees to court, those records should be available, and the Government is ordered to produce all responsive documents from 2007-present. If the

///

6

Government uses a contractor for transportation purposes, the parties are ordered to meet and confer to determine the most expeditious way for Plaintiffs to obtain those documents.

Request No. 21 seeks complaints concerning the use of shackles during court appearances. While the Court acknowledges that the Government may be keeping records in a manner that could make a comprehensive search quite burdensome, this request seeks documents that are directly at issue in this case and in the immigration court at issue. Therefore, the Government is ordered to produce all responsive documents dated from 2007-present.

      b.   <u>Immigration Courts Outside of San Francisco (RFP 19)</u>

Request No. 19 seeks all documents summarizing any requests by detainees to be released from shackles during appearances in immigration courts outside of San Francisco. The Government is ordered to produce only those responsive documents from the 5-10 mutually-agreed upon jurisdictions from 2007-present.

      c.   <u>Request No. 23</u>

Request No. 23 asks for all documents referring or relating to any alleged harm to immigration detainees from the use of shackles, including medical reports and requests for treatment. This request is far too broad for the Government to comply with, and is therefore, at this time, limited to San Francisco immigration detainees from 2007-present.

      d.   <u>Detention Facilities (RFPs 33, 34, 35)</u>

These requests concern the specific state-run detention facilities that have contracts with the Government to house immigration detainees. The Government claims that it does not have custody or control of any complaints regarding the use of shackles, because it does not operate those facilities. Given the amended stipulated protective order, Plaintiffs are directed to subpoena those documents directly from the third-party facilities, attaching a copy of the protective order, as this is less burdensome than attempting to obtain the documents from the Government. Should Plaintiffs be unsuccessful in obtaining those documents and records directly from the third-party facilities, they may seek court intervention to compel compliance with the subpoenas.

///

///

### 3. Documents Allegedly Subject to Deliberative Process Privilege

As noted above, several of Plaintiffs requests ask for documents presumably protected by the deliberative process privilege.

Plaintiffs are correct in their assertion that the privilege is a qualified one, and the requesting party must show a substantial need for the documents sufficient to overcome the claim of privilege. Plaintiffs' reliance on *California Native Plant Society* to mean that the inadequacies of the privilege log waives Defendants' claim of privilege is misguided. *See* 251 F.R.D. 408 (N.D. Cal. 2008). No such waiver exists, and indeed the *California Native Plant Society* Court did not deem the Government's privilege waived, but instead required the agencies to submit a more detailed privileged log. *Id.* at 415. Thus any inadequacies of the Government's privilege logs do not waive its claim of privilege.

To the extent that documents explaining the policies are requested, and those documents were created after the policies were implemented, they are postdecisional and the Government must produce them. To the extent that the documents are related to proposed amendments or potential changes in the policies and practices, those are privileged and any discussion on potential changes are not required to be produced. Explanations as to why the currently policy exists, however, is postdecisional and not privileged, and the Government must produce those documents. If those documents also contain deliberations about potential changes in policy, those are predecisional, and redacted versions of those documents containing facts and explanations concerning the current policy in effect, should be produced.

The Court finds that the Government's privilege log is insufficient, in that it does not sufficiently identify why the documents are being properly withheld on the basis of deliberative process privilege.[3] For example, document DHS18345 is described as an "[e]mail message regarding internal agency discussions on interpretation of policy memorandum." (Joint Letter, Ex.

---

[3] The following Bates numbered documents were not produced per the Government's assertion of deliberative process privilege: DHS002305 (two documents with identical Bates number), DHS016919 (3 documents), DHS18306, DHS18307, DHS180311, DHS180312, DHS180314, DHS18316, DHS18317, DHS18318, DHS18320, DHS18345 (2 documents), DHS18348, DHS18350, and DHS18353 (3 documents).

C at 50.) This description suggests that the document is both explanatory and postdecisional, and therefore would not be privileged. Therefore, the Government is ordered to produce to the Court all documents contained in the privilege log for which it claims deliberative process privilege to be reviewed *in camera*.

The Government is further ordered to supplement the privilege log to account for those documents produced pursuant to the amended stipulated protective order, including those which were previously withheld on the basis of law enforcement privilege, and have since been produced. (*See* Dkt. No. 103). The Government is also required to elaborate as to those documents being withheld on the basis of "private information." This log, as well as future logs, must also provide more detailed information as to how any documents purportedly protected by deliberative process privilege fit into the deliberative process.

Should Plaintiffs come to believe that the assertion of deliberative process privilege continues to be abused, the parties are ordered to meet and confer and file another joint letter if the parties are unable to resolve the dispute. The Court will then revisit this issue and decide how to proceed, including the possibility of reviewing any additional documents *in camera*.

### 4. Production of a Sample of Documents

While Plaintiffs may be frustrated with the discovery process thus far, there is no support for Plaintiffs' request for a 500-page sample of Bates numbered pages from the gaps in the numbered pages produced. This request is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants are ordered produce all responsive documents subject to the parameters set forth above within thirty (30) days of this order. The amended privilege must also be produced within thirty (30) days of this order. Documents believed to be protected by deliberative process privilege must be produced to the Court for *in camera* review within fourteen (14) days of this order.

IT IS SO ORDERED.

DATE: November 16, 2012

_____
KANDIS A. WESTMORE
United States Magistrate Judge