United States District Court
Northern District of California

UELIAN DE ABADIA-PEIXOTO, et al.,

         Plaintiffs,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Defendants.

Case No.: CV 11-04001 RS (KAW)

MOTION GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR RECONSIDERATION OF
THE COURT'S MARCH 27, 2013
DISCOVERY ORDER

The Court issued its fourth order regarding the ongoing *in camera* review on March 27, 2013. (*See* Dkt. No. 132.)  In that order, the Court found that the deliberative process privilege applied to Document Nos. 18320 and 18345. *Id.*  The Court, however, ordered Document No. 18320 produced on the basis that the propounding party's need for the document overrode the document's qualified privilege. *Id.*  On April 2, 2013, the Government filed a motion for leave to file a motion for reconsideration of the Court's March 27, 2013 discovery order. (Dkt. No. 133.)

Having considered the Government's moving papers, the Court GRANTS its motion for reconsideration in part and DENIES it in part.  The Court grants the Government's request to reconsider its prior order, but finds that, after further review of Document No. 18320 in the context of the other documents produced *in camera*, that Document No. 18320 is not subject to the deliberative process privilege for the reasons set forth below.

## I.     DISCUSSION

The deliberative process privilege permits the government to withhold documents that "reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975).  In order to qualify for the privilege, documents must be both "predecisional" and "deliberative". *Carter v. U.S. Dep't of Commerce,* 307 F.3d 1084, 1089 (9th Cir.2002); *see also Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010).

United States District Court
Northern District of California

1

**A.  Document No. 18320 is not Predecisional.**

2        A document is predecisional if it is "prepared in order to assist an agency decisionmaker

3   in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168,

4   184 (1975).  This may include "recommendations, draft documents, proposals, suggestions, and

5   other subjective documents which reflect the personal opinions of the writer rather than the policy

6   of the agency." *Carter*, 307 F.3d at 1084 (quoting *Assembly of State of Cal. v. U.S. Dept. of*

7   *Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).  Alternatively, postdecisional documents "setting

8   forth the reasons for an agency decision already made" are not privileged and are subject to

9   disclosure. *Grumman*, 421 U.S. at 184.

10        Document No. 18320 is an email, dated August 9, 2011, that addresses how ICE

11   Enforcement and Removal Operations (ERO) in San Francisco will determine the appropriate

12   level of restraints for non-criminal asylum seekers even though the courtrooms lack certain

13   technology.  The Government argues, and the Court originally shared the belief, that since the

14   documents predated the purported finalization of the asylum seekers shackling policy, the

15   document was predecisional.  Upon further review, the document is not predecisional, so much as

16   it concerns the implementation of ICE's national *Use of Restraints* policy as it relates to one

17   subclass of immigration detainees—non-criminal asylum seekers.

18        The Government certified in its signed pleading that "at the time Document No. 18320

19   was authored, there was not in fact any policy in place requiring Defendants to conduct

20   individualized determinations regarding the use of restraints for asylum seekers." (Defs.' Mot. at

21   2:13-15.)  This is incorrect, as ICE's national *Use of Restraints* policy, which was in effect as late

22   as July 13, 2011, required individualized determinations for all immigration detainees:

23            ICE's *Use of Restraints* is outlined in the recently released Performance Based
             National Detention Standards; this policy properly balances the safety of the
24            public, detainees, and ICE personnel.  Current ICE policy requires the use of
             restraints on persons within our care and custody be consistent with other ICE
25            policy standards and be used in a manner that is safe, secure, humane, and
             professional. **ICE policy requires each officer to make an assessment of a**
26            **detainee's risks to the public, ICE personnel, and him or herself, as well as the**
             **likelihood of absconding.** This assessment includes, at a minimum, a review of
27            the detainee's criminal history (if any), aggressive or asocial behavior, suspected
             influence of alcohol or drugs, physical condition, gender, age, and medical

28

2

condition... **ICE does not have a blanket policy requiring the use of restraints during immigration proceedings instead the use of restraints is individualized and based on the risk posed.** We have determined that the immigration courts in San Francisco, California, Oakdale, LA, Boston, MA, and Bloominton, MN are in compliance with ICE's national policy on restraints.

(Document No. 2305, ordered produced on January 7, 2013)(emphasis added.)  Document No. 2305's summary of the national restraints policy was dated July 13, 2011, which predated Document No. 18320 by almost one month.

The Government completely ignores the existing national policy on restraints for all immigration detainees, and asserts that the Court was incorrect in its belief that the San Francisco Field Office should have already been making individualized determinations regarding the use of restraints for asylum seekers, because "the restraints policy for asylum seekers was not finalized until August 19, 2011, and that Document No. 18320 is "a document proposing a temporary policy and seeking clarification from a superior." (Defs.' Mot., at 4-5.)  This allegation is not supported by the August 19, 2011 "ERO Field Guidance on Use of Restraints for Asylum Seekers during Immigration Court Proceedings," which the Government characterizes as the finalized policy, and which provides:

> **This guidance is to remind** all Field Office Directors (FOD) and Deputy Field Directors that when deciding whether to use restraints, ERO personnel shall take into consideration the safety of the general public, ICE personnel, and the detainee. **When using restraints, individualized assessments should balance the risk posed by the detainee, including the risk of flight, violence, or disruption, while also assessing the setting, environment, and circumstances.**

(*See* Dkt. No. 124, Exh. A)(emphasis added.)  The opening clause indicates that this guidance document is not a new policy, but rather reiterates an existing policy, which, in the absence of any cogent explanation from the Government, the Court interprets as a reference to the national restraints policy summarized in Document No. 2305.  The guidance document then appears to endorse the use of less restrictive restraints for asylum seekers, by permitting FODs to "produce asylum seekers for court room proceedings... without the use of restraints or consider the use of alternatives that are individually tailored to the circumstances."  This is consistent with the national restraints policy, under which the same individualized assessment should be performed for every immigration detainee, including asylum seekers.  The basis of the Government's claim

1   of deliberative process privilege is that the document predated the August 19 guidance document,

2   which it characterized as an entirely new policy requiring individualized determinations.  For the

3   reasons provided above, this assertion is incorrect.

