United States District Court
Northern District of California

UELIAN DE ABADIA-PEIXOTO, et al.,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No.: CV 11-04001 RS (KAW)

ORDER REGARDING 4/24/13 JOINT DISCOVERY LETTER

(Dkt. No. 138)

Before the Court is a joint discovery letter filed on April 24, 2013. (Dkt. No. 138). The letter concerns three disputes pertaining to Plaintiffs' Rule 34 Notice for Request for Inspection of the Immigration Court. *Id.* Upon review of the letter, the Court orders Defendants to make the premises available for inspection as set forth below.

## I.  LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34(a) permits a party to "serve on any other party a request within the scope of Rule 26(b)... (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

## II. DISCUSSION

The joint letter identifies three disputes: (1) the definition of "Immigration Court"; (2) the use of photography, videography, or audio devices; and (3) the inspection of security features of 630 Sansome and Immigration Courtrooms.

### A. The Definition of Immigration Court

The parties disagree as to the definition of "Immigration Court." Plaintiffs seek a broad definition that includes "federal building at 630 Sansome Street," "including, but not limited to, any public and nonpublic areas, the fourth floor, the sixth floor, the monitoring control room(s), vehicle sally ports, exterior parking areas used for vehicles transporting Detainees, hallways, corridors, doorways, stairways, elevators, and any area where Immigration Detainees appear, are held, or are escorted." (Joint Letter, at 2.)

At issue in this class action is whether Defendants' alleged blanket policy and practice of shackling detainees during immigration court proceedings in San Francisco constitutes a deprivation of due process. (Compl., Dkt. No. 1, ¶ 1.) This limits what is relevant under Rule 26 of the Federal Rules of Civil Procedure. Further, Rule 34 limits inspection to those premises "possessed or controlled by" Immigration and Customs Enforcement ("ICE") or Executive Office for Immigration Review ("EOIR"). *See* Fed. R. Civ. P 34(a)(2).

As a result of the parties' meet and confer, Defendants are willing to allow Plaintiffs to inspect the "path of the detainee," for those general areas under ICE or EOIR control, which consists of:

> (a) the area on the first floor where detainees disembark upon arrival; (b) the elevator that transfers detainees from the first floor to the fourth and sixth floors; (c) the sixth floor secured area where restraints are applied; (d) the sixth floor secured area where detainees are processed; (e) the sixth floor secured area hallway where detainees walk; (f) sixth floor secured area attorney consultation rooms; (g) sixth floor secured area holding cells; (h) sixth floor secured area

interview rooms; and (i) the fourth floor secured area where detainees disembark from or enter the elevator.

(Joint Letter, at 4.) Defendants assert that "[d]etainees do not appear anywhere else in the building under ICE or EOIR custody." *Id.* As a result, Defendants object to any definition of "Immigration Court" that includes other areas of the building, as they do not "relate in any way to the application of restraints to detainees in immigration court". *Id.*

Defendant's proposal for inspection of the "path of the detainee" is more than sufficient. Plaintiffs have not shown that the other areas sought to be inspected at 630 Sansome are relevant to the litigation. As discussed in more detail below, Plaintiffs have not demonstrated the heightened showing of relevance required to enter secure premises or to inspect "areas or equipment within Defendants' control that are used for security purposes," including the control room when the relevant information may be obtained through less intrusive means. *See* discussion *infra* Part II.C.

### B. Use of Photography, Videography, or Audio Devices

In their Rule 34 inspection request, Plaintiffs seek "to record by photograph or video the tangible things and places subject to inspection as part of the immigration court." (Joint Letter, at 4.) When Defendants objected, "Plaintiffs offered to forego photographs and video during the Rule 34 Inspection of areas under ICE's control if ICE would stipulate to allowing Plaintiffs to obtain photographic or videographic evidence through a mutually-agreed upon photographer or videographer at a later date and allow Plaintiffs' security expert to use an audio recorder to record his own thoughts and observations during the inspection." (Joint Letter, at 4-5.) ICE "object[s] to any photography, videography, or use of an audio recording device for notetaking during business hours, as ICE believes such recording creates a burden on law enforcement prerogatives and raises the risk of security incidents during business hours." *Id.* Instead, as an alternative, ICE has offered an inspection outside of business hours during which "Plaintiffs' expert may use an audio device for recording his observations, as well as targeted interrogatories or depositions concerning specific information regarding activities during business hours, which would be in lieu of any inspection during business hours, but would present fewer security issues." *Id.* Separately, EOIR

has agreed to allow the photography of the immigration courtrooms before business hours, provided Plaintiffs' photographer submits background information in advance. *Id.*

