United States District Court
Northern District of California

UELIAN DE ABADIA-PEIXOTO, et al.,

        Plaintiffs,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Defendants.

Case No.: CV 11-04001 RS (KAW)

ORDER REGARDING 6/25/13 JOINT
DISCOVERY LETTER

(Dkt. No. 153)

Before the Court is a joint discovery letter filed on June 25, 2013. (Dkt. No. 153). The letter purports to seek clarification regarding the Court's November 13, 2012 Order denying Defendants' motion for protective order ("November 13 Order") and November 16, 2012 Order regarding the parties' October 22, 2013 joint discovery letter ("November 16 Order"). (Dkt. Nos. 109 & 110.)

On August 15, 2013, the Court held a lengthy hearing, and after consideration of the parties' arguments, the Court orders Defendants to provide Plaintiffs with their search parameters in writing, and to meet and confer to determine whether additional electronic searches are required to ensure that Defendants have met their discovery obligation.  Defendants are further ordered to produce additional documents as specifically set forth below.

## I.      LEGAL STANDARD

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive; (2) the party seeking discovery in has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## II.    DISCUSSION

This joint letter concerns whether Defendants have met their discovery obligations set forth in the Court's previous orders.  Plaintiffs believe that Defendants' production has been inadequate.  At the hearing, the Court was informed that Defendants had recently produced over 12,000 documents on August 2 and August 12, 2013, and the parties did not have sufficient time before the hearing to determine whether this recent document production obviated all of the issues raised in the June 25 discovery letter.  Defendants represented, at the hearing, that the production was responsive to many of the issues raised in the letter, including health records, e-mails, restraints determinations and their bases, information from Los Angeles and Newark, restraints removal requests, complaints, training materials, and safety incidents in transportation.  As a result, the Court will not address each and every aspect of the joint letter at this time, and instead directs the parties to generally meet and confer to determine whether the recent document productions resolve some or all of the disputes outlined in the letter.

Accordingly, the Court will only briefly address the general areas of dispute: (1) Defendants' refusal to provide Plaintiffs with their search parameters; (2) any limitations regarding the production of requests to remove restraints in court; and (3) the recent subpoena to Contra Costa County's detention facilities.

### A.  Search Parameters

Virtually every dispute before the Court concerns the adequacy of Defendants' search.  In order to "assess the adequacy of Defendants' search and production for most of these RFPs, Plaintiffs seek disclosure in writing of the custodians searched, sources (*e.g.*, emails, hard drives, hard copies) searched, and search terms used (hereinafter "Search Parameters") in responding to such RFPs." (Joint Letter, at 1.)  Defendants have generally "declined to provide their Search Parameters, responded that

they have produced all responsive documents in their possession, and are concerned that the disclosure of Search Parameters to Plaintiffs, given the nature of the litigation, would effectively lead to a new round of discovery." *Id.* Defendants also contend that "Plaintiffs made their Search Parameters request in June after the May 14, 2013 close of non-expert discovery...." (6/25/13 Joint Letter at 3.)

As discussed at the hearing, the Court views Plaintiffs' request for search parameters as part of the meet and confer process to be timely, as their request stems from the ongoing discovery disputes that were before the Court in November 2012. The Court is not persuaded by Defendants' contention that this would lead to a "new round of discovery," considering that it appears that Defendants may not have met their discovery obligation. Indeed, it became clear at the hearing that defense counsel did not have knowledge of the processes used by multiple departments in the government to conduct the necessary searches.

Courts have interpreted the federal rules as imposing "a duty of good faith and reasonable inquiry on all attorneys involved in litigation who rely on discovery responses executed by another attorney." *Qualcomm Inc. v. Broadcom Corp.*, 05CV1958-B (BLM), 2008 WL 66932, at *13 n. 9 (S.D. Cal. Jan. 7, 2008) *vacated in part,* 05CV1958-RMB (BLM), 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) (citing Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37"); Fed. R. Civ. P. 11 ("by signing, filing, submitting or advocating a pleading, an attorney is certifying that the allegations have factual, evidentiary support")). In the era of e-discovery, attorneys must take "responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." *Qualcomm Inc.,* 2008 WL 66932, at *9; *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 492-93 (S.D.N.Y. 2010) (counsel is responsible for supervising discovery process, and delegation to paralegal failed to satisfy the discovery obligation), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012). Here, Defense counsel could not articulate how the searches were conducted, and instead repeatedly deferred to U.S. Department of Homeland

Security's Acting Deputy Chief Counsel, which suggests that he could not certify that a search had been conducted that would fully satisfy Defendants' discovery obligation. Further, Plaintiffs identified several types of documents in the joint letter that they believe would have been produced if an adequate search had been performed. For example, Defendants have not provided the local shackling policies for those jurisdictions that the parties agreed to during their meet and confer efforts. The apparent absence of specific types documents that would be expected to be produced, coupled with Defendants' previous withholding of documents that were later ordered produced after a review *in camera*, amounts to more than mere suspicion. *See FormFactor, Inc v. Micro-Probe, Inc.*, C-10-03095 PJH JCS, 2012 WL 1575093, at 7 (N.D. Cal. May 3, 2012) (propounding party's suspicion that discovery was inadequate was insufficient, because the party failed to identify the withheld documents and their relevance).

In addition, the Court declines to review Defendants' search parameters *in camera* prior to disclosure, as Defendants requested in the joint letter, because the Court is not in a position to accurately assess the reasonableness of the search conducted nor advise on alternative search terms, sources, or custodians. Further, an in camera review is unnecessary, as Defendants have not raised any issues of privilege. Defendants have no reason for such a request other than to avoid disclosure.

Defendants are ordered to disclose their search parameters in writing for all requests discussed in the 6/25/13 Joint Letter—including those search parameters utilized by the agreed upon local jurisdictions—by August 30, 2013. The parties shall then meet and confer regarding the sufficiency of Defendants' search parameters—including any need to run subsequent searches using alternative terms—custodians, or sources, to ensure that Defendants have met their discovery obligation.

### B. Documents sought regarding Removal Requests and Complaints

Defendants object to all records requests regarding juvenile detainees and have refused to produce all responsive documents. Defendants argue that they should not be required to produce such records, because the class consists only of adult detainees, thereby rendering irrelevant those records pertaining to juvenile detainees. Pursuant to Rule 26, discovery is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

United States District Court
Northern District of California

The Court's November 16 Order concerning the requests to remove restraints, and any complaints regarding restraints, was not limited to adult detainees.  In addition, audio recordings are generally subject to production, so Defendants must conduct a reasonable search.  Further, given the increased usage of sound recording systems in lieu of court reporters, it is possible that requests to remove restraints would only be memorialized by sound recording.  In light of the above, Defendants must produce all responsive documents, including, but not limited to, Judge Yamaguchi's request regarding juvenile detainees (DOJ 000541-42, 553-54, 591-92, 602-603), and any audio recordings that memorialize detainee requests for removal.  The parties shall meet and confer to determine whether any documents produced are properly subject to the protective order currently in effect in this case.

In addition, Defendants contend that juvenile detainees are not in ICE custody, but rather are in the custody of the U.S. Department of Health & Human Services.  This argument is not persuasive, because when the juveniles are in immigration court, any requests for restraints removal would be heard by the immigration judge.  The Executive Office of Immigration Review would, therefore, be in possession of any such requests.

Defendants must also disclose their search parameters as provided above. *See* discussion *supra* Part II.A.

**C.  Documents sought regarding Subpoenas to Detention Facilities**

The November 16 Order directed Plaintiffs to subpoena documents concerning complaints regarding shackles in detention facilities directly from the facilities. On January 28, 2013, Plaintiffs served a subpoena on Contra Costa County to obtain the complaints. On April 25, 2013, Contra Costa County indicated that it would only comply with the subpoena if ICE agreed to "waive" 8 C.F.R. § 236.6, which Contra Costa believed prevented the release of the information sought.  Subsequently, Plaintiffs requested that the Government provide the waiver.  The Government indicated that it does not believe that section 236.6 prohibits compliance with the subpoena and encouraged compliance, but refused to sign a waiver as requested by Contra Costa County.

///

///

United States District Court
Northern District of California

United States District Court
Northern District of California

The Court DENIES Plaintiffs' request to compel the Government to sign the waiver. Instead, Plaintiffs are directed to file a motion to compel Contra Costa County's compliance with the subpoena.

**D. Meet and Confer regarding all other disputes**

In light of the Government's recent large-scale document production, the parties are ordered to meet and confer to determine whether the production obviates the remaining disputes in the June 25 Joint Letter, in whole or in part. If Plaintiffs are not satisfied with Defendants' production, the parties shall further meet and confer prior to seeking further court intervention.

At the hearing, Defendants requested that the Court decline to issue an order requiring the formal production of their search parameters in favor of an informal meet and confer process. This request was too late, as this is the very process that should have occurred prior to seeking court intervention by way of joint letter, as directed in the Court's Standing Order. As a result of the failure to sufficiently meet and confer to informally resolve the dispute, the parties had to fully brief the disputes and the Court had to expend its resources in adjudicating the disputes and holding a hearing. Further, at the hearing, Defendants, for the first time, provided Plaintiffs with bates numbers corresponding to some of the document categories at issue in the instant joint letter. Plaintiffs explained that they had requested this information prior to the hearing to determine whether the recent production could potentially obviate some of the discovery disputes at issue, but Defendants did not respond. Thus, Defendants missed the opportunity to resolve the dispute informally.

As provided above, the parties are ordered to meet and confer to determine which disputes have been resolved by the recent document productions. If any disputes remain, the parties are ordered to substantively meet and confer in good faith before seeking further court intervention by way of an updated joint letter.

**III.    CONCLUSION**

For the foregoing reasons, Defendants are ordered to produce their search parameters in writing for every request outlined in the June 25 Joint Letter by August 30, 2013, including the search parameters utilized in the 5-10 other jurisdictions to which the parties have agreed. The

United States District Court
Northern District of California

1  parties shall then meet and confer to determine whether Defendants' search parameters were

2  adequate, and, if not, fashion a solution to obtain the documents, preferably without further court

3  intervention.

4      In addition, Defendants are ordered to produce all documents regarding restraints removal

5  requests that were withheld on the basis of relevancy because they concerned juveniles, including

6  Judge Yamaguchi's audio recording referenced in the June 25 Joint Letter.  Defendants shall also

7  produce all audio recordings that memorialize restraints removal requests, including those from

8  court proceedings.  Defendants shall produce all audio recordings within 14 days of this order.

9  The parties shall meet and confer to determine which documents, if any, should be subject to the

10 protective order currently in effect.

11     Plaintiffs' request to compel the Government's waiver in regards to the third party

12 subpoena issued to Contra Costa County is DENIED.

13     The parties are directed to further meet and confer to determine whether Defendants'

14 recent, voluminous document production obviates any or all of the disputes identified in the June

15 25 Joint Letter.  For any remaining disputes, the parties shall meet and confer in good faith prior

16 to seeking court intervention.

17     IT IS SO ORDERED.

18 DATE: August 23, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge

19
20
21
22
23
24
25
26
27
28