DAVID J. BERGER, State Bar No. 147645
CATHERINE E. MORENO, State Bar No. 264517
THOMAS J. MARTIN, State Bar No. 150039
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: tmartin@wsgr.com

PAUL CHAVEZ, State Bar No. 241576
ROBIN GOLDFADEN, State Bar No. 208055
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Facsimile: (415) 543-0296
Email: pchavez@lccr.com

JULIA HARUMI MASS, State Bar No. 189649
JINGNI (JENNY) ZHAO, State Bar No. 284684
ALAN L. SCHLOSSER, State Bar No. 49957
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UELIAN DE ABADIA-PEIXOTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No.: 3:11-cv-4001 RS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   January 23, 2014<br>Time:  1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Ctrm:  3, 17th Floor |

**NOTICE OF MOTION AND MOTION**

TO THE CLERK OF THE COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2014, at 1:30 p.m., before the Honorable Richard Seeborg of the United States District Court for the Northern District of California, Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, named plaintiffs Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose and Mi Lian Wei ("Plaintiffs") will and hereby do make, pursuant to Fed. R. Civ. P. 23(e), an unopposed motion for preliminary approval of settlement in the above-captioned class action (the "Motion") set forth in the parties' settlement agreement ("Agreement"), dated December 18, 2013, filed herewith.

Plaintiffs respectfully request that the Court enter the proposed order, submitted herewith:

1.      Preliminarily approving the Agreement;

2.      Approving the form and manner of notice to the Settlement Class and the rights of the Settlement Class under the Agreement; and

3.      Scheduling a final approval hearing.

This Motion is made on grounds that the proposed Agreement is within the range of reasonableness such that the notice and scheduling of a formal fairness hearing are appropriate. The Motion is based upon this Motion, the supporting Memorandum of Points and Authorities, the Agreement and its exhibits, the Declarations of Catherine E. Moreno, Julia Harumi Mass, and Paul Chavez, any argument of counsel, and all papers and records on file in this matter.

///

///

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................2

III.    SUMMARY OF THE AGREEMENT................................................................5

IV.     ARGUMENT .....................................................................................................10

      A.    The Court Should Grant Preliminary Approval of the Settlement Agreement .....10

            1.    Legal Standard.................................................................................10

            2.    The Proposed Settlement Merits Preliminary Approval .........................11

                  a.    The Settlement Provides Substantial Relief for Settlement Class Members ......11

                  b.    The Stage of Proceedings and Discovery Thus Far Has Enabled Sufficient Evaluation of the Merits of the Claims..........12

                  c.    The Strength of Plaintiffs' Claims Balanced Against the Risk, Expense, Complexity and Likely Duration of Further Litigation Favors Approval of the Settlement...............................13

                  d.    The Class Was Represented by Experienced Counsel .................14

                  e.    The Settlement Is the Product of Serious, Informed, and Arms'-Length Negotiation .............................................14

      B.    Certification of the Settlement Class Is Appropriate .........................15

      C.    The Court Should Approve the Form and Manner of Notice to the Settlement Class and the Rights of the Settlement Class Under the Agreement ....................15

      D.    The Court Should Schedule A Final Approval Hearing........................17

V.      CONCLUSION ...................................................................................................17

Unopposed Notice of Mot., Mot., & Mem. of          -ii-
P. & A. in Supp. of Mot. for Prelimin. Approval
3:11-cv-4001 RS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chun-Hoop v. McKee Foods Corp.*, No. 05-0620 VRW, 2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ............................................................................................... 11

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................................. 10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................... 2, 10

*Gribble v. Cool Transports Inc.*, No. CV 06 04863 GAF SHX, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ........................................................................................ 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................... 2, 14, 15

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................... 2

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ............................................. 10

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................. 10

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) ............................................. 14

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) ....................................................................................... 10

*Williams v. Costco Wholesale Corp.*, No. 02 CV 2003 IEG, 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ........................................................................................ 11

## RULES

Civil L. R. 7-4(a)(3) ...................................................................................................................... 2

Fed. R. Civ. P. 23 ....................................................................................................................... 15

Fed. R. Civ. P. 23(a) ................................................................................................................... 15

Fed. R. Civ. P. 23(b) ............................................................................................................. 15, 16

Fed. R. Civ. P. 23(b)(2) ......................................................................................................... 15, 16

Fed. R. Civ. P. 23(e) ......................................................................................................... 2, 11, 15

Fed. R. Civ. P. 23(e)(5) ......................................................................................................... 15, 17

Fed. R. Civ. P. 30(b)(6) ................................................................................................................. 3

Fed. R. Civ. P. 34 ......................................................................................................................... 5

## MISCELLANEOUS

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ................................................................................................................... 10

# I.       INTRODUCTION

Uelian De Abadia Peixoto, Esmar Cifuentes, Pedro Nolasco Jose and Mi Lian Wei ("Named Plaintiffs" or "Plaintiffs"), on behalf of the class certified in this action, respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed settlement of this action.  Plaintiffs and Defendants have reached settlement of Plaintiffs' action pursuant to the terms and conditions contained in the settlement agreement ("Agreement"), dated December 18, 2013, and filed herewith.[1]  *See* Moreno Decl., Ex. 1.

Plaintiffs' complaint sought declaratory and injunctive relief on behalf of a class certified as all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco.  The complaint challenged as unconstitutional Defendants' then-extant policy and practice of shackling all civil immigration detainees appearing in San Francisco immigration court at their wrists, waists, and ankles during their Master Calendar, Bond, and Merits Hearings without an individualized determination of the need for restraints.  The parties actively litigated this action for over two years before reaching the proposed settlement, with the substantial assistance of Magistrate Judge Laurel Beeler.

As discussed in more detail herein, pursuant to the Agreement, Defendants will change their policy such that members of the Settlement Class will no longer be restrained during their Bond and Merits Hearings absent narrowly-defined emergency situations.  While Defendants may continue to restrain Settlement Class members during Master Calendar Hearings, Settlement Class members will be able to request a modification of such restraints where a physical, psychological, or medical condition would prevent the application of restraints in a safe and humane manner.  Defendants have also agreed not to chain detainees to one another under any circumstances.  In addition, Defendants have agreed to arrangements that will facilitate confidential attorney-client communications before and during Master Calendar Hearings.

---

[1] All capitalized terms not defined herein are defined in the Agreement, submitted as Exhibit 1 to the Declaration of Catherine E. Moreno ("Moreno Decl.").

The question at the preliminary approval stage is whether a settlement is within the range of reasonableness such that notice to the class of the settlement's terms and conditions and the scheduling of a final approval hearing are appropriate.  The proposed settlement reflected in the Agreement resolves the claims brought in this action and secures a substantial benefit to the proposed Settlement Class in light of the risks of ongoing litigation.  The terms of the Agreement, which were negotiated at arm's-length with the substantial assistance of a well-respected judicial officer, merit distribution of notice to the proposed Settlement Class and review at a fairness hearing.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Accordingly, Plaintiffs move the Court under Fed. R. Civ. P. 23(e) for entry of the proposed order, submitted herewith, preliminarily approving the settlement and providing for notice ("Proposed Preliminary Approval Order").  The Proposed Preliminary Approval Order will (i) grant preliminary approval of the Agreement, (ii) approve the form and manner of notice, and (iii) schedule a final approval hearing.  Pursuant to Civil L. R. 7-4(a)(3), Plaintiffs thus submit that the issues to be decided are:

1.      Whether the Court should preliminarily approve the Agreement.

2.      Whether the Court should preliminarily approve certification of a Settlement Class consisting of all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco during the period from December 23, 2011, to three years from the Effective Date of the Agreement.

3.      Whether the Court should approve the form and manner of notice to the Settlement Class and the rights of the Settlement Class under the Agreement.

4.      Whether the Court should schedule a final approval hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

On August 15, 2011, Plaintiffs filed their class action civil rights complaint for injunctive and declaratory relief against Defendants.  Dkt. No. 1.  Plaintiffs argued that the Due Process Clause of the Fifth Amendment to the United States Constitution prohibited Defendants' then-

extant policy and practice of shackling all civil detained immigrants during all of their

immigration court proceedings.  *Id.*  Two days later, Plaintiffs moved for class certification and

appointment of class counsel.  Dkt. No. 5.  On September 8, 2011, Defendants filed a motion

seeking enlargement of time to file their opposition to Plaintiffs' motion for class certification

(Dkt. No. 23), which Plaintiffs opposed (Dkt. No. 27) and the Court denied on September 12,

2011 (Dkt. No. 29).  On October 11 and October 14, 2011 Defendants moved to dismiss

Plaintiffs' action (Dkt. No. 33) and opposed Plaintiffs' motion for class certification (Dkt. No.

34), respectively.  After further briefing from Plaintiffs (Dkt. Nos. 35, 40) and Defendants (Dkt.

No. 45) and a hearing on these motions (Dkt. No. 46), the Court on December 23, 2011, denied

Defendants' motion to dismiss and certified Plaintiffs' class of "all current and future adult

immigration detainees who have or will have proceedings in immigration court in San

Francisco" (Dkt. No. 52).

Following the Court's Order, Plaintiffs immediately began extensive discovery into

Defendants' shackling policies and practices and related matters.  Between January 24, 2012 and

April 12, 2013, Plaintiffs served Defendants with four sets of document requests, four sets of

interrogatories and one set of requests for admission.  Defendants served two sets of document

requests, one set of interrogatories and one set of requests for admission on the Named Plaintiffs

and/or the Plaintiff class between September 28, 2012 and April 26, 2013.  Plaintiffs also noticed

Rule 30(b)(6) depositions of Defendants ICE (on July 2, 2012, re-noticed January 25, 2013, and

May 3, 2013) and EOIR (on July 2, 2012) and depositions of Supervisory Detention and

Deportation Officers ("SDDOs") Yakov Grinberg (on October 17, 2012) and Johnny J. Bailey

(on April 26, 2013), Assistant Chief Immigration Judge Print Maggard, Field Office Director

Timothy S. Aitken, Assistant Field Office Director Jason M. McClay, and Deputy Field Office

Director David W. Jennings (also noticed on April 26, 2013).  Defendants noticed the

depositions of Named Plaintiffs Esmar Cifuentes (on February 16, 2012), Uelian De Abadia-

Peixoto and Pedro Nolasco Jose (on July 25, 2012, re-noticed July 27, 2012, October 12, 2012,

and October 25, 2012), and Mi Lian Wei (on July 25, 2012, re-noticed July 27, 2012).

Defendants deposed Named Plaintiff Cifuentes on February 16, 2012, prior to his deportation to

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Mot. for Prelim. Approval
3:11-cv-4001 RS                                                          -3-

Guatemala, Named Plaintiffs Abadia-Peixoto and Nolasco Jose on November 15, 2012, and Named Plaintiff Wei on November 30, 2012.  Plaintiffs deposed SDDO Grinberg on November 16, 2012.

During this time, the parties engaged in numerous rounds of discovery motion practice and hearings before Magistrate Judge Kandis Westmore.  These efforts are partially summarized below.  On August 31, 2012, Plaintiffs sought to move to compel the production of various categories of documents withheld by Defendants.  Dkt. Nos. 81, 82.  On the same day, Defendants moved for a protective order limiting the scope of Plaintiffs' discovery.  Dkt. No. 83. Per Magistrate Judge Westmore's Standing Order, the parties met and conferred regarding the issues contained in Plaintiffs' motion to compel and submitted a joint discovery letter outlining their remaining disputes on October 22, 2012.  Dkt. Nos. 91, 99.  Separately, Plaintiffs opposed Defendants' motion for protective order.  Dkt. No. 89.  Defendants' motion was heard on November 1, 2012.  Dkt. No. 91.  Magistrate Judge Westmore denied Defendants' motion on November 13, 2012.  Dkt. No. 109.  Three days later, Magistrate Judge Westmore issued her Order regarding the parties' October 22, 2012 joint discovery letter, ordering Defendants to produce significant additional documents.  Dkt. No. 110.  The parties updated Magistrate Judge Westmore with a joint discovery status letter on November 19, 2012 (Dkt. No. 111), and the Court issued an order on the status letter on November 30, 2012 (Dkt. No. 114).

Following *in camera* review of Defendants' documents pursuant to her November 16, 2012 Order, Magistrate Judge Westmore ordered Defendants to produce additional documents in four consecutive orders regarding the Court's *in camera* review – on January 7, 2013 (Dkt. No. 116), February 1, 2013 (Dkt. No. 122), February 27, 2013 (Dkt. No. 128), and March 27, 2013 (Dkt. No. 132).  Defendants moved for leave to file a motion for reconsideration of Magistrate Judge Westmore's March 27, 2013 order on April 2, 2013 (Dkt. No. 133), which Magistrate Judge Westmore granted in part and denied in part on April 9, 2013 (Dkt. No. 134).  Defendants moved this Court for relief from the nondispositive order of the Magistrate Judge on April 23, 2013 (Dkt. No. 135), which Plaintiffs opposed (Dkt. No. 142).

On April 24, 2013, the parties submitted their third and final joint discovery letter, regarding Plaintiffs' efforts to obtain Rule 34 inspection of the immigration court building in San Francisco.  Dkt. No. 138.  Magistrate Judge Westmore ruled on the joint letter on July 12, 2013, generally ordering Defendants to make various portions of the building housing the immigration court available for Plaintiffs' inspection.  Dkt. No. 157.  Plaintiffs also sought discovery from the detention facilities that house immigration detainees who appear in immigration court in San Francisco, subpoenaing the West County Detention Facility, Sacramento County Sheriff's Department, and Yuba County Jail on January 28, 2013.  After considerable discussion with representatives of these facilities (including the assistance of Defendants), Plaintiffs received production on May 2, 2013 (Sacramento), June 18 and August 15-16, 2013 (Yuba County) and November 8, 2013 (West County).  Ultimately, Plaintiffs received and reviewed more than twenty thousand pages of documents from Defendants and the detention facilities.

While Plaintiffs continued to aggressively seek thorough discovery into Defendants' shackling policies and practices, the parties moved to stay discovery several times based on their progress toward settlement (as well as the government shutdown, which occurred in the midst of the parties' settlement efforts).  The Court referred the case to Magistrate Judge Beeler on March 20, 2012, for the purpose of completing a settlement conference.  Dkt. No. 66.  The parties met with Magistrate Judge Beeler for their first settlement conference, which lasted more than nine hours, on June 13, 2012.  Dkt. No. 76.  Thereafter, the parties met with Magistrate Judge Beeler by telephone and/or in person on November 28, 2012 (Dkt. No. 113), February 20 and 25 (Dkt. Nos. 125, 127), March 6, 11, and 15 (Dkt. Nos. 129, 130, 131), June 25 and 28 (Dkt. Nos. 155, 156), July 24 (Dkt. No. 161), September 25 (Dkt. No. 176), and November 6, 15, 18 and 19, 2013 (Dkt. Nos. 190, 195, 196, 200).  These discussions culminated in the parties' December 18, 2013 Agreement.  *See* Moreno Decl., Ex. 1.

## III.   SUMMARY OF THE AGREEMENT

The Agreement resolves the above-captioned class action as to all Defendants.  *Id.* at 1. Its term will extend three years from the Effective Date.  *Id.* at § I.3.

*The Settlement Class*.  The parties have agreed that the Settlement Class will consist of all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco during the period from December 23, 2011 (the date of this Court's class certification order) to three years from the Effective Date of the Agreement (*i.e.*, the full term of the Agreement).  *Id.* at § I.11.

*Bond and Merits Hearings*.  Pursuant to the Agreement, during two of the three types of immigration court proceedings in San Francisco – Bond and Merits Hearings – detainees will not be restrained, except in emergency situations.  *Id.* at § III.3.  Specifically, officers will be allowed to restrain detainees in emergency situations to protect the safety of the detainee, other detainees, the public, and ICE or EOIR personnel, or to prevent escape.  *Id.* at § III.4.  For example, if a detainee becomes combative, disruptive, violent, or threatening, an officer may decide to apply restraints or keep them applied during the hearing.  *Id.*  A SDDO will document all emergency situations that led to the use of restraints on a detainee during a hearing in the Comments screen of ICE's Enforce Alien Removal Module ("EARM") database.  *Id.*  A detainee who is restrained due to his or her behavior will be restrained in all future hearings, unless he or she requests that ICE modify or eliminate the use of restraints based on medical, physical, or psychological grounds that prevent the application of restraints in a safe and humane manner.  *Id.*  A SDDO will consider the request and any undue hardship imposed on the detainee from the application of full restraints, and, as soon as practicable, either grant the request, deny the request, reduce the level of restraints, or consider additional available alternatives.  *Id.*  This decision will be documented in the Comments screen of EARM and communicated to the detainee and/or his or her attorney verbally or in writing, and will include the basis for the decision (to the extent that it does not reveal specific information that would compromise law enforcement sensitive information).  *Id.*

*Master Calendar Hearings*.  In the remaining type of immigration court proceeding – Master Calendar Hearings – detainees will appear in full restraints unless a SDDO modifies the level of restraints either due to exigent circumstances, or pursuant to a detainee's request based on a physical, psychological, or medical condition that would prevent application of restraints in

1   a safe and humane manner, where application of full restraints would impose undue hardship on

2   a detainee (which determination will include a consideration of whether the application of

3   restraints would aggravate an existing injury or disability, and, if necessary, involve guidance

4   from the Immigration Health Services Corps).  *Id.* at § III.2.  If necessary, the SDDO may

5   mitigate any security threat posed by allowing a detainee to appear without restraints by

6   assigning additional officers to the court or making arrangements with the immigration court for

7   a separate appearance by the detainee.  *Id.*  Again, any request to modify the level of restraints

8   and the SDDO's decision with respect to each request will be documented in the Comments

9   screen of EARM and communicated to the detainee and/or his or her attorney verbally or in

10  writing, and will include the basis for the decision, to the extent that it does not reveal specific

11  information that would compromise law enforcement sensitive information.  *Id.*  Regardless of

12  the level of restraints imposed, detainees will not be attached to each other during hearings.  *Id.*

13          Defendants have also agreed to facilitate confidential attorney-client consultations related

14  to Master Calendar Hearings by allowing Settlement Class members to engage in such

15  consultations in ICE's visiting rooms prior to the hearings.  *Id.* at § V.  ICE will maintain two

16  visiting rooms, one of which will generally be made available for consultations from 7:00 a.m. to

17  11:00 a.m. (prior to and during Master Calendar Hearings), and Defendants will generally make

18  best efforts to keep one pew in the courtroom free for brief attorney-client consultations during

19  Master Calendar Hearings.  *Id.*  Defendants will also ensure that each Respondent has a copy of

20  his or her Notice to Appear during these periods.  *Id.*  ICE will also post in English, Spanish,

21  Chinese and Punjabi the written notice attached as Exhibit A to the Agreement in the detention

22  facilities where Detained Respondents are housed and in the holding areas of the building

23  housing the immigration court in San Francisco.  *Id.* at § IV.  ICE will also provide a copy of this

24  written notice in all four languages to Settlement Class members during ICE's intake process.

25  *Id.*  In addition, within 90 days of the Effective Date, the immigration judge presiding over

26  Master Calendar Hearings will make a statement at the commencement of each hearing

27  summarizing ICE's restraints practices at Master Calendar Hearings and informing detainees that

28  they may request a change to the use of restraints in their case.  *Id.*

***Monitoring and Data Collection.***  Beginning ninety (90) days from the Agreement's Effective Date, Defendants will periodically monitor contract officers and collect certain data regarding the new restraints policy.  *Id.* at §§ VII-VIII.[2]  Defendants also will monitor and assess G4S contract officers to ensure their compliance with and implementation of the new restraints policy, and ICE will document the monitoring process and maintain records of its assessments of G4S's performance.  *Id.* at § VII.  San Francisco ICE ERO will also maintain the EARM Comments screens referenced above reflecting (i) the application of restraints and reasons for applying restraints to any Settlement Class members in Bond and Merits Hearings (*i.e.*, based on emergency situations), and (ii) requests by Respondents to be accommodated with a lower level or removal of restraints for Master Calendar Hearings and the dispositions of such requests.  *Id.* at § VIII.  San Francisco ICE ERO will, on a bi-annual basis, provide Plaintiffs' counsel copies of the EARM Comment screens for any detainee who was restrained for a Bond or Merits Hearing, or whose request for removal or lessening of restraints for a Master Calendar Hearing was denied.  *Id.*  Defendants' obligation to provide EARM Comment screens will extend either three years, if Plaintiffs invoke the Agreement's Dispute Resolution Process, or two years if Plaintiffs do not do so.  *Id.*

***Attorneys' Fees.***  Defendants have agreed to pay Plaintiffs' reasonable attorneys fees and costs in the amount of three hundred and fifty thousand dollars ($350,000.00), which shall constitute the full and final satisfaction of Plaintiffs' claims for attorneys' fees, costs, and litigation expenses that could have been brought in the above-captioned matter, and is inclusive of any interest.  *Id.* at § XIII.

The amount of attorneys' fees to be paid is a figure negotiated with the assistance of Magistrate Judge Beeler.  It represents a discount to the lodestar for the hours and rates Plaintiffs' counsel have recorded in connection with their prosecution of this action.  Moreno Decl. at ¶¶ 9-10 (noting that the lodestar for the two primary Wilson Sonsini Goodrich & Rosati

---

[2] Defendants will also provide training to Impacted ICE ERO Personnel and Immigration Judges concerning the new policies and procedures.  *Id.* at § VI.

timekeepers, applying Equal Access to Justice Act rates, amounts to over $500,000; a figure that does not include the significant time devoted to this matter by numerous other attorneys and staff); *see also* Declaration of Julia Harumi Mass ("Mass Decl.") at ¶¶ 5-6; Declaration of Paul Chavez ("Chavez Decl.") at ¶¶ 4-5.[3]

In addition, the parties did not negotiate attorneys' fees until after there was an agreement in principle on all the substantive aspects of the Agreement.  Moreno Decl. at ¶ 11; Mass Decl. at ¶ 7; Chavez Decl. at ¶ 6.

***Notice.***   The parties will provide direct notice to the Settlement Class by (i) sending notice via U.S. mail and/or email to all organizations included on the list of low-fee and free legal services provided to respondents in removal proceedings before the San Francisco Immigration Court; (ii) sending notice via email to the list-serv for the Northern California chapter of AILA (American Immigration Lawyers Association) and the Northern California chapter of the National Lawyers' Guild; (iii) posting notice in areas visible to immigration detainees in all facilities holding respondents appearing before the San Francisco Immigration Court; and (iv) posting notice on the websites of EOIR, ICE, ACLU of Northern California, and Lawyers' Committee for Civil Rights of the San Francisco Bay Area.  *Id.* at § IX.  All postings will be in English, Spanish, Chinese, and Punjabi, and all parties will provide alternate format copies of the notice upon request.  Notice will be posted/distributed by the parties within seven (7) working days of the date of entry of the Preliminary Approval Order, and shall remain posted for no less than thirty (30) days.

As further discussed below, Settlement Class members will be able to object to the proposed Agreement by submitting Objections to Class Counsel in writing, via regular or electronic mail, or by leaving a message with the Objection via telephone.  Settlement Class members will also be informed of their right to appear at the final approval hearing, provided they comply with the process for submitting Objections.

---

[3] The amount of attorneys' fees is disclosed in the notice to the Settlement Class.  Moreno Decl., Ex. 1, at Ex. C at 5.

1    *Release.* Plaintiffs will release Defendants from all claims asserted in this lawsuit or that

2    could have been asserted on behalf of the Settlement Class arising from the facts and

3    circumstances alleged in the Complaint, including all claims for injunctive or declaratory relief.

4    The Agreement and its waiver and release will not impact the ability of any individual class

5    member (other than the Named Plaintiffs) (i) to bring a claim for monetary damages in his or her

6    individual capacity arising from or related to injury suffered as a result of Defendants'

7    application of restraints to such class member, or (ii) to argue that the application of restraints

8    adversely affected such individual class member's ability to defend or present his or her case to

9    the immigration court in San Francisco. *Id*. at § XIV.

10   **IV.    ARGUMENT**

11          **A.    The Court Should Grant Preliminary Approval of the Settlement Agreement**

12                 **1.    Legal Standard**

13          As a matter of "express public policy," federal courts strongly favor and encourage

14   settlements, particularly in class actions and other complex matters, where the inherent costs,

15   delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

16   class could hope to obtain. *City of Seattle*, 955 F.2d at 1276 (noting the "strong judicial policy

17   that favors settlements"); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)

18   (same); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029

19   (N.D. Cal. 1999) (same); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §

20   11.41 (4th ed. 2002) (citing cases).

21          "Procedurally, the approval of a class action settlement takes place in two stages."

22   *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 473 (E.D. Cal. 2010).  "[T]he Court first

23   determines whether a proposed class action settlement deserves preliminary approval and then,

24   after notice is given to class members, whether final approval is warranted."  *Nat'l Rural

25   Telecomms. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also Murillo*,

26   266 F.R.D. at 473 ("In the first stage of the approval process, the court preliminarily approves

27   the Settlement pending a fairness hearing, temporarily certifies the Class, and authorizes notice

28   to be given to the Class.") (citations, quotations, and alterations omitted).

At the preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval." *Williams v. Costco Wholesale Corp.*, No. 02 CV 2003 IEG, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010). If the proposed settlement falls within the range of what could be found "fair, reasonable, and adequate," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *See* Fed. R. Civ. P. 23(e); *Williams*, 2010 WL 761122, at *5 ("Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'"). "[A] presumption of fairness applies when settlements are negotiated at arm's length[.]" *Gribble v. Cool Transports Inc.*, No. CV 06 04863 GAF SHX, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008); *Chun-Hoop v. McKee Foods Corp.*, No. 05-0620 VRW, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009) ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.").

### 2. The Proposed Settlement Merits Preliminary Approval

Plaintiffs respectfully request that the Court grant preliminary approval of the Agreement. The Agreement is well within the requisite range of fairness, reasonableness, and adequacy.

### a. The Settlement Provides Substantial Relief for Settlement Class Members

First and foremost, the Agreement unquestionably benefits the Settlement Class by ending Defendants' policy and practice of shackling all detainees at Bond and Merits Hearings. Under the Agreement, Defendants may not restrain Settlement Class members in Bond and Merits Hearings except in emergency situations (*i.e.*, where a detainee becomes combative, disruptive, violent, or threatening). This represents a sea change from Defendants' challenged policy and practice, under which all detainees were fully shackled during the entirety of their Bond and Merits Hearings – which in some instances extend over the course of several days –

1  despite what Plaintiffs alleged to be shackles' painful interference with detainees' ability to

2  participate in their own proceedings.

3      Further, while Defendants may continue to restrain Settlement Class members during

4  Master Calendar Hearings, Defendants may no longer shackle detainees to one another ("daisy-

5  chaining"), will set aside spaces for private attorney-client consultations, and must allow

6  detainees to request removal or modification of restraints prior to and/or at the hearing itself

7  based on physical, psychological, or medical condition(s).  Again, this change is significant and

8  indisputably benefits the Settlement Class.  Eliminating "daisy-chaining" and setting aside

9  spaces outside and, when possible, also within the courtroom will enable private attorney-client

10  consultations otherwise absent under Defendants' challenged policy and practice.  Additionally,

11  to the extent that shackles affect detainees' mental state and/or physical condition, the

12  Agreement will allow Settlement Class members to request and obtain modification and/or

13  removal of restraints even in Master Calendar Hearings.

14          **b.    The Stage of Proceedings and Discovery Thus Far Has**
                    **Enabled Sufficient Evaluation of the Merits of the Claims**

15

16      Prior to filing the Complaint on August 15, 2011, Plaintiffs conducted an extensive

17  investigation into the claims asserted therein.  Plaintiffs' counsel observed over one hundred

18  bond and master calendar hearings in immigration court in San Francisco, interviewed dozens of

19  adult immigrant detainees, and consulted with numerous legal practitioners and experts in the

20  fields of mental health and courtroom security.  Dkt. No. 6 (Pls.' Mem. in Supp. of Class Cert.),

21  at 15.  Plaintiffs' investigation continued after filing suit and successfully opposing Defendants'

22  motion to dismiss (Dkt. Nos. 27, 29) and obtaining class certification on behalf of "all current

23  and future adult immigration detainees who have or will have proceedings in immigration court

24  in San Francisco" (Dkt. No. 52).  Plaintiffs (and Defendants) engaged in extensive discovery,

25  including numerous rounds of discovery requests, several rounds of briefing and two discovery

26  hearings before Magistrate Judge Kandis Westmore aimed at expanding the scope of

27  Defendants' production, challenging the applicability of asserted privileges, and/or compelling

28  production of specific responsive documents.  In total, Plaintiffs reviewed over twenty thousand

1   pages of documents obtained from Defendants ICE and EOIR and third parties West County

2   Detention Facility, Sacramento County Sheriff's Department, and Yuba County Jail. Plaintiffs

3   also conducted outreach to the Class via letter, procured a telephone line through which

4   detainees could (and did) contact Plaintiffs' counsel, and personally interviewed more than

5   twenty detainees regarding their experiences with restraints in immigration court in San

6   Francisco. Defendants, for their part, sought documents and testimony from the Named

7   Plaintiffs and members of the Plaintiff class. Plaintiffs and Defendants each noticed numerous

8   depositions, and the parties respectively took and/or defended several depositions before

9   agreeing to stay discovery based on promising settlement discussions before Magistrate Judge

10  Beeler (as well as the intervening government shutdown).

11              **c.      The Strength of Plaintiffs' Claims Balanced Against the Risk,
                          Expense, Complexity and Likely Duration of Further
12                        Litigation Favors Approval of the Settlement**

13          Given Plaintiffs' aggressive prosecution of this action both before and after filing suit,

14  Plaintiffs' counsel understood the strengths and weaknesses of their claims, both factually and

15  legally, throughout the action – including during the parties' settlement discussions (which began

16  on June 13, 2012) – and were able to effectively engage in rigorous negotiations with Defendants

17  (Dkt. No. 76). Entering into settlement negotiations, Plaintiffs and their counsel were confident

18  in the strength of their case, but also pragmatic in their awareness of the risks inherent in

19  litigation. For example, Plaintiffs would face the risk of dismissal of some or all of their claims

20  at the summary judgment stage. Resolution of such a dispositive motion would turn on

21  competing views of the required showing of prejudice to the Class as a result of Defendants'

22  restraints practices relative to Defendants' asserted interests.

23          Further, it was by no means clear that Plaintiffs could expect a verdict in their favor

24  should the case proceed to trial. Defendants were expected to adduce expert testimony and

25  evidence concerning their restraints practices, leading to a "battle of the experts" laden with risk.

26  Even if Plaintiffs did prevail through motion practice and at trial, relief to the Class could be

27  delayed for years by an appeal. The Agreement provides substantial relief to Settlement Class

28  members without delay.

Unopposed Notice of Mot., Mot., & Mem. of                    -13-
P. & A. in Supp. of Mot. for Prelim. Approval
3:11-cv-4001 RS

**d.      The Class Was Represented by Experienced Counsel**

Counsel for the parties are experienced in the litigation, certification, trial, and settlement of complex claims, including class actions.  Moreno Decl. at ¶¶ 3-8; Mass Decl. at ¶¶ 2-4; Chavez Decl. at ¶¶ 2-3.  Counsel for both parties were well positioned to evaluate the strengths and weaknesses of their cases, as well as the appropriate basis on which to settle these claims.

**e.      The Settlement Is the Product of Serious, Informed, and Arms'-Length Negotiation**

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations").

As detailed above, this Agreement was the product of extensive, months-long negotiations conducted with the substantial guidance and assistance of Magistrate Judge Beeler. Indeed, the parties participated in at least fifteen separate in person or telephonic settlement conferences involving Magistrate Judge Beeler, in addition to conducting numerous informal settlement talks by telephone over the course of eighteen months.  During the course of these negotiations, the parties engaged in extensive discovery, including contentious related motion practice.  Under these circumstances, it is clear that the Agreement is the product of vigorous, arm's-length bargaining.

Accordingly, the Court should find that the Agreement was "the product of serious, informed, non-collusive negotiations" and is thus presumptively fair, that its terms benefit the Settlement Class, and that its inclusion of attorneys' fees and costs to Plaintiffs' counsel is reasonable.  Given the complexities of this constitutional class action and the continued risks if the parties were to proceed, the Agreement represents a favorable resolution and eliminates the risk that the Settlement Class might recover less or nothing at all.

**B.      Certification of the Settlement Class Is Appropriate**

A court may certify a settlement class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met.  See Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019. Here, the Court has already certified a class nearly identical to the Settlement Class proposed by the parties.  Indeed, if anything, the Settlement Class is narrower in that it is time-bound by the term of the Agreement.

Because the Court has already found that a class consisting of "all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco" meets the requirements of Rule 23, the parties respectfully propose that certification of the Settlement Class (*i.e.*, "all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco between December 23, 2011, and three years from the Effective Date of the Agreement") is likewise appropriate.

**C.      The Court Should Approve the Form and Manner of Notice to the Settlement Class and the Rights of the Settlement Class Under the Agreement**

Rule 23(e) requires the Court to direct notice of a proposed settlement in a reasonable manner to all class members who would be bound by the proposal.  For classes certified under Rule 23(b)(2), settlement class members must be able to object to settlement.  Fed. R. Civ. P. 23(e)(5); *see also* Dkt. No. 5 (Pls.' Mot. for Class Cert.), at 2; Dkt. No. 6, at 18.

The proposed notice to the Settlement Class, attached as Exhibit C to the Agreement, satisfies these requirements.  The contents of the Notice comply with due process and Rule 23. It describes the nature of the action and the settlement terms, defines the Settlement Class, provides the date, time, and place of the final approval hearing, advises Settlement Class members regarding the release that will bind them in the event that they do not object to the settlement, describes how Settlement Class members may object to the settlement, and informs the Settlement Class of the proposed amount of attorneys' fees and costs to be awarded in connection with the settlement.

1    In addition, Plaintiffs' counsel will provide notice in numerous ways – all designed to

2    increase accessibility to the members of the Settlement Class and reasonably ensure that

3    Settlement Class members are apprised of the Agreement.  Plaintiffs' counsel will (i) mail and/or

4    email notice to all low-fee and free legal services providers on the list given to respondents in

5    removal proceedings in immigration court in San Francisco, and (ii) email notice to immigration

6    practitioners via list-servs for AILA and NLG, (iii) the parties will arrange to post notice in areas

7    visible to immigration detainees in facilities housing detainees appearing in immigration court in

8    San Francisco, and (iv) Plaintiffs' counsel ACLU of Northern California and Lawyers'

9    Committee for Civil Rights of the San Francisco Bay Area and Defendants ICE and EOIR will

10   post notice on their respective websites, which are reasonably likely to be accessed by Settlement

11   Class members and their families and representatives.  By providing notice directly to Settlement

12   Class members and the practitioners most likely to represent Settlement Class members, the

13   parties will reach the people best suited to evaluate its fairness and raise potential issues.  The

14   notice posted in facilities and on Plaintiffs' counsel's and Defendants' websites will be translated

15   into the four most commonly read languages of Settlement Class members: English, Spanish,

16   Chinese, and Punjabi.  The parties will distribute/post notice of settlement within seven days of

17   the entry of the Preliminary Approval Order, and it will remain posted for at least thirty (30)

18   days.  As such, the form and manner of notice is thorough and properly targets the Settlement

19   Class, and the Court should approve it.

20        Second, the Agreement properly provides Settlement Class members with the right to

21   object to the proposed Agreement.  Plaintiffs' motion sought class certification under Rule

22   23(b)(2) (Dkt. Nos. 5, 6), which this Court granted.  *See* Dkt. No. 52 ("[P]laintiffs have

23   established that requirements of Rule 23(b) are satisfied because declaratory or injunctive relief

24   benefitting the class as a whole would be appropriate and/or because common questions of law

25   or fact predominate and the class action is superior to other available methods of adjudication.").

26   The Agreement gives Settlement Class members the right to submit Objections to Class Counsel.

27   Again, in an effort to facilitate Settlement Class members' ability to submit Objections, if any,

28   the Agreement allows them to do so in writing, via regular or electronic mail, or by leaving a

message with the Objection via a no-cost telephone line, and, if sought in their Objections,

present objections at the fairness hearing.  If Settlement Class members object via telephone,

Class Counsel will manage the process of forwarding those Objections to Defendants' counsel

and filing them with the Court.  Accordingly, the Agreement satisfies Rule 23(e)(5), and the

Court should also approve the rights of the Settlement Class under the Agreement.

### D.     The Court Should Schedule A Final Approval Hearing

If the Court grants preliminary approval of the Agreement and approves the form and

manner of notice to the Settlement Class, then the Court may schedule the following: notice to

the Class of proposed settlement, giving Settlement Class members an opportunity to file any

Objections, and a final approval hearing.  Toward those ends, the parties propose the following

schedule (in the event that the Court grants preliminary approval on January 23, 2014):

| | |
|---|---|
| Deadline to distribute/post notice to the Settlement Class: | January 30, 2014 (seven (7) days from preliminary approval order) |
| Deadline to file opening papers in support of final approval of the Agreement: | March 6, 2014 (thirty-five (35) days from provision of notice to the Settlement Class) |
| Deadline for Settlement Class members to file objections, if any: | March 20, 2014 (forty-nine (49) days from provision of notice to the Settlement Class) |
| Deadline for filing reply papers in support of final approval of the Agreement: | March 27, 2014 (fifty-six (56) days from provision of notice to the Settlement Class) |
| Final settlement approval hearing: | April 10, 2014 (seventy (70) days from provision of notice to the Settlement Class) |

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary

approval of the Agreement (including approval of the Settlement Class), and enter the Proposed

Order, filed concurrently, directing that notice be given to class members as proposed and setting

a hearing date and briefing schedule for final settlement approval.

///

///

1    Dated:  December 19, 2013           Respectfully submitted,

2
                                         By: /s/ Catherine E. Moreno
3                                             Catherine E. Moreno

4                                        WILSON SONSINI GOODRICH & ROSATI
                                         *Professional Corporation*
5                                        David J. Berger
                                         Thomas J. Martin
6                                        Angie Young Kim
                                         Savith S. Iyengar
7                                        Briza Sanchez

8                                        LAWYERS' COMMITTEE FOR CIVIL
                                         RIGHTS OF THE SAN FRANCISCO BAY
9                                        AREA
                                         Paul Chavez
10                                       Robin Goldfaden

11                                       AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION OF NORTHERN
12                                       CALIFORNIA, INC.
                                         Julia Harumi Mass
13                                       Jingni (Jenny) Zhao
                                         Alan L. Schlosser
14
                                         *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28