4          In light of the overarching, national policy on the use of restraints for all immigration

5   detainees, Document No. 18320 is post-decisional, as its subject matter pertains to how San

6   Francisco can implement the national policy of least restrictive restraints for one subclass of

7   detainees—non-criminal asylum seekers—in light of the current unavailability of certain

8   technology.

9          **B.  Document No. 18320 is not Deliberative.**

10         A predecisional document is a part of the "deliberative process," if "the disclosure of [the]

11  materials would expose an agency's decision making process in such a way as to discourage

12  candid discussion within the agency and thereby undermine the agency's ability to perform its

13  functions." *Assembly*, 968 F.2d at 920.  "The key inquiry is whether revealing the information

14  exposes the deliberative process." *Id.* at 921.  To be deliberative, it must "reveal the mental

15  processes of the decision-makers." *Id.* (citing *National Wildlife Fed'n,* 861 F.2d at 119.)  Instead,

16  Document No. 18320 appears to seek the approval of specific wording to explain what actions the

17  San Francisco Field Office will take to comply with the national restraints policy in light of the

18  absence of certain technology in its courtrooms, rather than a substantive discussion on what the

19  national restraints policy for non-criminal asylum seekers should include.  The Court also notes

20  that the document is specific to San Francisco, and appears wholly unrelated to the August 19,

21  2011 guidance document the Government has characterized as the finalized restraints policy for

22  asylum seekers.

23         In light of the above, the document is not part of the deliberative process.

24
25         **C.  The Government has not met its burden of showing that Document No. 18320 is
           subject to the Deliberative Process Privilege.**

26         When asserting this privilege, the Government must show that the documents are

27  predecisional and deliberative, and then the burden shifts to the propounding party to show that

28  the privilege should be waived. *See Cal. Native Plant Soc'y v. U.S. Envtl. Prot. Agency*, 251

1   F.R.D. 408 (N.D. Cal. 2008) (citing *Chevron U.S.A. Inc. v. United States*, 80 Fed.Cl. 340, 355-57

2   (Fed.Cl. Jan. 30, 2008)).  The Government was given four opportunities to explain why

3   Document No. 18320 was subject to the deliberative process privilege.  Despite ample

4   opportunity, the Government waited until it filed the instant motion to describe why it believed

5   this particular document was privileged, and the limited information provided served to persuade

6   the Court that its initial determination of privilege was incorrect.

7          Even if the Court were to find that the document is privileged, the Government assertion

8   that disclosure would "hinder[] frank discussion among decision-makers" is unpersuasive given

9   the content of the document.  This assertion is further tempered by the citation to Andrew

10   Lorenzen-Strait's November 29, 2012 declaration.  The paragraph of Mr. Lorenzen-Strait's

11   declaration cited by the Government claimed that the deliberative process privilege applied to

12   Document Nos. 2305, 18296, 18314, 18316, 18317, 18318, 18320, 18345, 18350, 18351, 18352,

13   and 18353. Of those, three documents were ordered produced, including Document No. 2305,

14   quoted above, because the privilege did not apply. In addition, four other documents withheld by

15   the Government as privileged on other grounds were ordered produced after the Court's *in*

16   *camera* review, such that, without more information, the Government's reliance on Mr. Lorenzen-

17   Strait's declaration is insufficient to carry its burden.

18          The deliberative process privilege is a qualified privilege, so even if the Government had

19   met its burden of showing that the document is both predecisional and deliberative, the Court may

20   still order discovery. *See F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir.

21   1984).  Privileged materials may be obtained if the propounding party's "need for the materials

22   and the need for accurate fact-finding override the government's interest in non-disclosure. *Id.* at

23   1161 (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 658 (6th Cir.1976)).  When read

24   with Document No. 2305, Document No. 18320 implies that, as of the date written, the San

25   Francisco ERO was not conducting the individualized determination regarding the use of

26   restraints for all detainees as required by ICE's national policy.  As the actions of the San

27   Francisco Field Office are at issue in this case, it is absolutely relevant, and even more probative,

28

United States District Court
Northern District of California

5

because it relates to the detainee subclass of non-criminal asylum seekers, who, of all immigration detainees, are likely among the least dangerous and the least likely to warrant restraints.

So even if the Government had met its burden of showing that the deliberative process privilege applied, Plaintiffs' need for the document overrides the Government's interest in non-disclosure.

## II.       CONCLUSION

For the reasons set forth above, the Court GRANTS the Government's motion for leave for reconsideration.  Accordingly, as to Document No. 18320,[1] the March 27, 2013 Order is VACATED.  After further review of those documents produced *in camera*, this Court finds that Document No. 18320 is not subject to the deliberative process privilege, and shall be produced without redaction by April 16, 2013.

IT IS SO ORDERED.

DATE: April 9, 2013

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

---

[1] Document No. 18345 remains subject to the deliberative process privilege and is not subject to production.

6