Generally, photography is not allowed in most federal courtrooms for a variety of reasons, including security concerns. Defendants have offered to make the courtrooms available for inspection, photographing, and measuring outside of business hours, and to simultaneously allow Plaintiffs' expert to record his observations on an audio device. This is reasonable, as any other information may be obtained by less obtrusive means, including, but not limited to, Plaintiffs' expert observing public immigration proceedings, during which he may take notes. Plaintiffs' contend that they need photography and videographic evidence because "Defendants' entire argument in favor of their shackling practice is that it is necessary given safety considerations" so "inspection during business hours—i.e. when Detainees are present and participating in immigration proceedings—is vital for Plaintiffs to understand the security and flight risks presented and to come up with any potential alternatives to seek at trial (or other resolution of this case)." (Joint Letter, at 5.) In light of Plaintiffs' need to demonstrate that Defendants' security concerns do not warrant the shackling of all detainees, or that alternatives to shackling exist, the parties are ordered to meet and confer to determine a less intrusive means for Plaintiffs to obtain demonstrative evidence of how the courtroom appears on a typical day, including the possibility of obtaining security camera footage or allowing an agreed upon photographer to take photographs of the courtroom between hearings when the public and other detainees are present. The Court trusts that this can be accomplished in such a way as to protect the privacy and/or identity of the detainees who are not a party to this action.[1]

The safety concerns expressed by Defendants are not valid as they pertain to the photography and videotaping of a public, court proceeding. The safety of a photographer is no more at risk during a court proceeding than is that of a visiting member of the public.

///

///

---

[1] Technological advances provide many methods to conceal identities, such as obscuring faces or camera angles.

4

**C. Inspection of Security Features of 630 Sansome Street and Immigration Courtrooms**

"Plaintiffs seek access to inspect all security features that are relevant to any escape risk or public safety risk posed by immigration detainees who are appearing for their court hearings, including inspection on how immigration detainees are transported into, out of, and through the building." (Joint Letter, at 8.) This includes the inspection of the ICE Enforcement and Removal Operations (ERO) control room, surveillance systems, offices and property room, building surveillance systems and alarms, and weapons and storage lockers for weapons.

Plaintiffs claim that courts have permitted far more extensive inspections, and that detailed site inspections are routinely conducted in cases relating to prison conditions. (Joint Letter, at 9.) There is a stark difference, however, between inspecting prison conditions and demonstrating hidden security features in a federal courthouse. Litigation involving prison conditions necessitates at least some real-time observation to ascertain the conditions in which prisoners reside, and even then they are often limited, especially when other discovery devices are less intrusive. *United States v. Territory of the Virgin Islands*, 280 F.R.D. 232, 236 (D.V.I. 2012) (plaintiffs were not permitted to interview prison staff during inspection). Likewise, the information sought by Plaintiffs, such as response times from the control room, can be obtained through less intrusive means, including interrogatory responses and deposition testimony. To allow otherwise would jeopardize the safety of ICE personnel and other detainees, and Plaintiffs have not articulated how actual demonstrations of security features are relevant to the litigation. For example, the exact location of panic buttons in the courtrooms is not relevant to the proceeding, but the amount of time it takes an immigration judge or employee to activate the panic button and the amount it takes security personnel to respond would be relevant.

In lieu of inspecting security features, Plaintiffs may propound interrogatories, documents requests, and depose witnesses to ascertain whether such safety concerns exist to warrant restraining all immigration detainees without an individualized determination. These discovery devices, combined with the ability to photograph the courtrooms themselves outside of business hours and observe immigration proceedings in open court, should allow Plaintiffs' counsel and expert to obtain the information needed to present their case.

### III. CONCLUSION

For the foregoing reasons, the inspection is limited to those premises possessed or controlled by ICE. Therefore, Defendants shall make the "path of the detainee" available for inspection, photographing, and measuring outside of business hours and to allow Plaintiffs' expert to record his observations on an audio device. While Plaintiffs' expert may attend hearings that are open to the public, the parties shall meet and confer to determine the least intrusive means for Plaintiffs to obtain demonstrative evidence of how the courtroom appears during a typical hearing. Plaintiffs' request to inspect the security features of the immigration court is DENIED.

The parties shall meet and confer as to which discovery, if any, is governed by the protective order currently in effect.

IT IS SO ORDERED.

DATE: July 12, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge