DAVID J. BERGER, State Bar No. 147645
CATHERINE E. MORENO, State Bar No. 264517
THOMAS J. MARTIN, State Bar No. 150039
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: tmartin@wsgr.com

PAUL CHAVEZ, State Bar No. 241576
ROBIN GOLDFADEN, State Bar No. 208055
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Facsimile: (415) 543-0296
Email: pchavez@lccr.com

JULIA HARUMI MASS, State Bar No. 189649
JINGNI (JENNY) ZHAO, State Bar No. 284684
ALAN L. SCHLOSSER, State Bar No. 49957
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UELIAN DE ABADIA-PEIXOTO, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>　　　　　Defendants. | Case No.: 3:11-cv-4001 RS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   April 10, 2014<br>Time:   1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Ctrm:  3, 17th Floor |

1

**NOTICE OF MOTION AND MOTION**

2

TO THE CLERK OF THE COURT AND ALL COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on April 10, 2014, at 1:30 p.m., before the Honorable

4  Richard Seeborg of the United States District Court for the Northern District of California,

5  Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, named plaintiffs

6  and class representatives Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose and

7  Mi Lian Wei ("Plaintiffs") will and hereby do make, pursuant to Fed. R. Civ. P. 23(e), an

8  unopposed motion for final approval of settlement in the above-captioned class action (the

9  "Motion") set forth in the parties' settlement agreement ("Agreement"), dated December 18,

10  2013, filed herewith.  Plaintiffs respectfully request that the Court enter the proposed Final Order

11  and Stipulated Dismissal, filed in final form herewith.  Plaintiffs also move for approval of

12  attorneys' fees and costs provision of the Agreement under Fed. R. Civ. P. 54(d)(2).

13      This Motion is made on grounds that the proposed Agreement is fair, reasonable, and

14  adequate and should therefore be approved.  The Court granted preliminary approval of the

15  Agreement on January 23, 2014.  Notice to the class was thereafter provided as detailed below.

16  To date, counsel has received no objections to the proposed settlement.

17      The Motion is based upon this Motion, the supporting Memorandum of Points and

18  Authorities, the Agreement and its exhibits, the Declarations of Catherine E. Moreno, Julia

19  Harumi Mass, Paul Chavez, Robin Goldfaden, Angie Young Kim, Jeff Rosenblum, and Eddie

20  Robinson, any argument of counsel, and all papers and records on file in this matter.

21

22

23

24

25

26

27

28

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS

-i-

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................2

III. SUMMARY OF THE AGREEMENT ..............................................................5

IV.  CLASS NOTICE AND RESPONSE TO PROPOSED SETTLEMENT ...........9

V.   ARGUMENT ..................................................................................................11

    A.   The Court Should Grant Final Approval of the Settlement Agreement ...............11

        1.   Legal Standard ................................................................................11

        2.   The Proposed Settlement Merits Final Approval .....................................12

            a.   The Settlement Provides Substantial Relief for Settlement Class Members ................................................................................12

            b.   The Strength of Plaintiffs' Claims Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favors Approval of the Settlement ..............................13

            c.   The Stage of Proceedings and Discovery Thus Far Has Enabled Sufficient Evaluation of the Merits of the Claims ..........13

            d.   The Recommendation of Experienced Counsel Favors Approval ................................................................................15

            e.   The Presence of a Governmental Participant Favors Approval ................................................................................15

            f.   The Class Members' Reaction Favors Approval .......................15

            g.   The Risk of Maintaining Class Action Status Throughout the Trial Is a Neutral Factor .................................................16

    B.   Certification of the Settlement Class Is Appropriate ...........................................16

    C.   The Attorneys' Fees Provision of the Agreement Is Reasonable ..........................17

VI.  CONCLUSION ...............................................................................................18

Unopposed Notice of Mot., Mot., & Mem. of        -ii-
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adoma v. University of Phoenix*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) ..................................... 15

*Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275, 2013 WL 3340939
    (E.D. Cal. July 2, 2013) ....................................................................................... 16

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..................................................... 15, 16

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................................ 11

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d
    939 (9th Cir. 1981) ............................................................................................ 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................... 11, 16, 17, 18

*Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974, 2010 WL 2889728 (E.D.
    Cal. July 21, 2010) ............................................................................................. 16

*Nat'l Rural Teecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ....... 14, 15, 16

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 11, 12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).................................................. 11

*West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558
    (E.D. Cal. Oct. 20, 2006)................................................................................... 15

## RULES

Civil L. R. 7-4(a)(3) .................................................................................................................. 1

Fed. R. Civ. P. 23 ............................................................................................................... 16, 17

Fed. R. Civ. P. 23(a) ............................................................................................................... 16

Fed. R. Civ. P. 23(b)................................................................................................................ 16

Fed. R. Civ. P. 23(e)............................................................................................................ 2, 11

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 3

Fed. R. Civ. P. 34 ..................................................................................................................... 5

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS
    -iii-

1

2

## I.      INTRODUCTION

This class action settlement is a success for the Settlement Class.  Uelian De Abadia-Peixoto, Esmar Cifuentes, Pedro Nolasco Jose and Mi Lian Wei ("Named Plaintiffs" or "Plaintiffs"), on behalf of the class certified in this action, respectfully submit this memorandum in support of their unopposed motion for final approval of the proposed settlement of this action. Plaintiffs and Defendants have reached settlement of Plaintiffs' action pursuant to the terms and conditions contained in the settlement agreement ("Agreement"), dated December 18, 2013, and filed herewith.[1]  *See* Moreno Decl., Ex. 1.  Pursuant to Civil L. R. 7-4(a)(3), the issue to be decided is whether the Court should grant final approval the Agreement.

Plaintiffs' complaint sought declaratory and injunctive relief on behalf of a class certified as all current and future adult immigration detainees who have or will have proceedings in Immigration Court in San Francisco.  The complaint challenged as unconstitutional Defendants' then-extant policy and practice of shackling all civil immigration detainees appearing in San Francisco Immigration Court at their wrists, waists, and ankles during their Master Calendar, Bond, and Merits Hearings without an individualized determination of the need for restraints. The parties actively litigated this action for over two years before reaching the proposed settlement, with the substantial assistance of Magistrate Judge Laurel Beeler.

As discussed in detail herein, pursuant to the Agreement, Defendants will change their practice such that members of the Settlement Class will no longer be restrained during their Bond and Merits Hearings absent narrowly-defined emergency situations.  While Defendants may continue to restrain Settlement Class members during Master Calendar Hearings, involving simultaneous appearance of multiple respondents, Settlement Class members will be able to request a modification of such restraints where a physical, psychological, or medical condition

---

[1] All capitalized terms not defined herein are defined in the Agreement, submitted as Exhibit 1 to the Declaration of Catherine E. Moreno ("Moreno Decl.").  The Settlement Class is defined in the parties' Agreement as all current and future adult immigration detainees who have or will have proceedings in Immigration Court in San Francisco during the period from December 23, 2011 (the date of this Court's class certification order) to three years from the Effective Date of the Agreement (*i.e.*, the full term of the Agreement).  *See id.* at § I.11.

1   would prevent the application of restraints in a safe and humane manner.  Defendants have also

2   agreed not to chain detainees to one another under any circumstances.  In addition, Defendants

3   have agreed to arrangements that will facilitate confidential attorney-client communications

4   before and during Master Calendar Hearings.

5         Following the Court's preliminary approval of the Agreement on January 23, 2014, the

6   parties implemented the comprehensive notice plan approved by the Court.  The plan included

7   posting notices in all facilities holding Settlement Class members, sending notices to all

8   organizations on the list of low-fee and free legal services provided to Settlement Class

9   members, sending notice via email to the Northern California chapter of the American

10  Immigration Lawyers Association and the Northern California chapter of the National Lawyers'

11  Guild, and posting notice on the websites of the Executive Office for Immigration Review

12  ("EOIR"), United States Immigration and Customs Enforcement ("ICE"), the American Civil

13  Liberties Union Foundation ("ACLU") of Northern California, and the Lawyers' Committee for

14  Civil Rights of the San Francisco Bay Area.  The parties provided notices in English, Spanish,

15  Chinese, and Punjabi.  To date, counsel has not received a single objection.

16        The Court should grant final approval to the settlement because it is fair, adequate, and

17  reasonable.  As discussed below, the settlement easily satisfies the Ninth Circuit's standards for

18  final approval.  Given the complexities of this constitutional class action and the continued risks

19  if the parties were to proceed, the Agreement provides substantial relief for the Settlement Class

20  members and eliminates the risk that the Settlement Class might obtain less or nothing at all.

21  The recommendation of experienced counsel also weighs in favor of approval, especially

22  following extensive discovery and months of arm's-length settlement negotiations with the

23  governmental defendants and their counsel.  Accordingly, Plaintiffs move the Court under Fed.

24  R. Civ. P. 23(e) for entry of the [Proposed] Final Order and Stipulated Dismissal, submitted

25  herewith.

26  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

27        On August 15, 2011, Plaintiffs filed their class action civil rights complaint for injunctive

28  and declaratory relief against Defendants.  Dkt. No. 1.  Plaintiffs argued that the Due Process

1   Clause of the Fifth Amendment to the United States Constitution prohibited Defendants' then-

2   extant policy and practice of shackling all immigration detainees during all of their Immigration

3   Court proceedings.  *Id.*  Two days later, Plaintiffs moved for class certification and appointment

4   of class counsel.  Dkt. No. 5.  On September 8, 2011, Defendants filed a motion seeking

5   enlargement of time to file their opposition to Plaintiffs' motion for class certification (Dkt.

6   No. 23), which Plaintiffs opposed (Dkt. No. 27) and the Court denied on September 12, 2011

7   (Dkt. No. 29).  On October 11 and October 14, 2011, Defendants moved to dismiss Plaintiffs'

8   action (Dkt. No. 33) and opposed Plaintiffs' motion for class certification (Dkt. No. 34),

9   respectively.  After further briefing from Plaintiffs (Dkt. Nos. 35, 40) and Defendants (Dkt.

10  No. 45) and a hearing on these motions (Dkt. No. 46), the Court on December 23, 2011, denied

11  Defendants' motion to dismiss and certified Plaintiffs' class of "all current and future adult

12  immigration detainees who have or will have proceedings in immigration court in San

13  Francisco" (Dkt. No. 52).

14          Following the Court's Order, Plaintiffs began extensive discovery into Defendants'

15  shackling policies and practices and related matters.  Between January 24, 2012 and April 12,

16  2013, Plaintiffs served Defendants with four sets of document requests, four sets of

17  interrogatories, and one set of requests for admission.  Defendants served two sets of document

18  requests, one set of interrogatories and one set of requests for admission on the Named Plaintiffs

19  and/or members of the Plaintiff class between September 28, 2012 and April 26, 2013.  Plaintiffs

20  also noticed Rule 30(b)(6) depositions of Defendants ICE (on July 2, 2012, re-noticed

21  January 25, 2013, and May 3, 2013) and EOIR (on July 2, 2012) and depositions of Supervisory

22  Detention and Deportation Officers ("SDDOs") Yakov Grinberg (on October 17, 2012) and

23  Johnny J. Bailey (on April 26, 2013), Assistant Chief Immigration Judge Print Maggard, Field

24  Office Director Timothy S. Aitken, Assistant Field Office Director Jason M. McClay, and

25  Deputy Field Office Director David W. Jennings (also noticed on April 26, 2013).  Defendants

26  noticed the depositions of Named Plaintiffs Esmar Cifuentes (on February 16, 2012), Uelian De

27  Abadia-Peixoto, and Pedro Nolasco Jose (on July 25, 2012, re-noticed July 27, 2012, October 12,

28  2012, and October 25, 2012), and Mi Lian Wei (on July 25, 2012, re-noticed July 27, 2012).

Defendants deposed Named Plaintiff Cifuentes on February 16, 2012, prior to his deportation to Guatemala, Named Plaintiffs Abadia-Peixoto and Nolasco Jose on November 15, 2012, and Named Plaintiff Wei on November 30, 2012.  Plaintiffs deposed SDDO Grinberg on November 16, 2012.

During this time, the parties engaged in numerous rounds of discovery motion practice and hearings before Magistrate Judge Kandis Westmore.  These efforts are partially summarized below.  On August 31, 2012, Plaintiffs sought to move to compel the production of various categories of documents withheld by Defendants.  Dkt. Nos. 81, 82.  On the same day, Defendants moved for a protective order limiting the scope of Plaintiffs' discovery.  Dkt. No. 83.  Per Magistrate Judge Westmore's Standing Order, the parties met and conferred regarding the issues contained in Plaintiffs' motion to compel and submitted a joint discovery letter outlining their remaining disputes on October 22, 2012.  Dkt. Nos. 91, 99.  Separately, Plaintiffs opposed Defendants' motion for protective order.  Dkt. No. 89.  Defendants' motion was heard on November 1, 2012.  Dkt. No. 91.  Magistrate Judge Westmore denied Defendants' motion on November 13, 2012.  Dkt. No. 109.  Three days later, Magistrate Judge Westmore issued her Order regarding the parties' October 22, 2012 joint discovery letter, ordering Defendants to produce significant additional documents.  Dkt. No. 110.  The parties updated Magistrate Judge Westmore with a joint discovery status letter on November 19, 2012 (Dkt. No. 111), and the Court issued an order on the status letter on November 30, 2012 (Dkt. No. 114).

Following *in camera* review of Defendants' documents pursuant to her November 16, 2012 Order, Magistrate Judge Westmore ordered Defendants to produce additional documents in four consecutive orders based on the Court's *in camera* review – on January 7, 2013 (Dkt. No. 116), February 1, 2013 (Dkt. No. 122), February 27, 2013 (Dkt. No. 128), and March 27, 2013 (Dkt. No. 132).  Defendants moved for leave to file a motion for reconsideration of Magistrate Judge Westmore's March 27, 2013 order on April 2, 2013 (Dkt. No. 133), which Magistrate Judge Westmore granted in part and denied in part on April 9, 2013 (Dkt. No. 134).  Defendants moved this Court for relief from the nondispositive order of the Magistrate Judge on April 23, 2013 (Dkt. No. 135), which Plaintiffs opposed (Dkt. No. 142).

On April 24, 2013, the parties submitted their third and final joint discovery letter, regarding Plaintiffs' efforts to obtain Rule 34 inspection of the Immigration Court building in San Francisco.  Dkt. No. 138.  Magistrate Judge Westmore ruled on the joint letter on July 12, 2013, generally ordering Defendants to make various portions of the building housing the Immigration Court available for Plaintiffs' inspection.  Dkt. No. 157.  Plaintiffs also sought discovery from the detention facilities that house immigration detainees who appear in Immigration Court in San Francisco, subpoenaing the West County Detention Facility, Sacramento County Sheriff's Department, and Yuba County Jail on January 28, 2013.  After considerable discussion with representatives of these facilities (including the assistance of Defendants), Plaintiffs received production on May 2, 2013 (Sacramento), June 14, and August 15-16, 2013 (Yuba County) and November 8, 2013 (West County).  Ultimately, Plaintiffs received and reviewed more than twenty thousand pages of documents from Defendants and the detention facilities.

While Plaintiffs continued to aggressively seek thorough discovery into Defendants' shackling policies and practices, the parties moved to stay discovery several times based on their progress toward settlement (as well as the government shutdown, which occurred in the midst of the parties' settlement efforts).  The Court referred the case to Magistrate Judge Beeler on March 20, 2012, for the purpose of completing a settlement conference.  Dkt. No. 66.  The parties met with Magistrate Judge Beeler for their first settlement conference, which lasted more than nine hours, on June 13, 2012.  Dkt. No. 76.  Thereafter, the parties met with Magistrate Judge Beeler by telephone and/or in person on November 28, 2012 (Dkt. No. 113), February 20 and 25 (Dkt. Nos. 125, 127), March 6, 11, and 15 (Dkt. Nos. 129, 130, 131), June 25 and 28 (Dkt. Nos. 155, 156), July 24 (Dkt. No. 161), September 25 (Dkt. No. 176), and November 6, 15, 18 and 19, 2013 (Dkt. Nos. 190, 195, 197, 200).  These discussions culminated in the parties' December 18, 2013 Agreement.  *See* Moreno Decl., Ex. 1.

## III.    SUMMARY OF THE AGREEMENT

The Agreement resolves the above-captioned class action as to all Defendants.  *Id.* at 1. Its term will extend three years from the Effective Date.  *Id.* at § I.3.

***The Settlement Class***.  The parties have agreed that the Settlement Class will consist of all current and future adult immigration detainees who have or will have proceedings in Immigration Court in San Francisco during the period from December 23, 2011 (the date of this Court's class certification order) to three years from the Effective Date of the Agreement (*i.e.*, the full term of the Agreement).  *Id.* at § I.11.

***Bond and Merits Hearings***.  Pursuant to the Agreement, during two of the three types of Immigration Court proceedings in San Francisco – Bond and Merits Hearings – detainees will not be restrained, except in emergency situations.  *Id.* at § III.3.  Specifically, officers will be allowed to restrain detainees in emergency situations to protect the safety of the detainee, other detainees, the public, and ICE or EOIR personnel, or to prevent escape.  *Id.* at § III.4.  For example, if a detainee becomes combative, disruptive, violent, or threatening, an officer may decide to apply restraints or keep them applied during the hearing.  *Id.*  An SDDO will document all emergency situations that led to the use of restraints on a detainee during a hearing in the Comments screen of ICE's Enforce Alien Removal Module ("EARM") database.  *Id.*  A detainee who is restrained due to his or her behavior will be restrained in all future hearings, unless he or she requests that ICE modify or eliminate the use of restraints based on medical, physical, or psychological grounds that prevent the application of restraints in a safe and humane manner.  *Id.*  An SDDO will consider the request and any undue hardship imposed on the detainee from the application of full restraints, and, as soon as practicable, either grant the request, deny the request, reduce the level of restraints, or consider additional available alternatives.  *Id.*  This decision will be documented in the Comments screen of EARM and communicated to the detainee and/or his or her attorney verbally or in writing, and will include the basis for the decision (to the extent that it does not reveal specific information that would compromise law enforcement sensitive information).  *Id.*

***Master Calendar Hearings***.  In the remaining type of Immigration Court proceeding – Master Calendar Hearings – detainees will appear in full restraints unless an SDDO modifies the level of restraints either due to exigent circumstances or pursuant to a detainee's request based on a physical, psychological, or medical condition that would prevent application of restraints in

1    a safe and humane manner, where application of full restraints would impose undue hardship on

2    a detainee (which determination will include a consideration of whether the application of

3    restraints would aggravate an existing injury or disability, and, if necessary, involve guidance

4    from the Immigration Health Services Corps). *Id.* at § III.2.  If necessary, the SDDO may

5    mitigate any security threat posed by allowing a detainee to appear without restraints by

6    assigning additional officers to the court or making arrangements with the Immigration Court for

7    a separate appearance by the detainee. *Id.*  Again, any request to modify the level of restraints

8    and the SDDO's decision with respect to each request will be documented in the Comments

9    screen of EARM and communicated to the detainee and/or his or her attorney verbally or in

10   writing, and will include the basis for the decision, to the extent that it does not reveal specific

11   information that would compromise law enforcement sensitive information. *Id.*  Regardless of

12   the level of restraints imposed, detainees will not be attached to each other during hearings. *Id.*

13          Defendants have also agreed to facilitate confidential attorney-client consultations related

14   to Master Calendar Hearings by allowing Settlement Class members to engage in such

15   consultations in ICE's visiting rooms prior to the hearings. *Id.* at § V.  ICE will maintain two

16   visiting rooms, one of which will generally be made available for consultations from 7:00 a.m. to

17   11:00 a.m. (prior to and during Master Calendar Hearings), and Defendants will generally make

18   best efforts to keep one pew in the courtroom free for brief attorney-client consultations during

19   Master Calendar Hearings. *Id.*  Defendants will also ensure that each Respondent has a copy of

20   his or her Notice to Appear during these periods. *Id.*  ICE will also post in English, Spanish,

21   Chinese, and Punjabi the written notice attached as Exhibit A to the Agreement in the detention

22   facilities where Detained Respondents are housed and in the holding areas of the building

23   housing the Immigration Court in San Francisco. *Id.* at § IV.  ICE will also provide a copy of

24   this written notice in all four languages to Settlement Class members during ICE's intake

25   process. *Id.*  In addition, within 90 days of the Effective Date, the immigration judges presiding

26   over Master Calendar Hearings will make a statement at the commencement of each hearing

27   summarizing ICE's restraints practices at Master Calendar Hearings and informing detainees that

28   they may request a change to the use of restraints for their respective circumstances. *Id.*

***Monitoring and Data Collection.*** Beginning ninety (90) days from the Agreement's Effective Date, Defendants will periodically monitor contract officers and collect certain data regarding the new restraints policy. *Id.* at §§ VII-VIII.[2] Defendants also will monitor and assess G4S contract officers to ensure their compliance with and implementation of the new restraints policy, and ICE will document the monitoring process and maintain records of its assessments of G4S's performance. *Id.* at § VII. San Francisco ICE ERO will also maintain the EARM Comments screens referenced above reflecting (i) the application of restraints and reasons for applying restraints to any Settlement Class members in Bond and Merits Hearings (*i.e.*, based on emergency situations), and (ii) requests by Respondents to be accommodated with a lower level or removal of restraints for Master Calendar Hearings and the dispositions of such requests. *Id.* at § VIII. San Francisco ICE ERO will, on a bi-annual basis, provide Plaintiffs' counsel copies of the EARM Comment screens for any detainee who was restrained for a Bond or Merits Hearing or whose request for removal or lessening of restraints for a Master Calendar Hearing was denied. *Id.* Defendants' obligation to provide EARM Comment screens will extend either three years if Plaintiffs invoke the Agreement's Dispute Resolution Process or two years if Plaintiffs do not do so. *Id.*

***Attorneys' Fees.*** Defendants have agreed to pay Plaintiffs' reasonable attorneys fees and costs in the amount of three hundred and fifty thousand dollars ($350,000.00), which shall constitute the full and final satisfaction of Plaintiffs' claims for attorneys' fees, costs, and litigation expenses that could have been brought in the above-captioned matter, and is inclusive of any interest. *Id.* at § XIII.

***Notice Provisions.*** The Agreement states that the parties are to provide direct notice to the Settlement Class by (i) sending notice via U.S. mail and/or email to all organizations included on the list of low-fee and free legal services provided to respondents in removal proceedings before the San Francisco Immigration Court; (ii) sending notice via email to the list-

---

[2] Defendants will also provide training to Impacted ICE ERO Personnel and Immigration Judges concerning the new policies and procedures. *Id.* at § VI.

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS                                                    -8-

1    servs for the Northern California chapter of the American Immigration Lawyers Association

2    ("AILA") and the Northern California chapter of the National Lawyers' Guild; (iii) posting

3    notice in areas visible to immigration detainees in all facilities holding respondents appearing

4    before the San Francisco Immigration Court; and (iv) posting notice on the websites of EOIR,

5    ICE, ACLU of Northern California, and Lawyers' Committee for Civil Rights of the San

6    Francisco Bay Area. *Id.* at § IX.  The Agreement provides that all postings be in English,

7    Spanish, Chinese, and Punjabi, and all parties provide alternate format copies of the notice upon

8    request.  It further provides that notice be posted/distributed by the parties within seven (7)

9    working days of the date of entry of the Preliminary Approval Order, and remain posted for no

10   less than thirty (30) days.  *Id*.

11           Settlement Class members were able to object to the proposed Agreement by submitting

12   Objections to Class Counsel in writing, via regular or electronic mail, or by leaving a message

13   with the Objection via telephone.  Settlement Class members were also informed of their right to

14   appear at the final approval hearing, provided they comply with the process for submitting

15   Objections.

16           ***Release.***  Pursuant to the Agreement, Plaintiffs will release Defendants from all claims

17   asserted in this lawsuit or that could have been asserted on behalf of the Settlement Class arising

18   from the facts and circumstances alleged in the Complaint, including all claims for injunctive or

19   declaratory relief.  The Agreement and its waiver and release will not impact the ability of any

20   individual class member (other than the Named Plaintiffs) (i) to bring a claim for monetary

21   damages in his or her individual capacity arising from or related to injury suffered as a result of

22   Defendants' application of restraints to such class member, or (ii) to argue that the application of

23   restraints adversely affected such individual class member's ability to defend or present his or

24   her case to the Immigration Court in San Francisco.  *Id*. at § XIV.

25   **IV.    CLASS NOTICE AND RESPONSE TO PROPOSED SETTLEMENT**

26           Pursuant to the Court's January 23, 2014 Preliminary Approval Order, the parties:

27           (i)      sent notice in English, Spanish, Chinese, and Punjabi via U.S. mail to all

28                    organizations included on the list of low-fee and free legal services provided to

1 respondents in removal proceedings before the San Francisco Immigration Court

2 on January 30, 2014.  Declaration of Angie Young Kim ("Kim Decl.) ¶ 2.

3   (ii) sent notice in English, Spanish, Chinese, and Punjabi via email to the list-servs for

4     the Northern California chapter of AILA and the Northern California chapter of

5     the National Lawyers' Guild on January 30, 2014.  Declaration of Robin

6     Goldfaden ("Goldfaden Decl.") ¶ 2.

7   (iii) posted notice in English, Spanish, Chinese, and Punjabi for at least thirty (30)

8     days in areas visible to immigration detainees in all facilities holding respondents

9     appearing before the San Francisco Immigration Court beginning January 30,

10     2014, except that the Punjabi translation was posted at the Yuba County Jail

11     beginning on February 3, 2014.  Declaration of Eddie Robinson ("Robinson

12     Decl.") ¶ 3.[3]

13   (iv) posted notice for at least thirty (30) days on the websites of ICE and EOIR in

14     English, Spanish, and Chinese, beginning on January 30, 2014, and in Punjabi

15     beginning on January 31, 2014.  *Id.* ¶ 6; Declaration of Jeff Rosenblum

16     ("Rosenblum Decl.") ¶¶ 3-4, 7.[4]

17   (v) posted notice in English, Spanish, Chinese, and Punjabi for at least thirty (30)

18     days on the websites of the ACLU of Northern California, and Lawyers'

19     Committee for Civil Rights of the San Francisco Bay Area, beginning on

20     January 30, 2014.  Goldfaden Decl. ¶ 3; Declaration of Julia Harumi Mass ("Mass

21     Decl.") ¶ 9.

22

23   [3] The delay in posting the Punjabi translation of the notice at Yuba County Jail was due to delay in receipt of the Punjabi translation and technical difficulties at Yuba County Jail.  *Id.* at

24 ¶¶ 4-5.  The Punjabi translation remains posted, so that it has been available for at least the full thirty (30) days called for by the Preliminary Approval Order.  *Id.* at ¶¶ 3-5.

25   [4] The delay in posting the Punjabi translation of the notice to the websites of ICE and EOIR was due to what Defendants viewed as translation deficiencies in the Punjabi translation initially

26 provided by Plaintiffs and the time needed to modify the translation and provide Plaintiffs time to review those changes.  Robinson Decl. at ¶¶ 4, 6; Rosenblum Decl. at ¶¶ 4-5.  The Punjabi

27 translation remains posted, so that it has been available for at least the full thirty (30) days called for by the Preliminary Approval Order.  Robinson Decl. at ¶ 6; Rosenblum Decl. at ¶¶ 3-4, 7.

28

1    The deadline for receipt of Settlement Class members' objections to the final approval of

2    the Agreement is March 20, 2014.  To date, Plaintiffs' counsel have not received any objections

3    in writing, via regular or electronic mail, or by telephone or voicemail.  Goldfaden Decl. ¶ 4;

4    Mass Decl. ¶ 10; Kim Decl. ¶ 5.  Nor have the parties received any requests for copies of the

5    notice in any alternate format.  Goldfaden Decl.") ¶ 4; Mass Decl. ¶ 10; Kim Decl. ¶ 5; Robinson

6    Decl. at ¶ 7; Rosenblum Decl. at ¶ 6.  Should any objections be received prior to the final

7    approval hearing, the parties will promptly inform the Court.

8    **V.    ARGUMENT**

9         **A.    The Court Should Grant Final Approval of the Settlement Agreement**

10             **1.    Legal Standard**

11    It is well established in the Ninth Circuit that "voluntary conciliation and settlement are

12    the preferred means of dispute resolution.  This is especially true in complex class action

13    litigation[.]"  *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,

14    688 F.2d 615, 625 (9th Cir. 1982); *see Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

15    Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation.  This is

16    particularly true in class action suits which are now an ever increasing burden to so many federal

17    courts and which frequently present serious problems of management and expense.").

18    In approving a proposed settlement of a class action under Federal Rule of Civil

19    Procedure 23(e), a court must find that the proposed settlement is "fair, adequate and

20    reasonable."  *Officers for Justice*, 688 F.2d at 625.  To determine whether a settlement is fair,

21    adequate, and reasonable, courts in the Ninth Circuit typically evaluate it based upon the

22    following non-exclusive list of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status throughout
> the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
> and the stage of the proceedings; (6) the experience and views of counsel; (7) the
> presence of a governmental participant; and (8) the reaction of the class members to
> the proposed settlement.

23

24

25

26

27    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v.*

28    *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  No one factor controls, and the

"importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

### 2.   The Proposed Settlement Merits Final Approval

The parties respectfully request that the Court grant final approval of the Agreement because it is well within the requisite range of fairness, adequacy, and reasonableness.

### a.   The Settlement Provides Substantial Relief for Settlement Class Members

In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628.  The Agreement unquestionably benefits the Settlement Class by ending Defendants' policy and practice of shackling all detainees at Bond and Merits Hearings.  Under the Agreement, Defendants may not restrain Settlement Class members in Bond and Merits Hearings except in emergency situations (*i.e.*, where a detainee becomes combative, disruptive, violent, or threatening).  This represents a sea change from Defendants' challenged policy and practice, under which all detainees were fully shackled during the entirety of their Bond and Merits Hearings – which in some instances involve several different days of proceedings and often include the taking of testimony from the respondents themselves – despite what Plaintiffs alleged to be shackles' painful interference with detainees' ability to participate in their own proceedings.

Further, while Defendants may continue to restrain Settlement Class members during Master Calendar Hearings, which typically involve several individuals appearing at the same time, Defendants may no longer shackle detainees to one another ("daisy-chaining"), will set aside spaces for private attorney-client consultations, and must allow detainees to request removal or modification of restraints prior to and/or at the hearing itself based on physical, psychological, or medical condition(s).  Again, this change is significant and indisputably benefits the Settlement Class.  Eliminating "daisy-chaining" and setting aside spaces outside and, when possible, within the courtroom will enable private attorney-client consultations otherwise

-12-

1   not possible under Defendants' challenged policy and practice.  Additionally, to the extent that

2   shackles affect detainees' mental state and/or physical condition, the Agreement will allow

3   Settlement Class members to request and obtain modification and/or removal of restraints even

4   in Master Calendar Hearings.

5                            **b.      The Strength of Plaintiffs' Claims Balanced Against the Risk,
                                      Expense, Complexity, and Likely Duration of Further**

6                            **Litigation Favors Approval of the Settlement**

7               Given Plaintiffs' aggressive prosecution of this action both before and after filing suit,

8   Plaintiffs' counsel understood the strengths and weaknesses of their claims, both factually and

9   legally, throughout the action – including during the parties' settlement discussions (which began

10  on June 13, 2012) – and were able to effectively engage in rigorous negotiations with Defendants

11  (*See* Dkt. No. 76).  Entering into settlement negotiations, Plaintiffs and their counsel were

12  confident in the strength of their case, but also pragmatic in their awareness of the risks inherent

13  in litigation.  For example, Plaintiffs would face the risk of dismissal at the summary judgment

14  stage.  Resolution of such a dispositive motion would turn on the adjudication of matters such as

15  the required showing of prejudice to the Class as a result of Defendants' restraints practices

16  relative to Defendants' asserted interests.

17              Plaintiffs could certainly not have counted on injunctive relief as beneficial to the Class

18  as the terms of the Agreement had the case proceeded to trial, and success on the merits was by

19  no means guaranteed.  Defendants were expected to adduce expert testimony and evidence

20  concerning their restraints practices, leading to a "battle of the experts" that inherently carries

21  some risk.  Even if Plaintiffs did prevail through motion practice and at trial, relief to the Class

22  could be delayed for years by an appeal.  Moreover, such relief, if it were attained, might be

23  narrower in scope and effect than that obtained as a result of this settlement.  Given the

24  complexities of this constitutional class action and the continued risks if the parties were to

25  proceed, the Agreement represents a favorable resolution and eliminates the risk that the

26  Settlement Class might recover less or nothing at all.

27                            **c.      The Stage of Proceedings and Discovery Thus Far Has
                                      Enabled Sufficient Evaluation of the Merits of the Claims**

28

1      The extent of discovery completed and the stage of proceedings at the time of settlement

2 are relevant "in determining the adequacy of the parties' knowledge of the case." *Nat'l Rural*

3 *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  These

4 considerations also weigh in favor of approval.

5      Prior to filing the Complaint on August 15, 2011, Plaintiffs conducted an extensive

6 investigation into the claims asserted therein.  Plaintiffs' counsel observed over one hundred

7 bond and master calendar hearings in Immigration Court in San Francisco, interviewed dozens of

8 adult immigrant detainees, and consulted with numerous legal practitioners and experts in the

9 fields of mental health and courtroom security.  Dkt. No. 6 (Pls.' Mem. in Supp. of Class Cert.)

10 at 15.  Plaintiffs' investigation continued after filing suit and successfully opposing Defendants'

11 motion to dismiss (Dkt. Nos. 27, 29) and obtaining class certification on behalf of "all current

12 and future adult immigration detainees who have or will have proceedings in immigration court

13 in San Francisco" (Dkt. No. 52).

14      Plaintiffs (and Defendants) engaged in extensive discovery, including numerous rounds

15 of discovery requests, several rounds of briefing and two discovery hearings before Magistrate

16 Judge Kandis Westmore aimed at expanding the scope of Defendants' production, challenging

17 the applicability of asserted privileges, and/or compelling production of specific responsive

18 documents.  In total, Plaintiffs reviewed over twenty thousand pages of documents obtained from

19 Defendants ICE and EOIR and third parties West County Detention Facility, Sacramento County

20 Sheriff's Department, and Yuba County Jail.  Plaintiffs also conducted outreach to the Class via

21 letter, procured a telephone line through which detainees could (and did) contact Plaintiffs'

22 counsel, and personally interviewed more than twenty detainees regarding their experiences with

23 restraints in Immigration Court in San Francisco.  Defendants, for their part, sought documents

24 and testimony from the Named Plaintiffs and members of the Plaintiff class.  Plaintiffs and

25 Defendants each noticed numerous depositions, and the parties respectively took and/or defended

26 several depositions before agreeing to stay discovery based on promising settlement discussions

27 before Magistrate Judge Beeler (as well as the intervening government shutdown).

28

**d.     The Recommendation of Experienced Counsel Favors Approval**

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *see Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

Class Counsel is experienced in the litigation, certification, trial, and settlement of complex claims, including class actions.  Moreno Decl. at ¶¶ 3-8; Mass Decl. at ¶¶ 2-4; Declaration of Paul Chavez ("Chavez Decl.") at ¶¶ 2-3.  Class Counsel has determined that the Settlement is in the best interest of the Class, especially because it provides substantial relief and eliminates the risk that the Settlement Class might obtain less or nothing at all if the litigation proceeds.

**e.     The Presence of a Governmental Participant Favors Approval**

All the defendants in this case are governmental entities or actors.  Defendants include the United States Department of Homeland Security ("DHS"); Rand Beers, Acting Secretary of DHS; ICE; John Sandweg, Acting Director of ICE; Timothy Aitken, Field Office Director of the San Francisco District of ICE; Eric H. Holder, Jr., United States Attorney General; EOIR; and Juan P. Osuna, Director of EOIR (collectively, "DOJ Defendants").  The DOJ Defendants' presence in this litigation and endorsement of the settlement weigh in favor of approval.  *See Adoma v. University of Phoenix*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (presence of governmental participant weighed in favor of approving settlement).

**f.     The Class Members' Reaction Favors Approval**

"The lack of objections to the settlement is perhaps the most significant factor weighing in favor of settlement." *West v. Circle K Stores, Inc.*, No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *19-*20 (E.D. Cal. Oct. 20, 2006); *accord Nat'l Rural*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.").

1  To date, Class Counsel has not received a single objection to the settlement despite

2  widespread notice of the settlement in four languages informing class members – and many of

3  the attorneys who represent class members in their immigration proceedings – that they may

4  object in writing, via regular or electronic mail, or by leaving a message with the Objection via

5  telephone.  This further supports approval of the settlement.

6  Moreover, in the event any objections are received, it is "established that the absence of a

7  large number of objections to a proposed class action settlement raises a strong presumption that

8  the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural*

9  *Telecomms.*, 221 F.R.D. at 529; *see Boyd*, 485 F. Supp. at 624 (approving settlement where 16

10  percent of class filed some opposition to settlement).

11  **g.  The Risk of Maintaining Class Action Status Throughout the Trial Is a Neutral Factor**

12

13  The Court has already certified a class nearly identical to the Settlement Class proposed

14  by the parties.  Plaintiffs are unaware of any specific difficulty in maintaining class-action status

15  in this case, and thus this factor is neutral.  *See Barbosa v. Cargill Meat Solutions Corp.*,

16  No. 1:11-cv-00275, 2013 WL 3340939, at *13 (E.D. Cal. July 2, 2013) ("Because the Court is

17  not aware of any risks to maintaining class-action status throughout trial, this factor is neutral.");

18  *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974, 2010 WL 2889728, at *7 (E.D. Cal.

19  July 21, 2010) (where court was unaware of any specific difficulty in maintaining class-action

20  status through trial, court did not consider this factor for settlement purposes).

21  **B.  Certification of the Settlement Class Is Appropriate**

22  A court may certify a settlement class if a plaintiff demonstrates that all of the

23  prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the

24  requirements of Rule 23(b) have been met.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1022.

25  Here, the Court has already certified a class nearly identical to the Settlement Class proposed by

26  the parties.  Indeed, if anything, the Settlement Class is narrower in that it is time-bound by the

27  term of the Agreement.

28

1     Because the Court has already found that a class consisting of "all current and future

2     adult immigration detainees who have or will have proceedings in immigration court in San

3     Francisco" meets the requirements of Rule 23, the parties respectfully propose that certification

4     of the Settlement Class (*i.e.*, "all current and future adult immigration detainees who have or will

5     have proceedings in immigration court in San Francisco between December 23, 2011, to three

6     years from the Effective Date of the Agreement") is likewise appropriate in connection with final

7     approval of the settlement.

8         **C.      The Attorneys' Fees Provision of the Agreement Is Reasonable**

9         The attorneys' fees and costs provision should be approved as part of the Agreement

10    because it:  (1) was not the result of collusion or a sacrifice of the interests of the class; and

11    (2) represents a discount to the lodestar for the hours and rates Plaintiffs' counsel have recorded

12    in connection with their prosecution of this action.

13        This Agreement was the product of extensive, months-long negotiations conducted with

14    the substantial guidance and assistance of Magistrate Judge Beeler.  Indeed, the parties

15    participated in at least fifteen separate in-person or telephonic settlement conferences involving

16    Magistrate Judge Beeler, in addition to conducting numerous informal settlement talks by

17    telephone over the course of eighteen months.  During the course of these negotiations, the

18    parties engaged in extensive discovery, including contentious related motion practice.  The

19    parties did not negotiate attorneys' fees until after there was an agreement in principle on all the

20    substantive aspects of the Agreement.  Moreno Decl. at ¶ 12; Mass Decl. at ¶ 8; Chavez Decl. at

21    ¶ 7.  Under such circumstances, it is clear that the Agreement is the product of vigorous, arm's-

22    length bargaining and that "the fee was not the result of collusion or a sacrifice of the interests of

23    the class[.]"  *Hanlon*, 150 F.3d at 1029.

24        "In employment, civil rights, and other injunctive relief class actions, courts often use a

25    lodestar calculation because there is no way to gauge the net value of the settlement or any

26    percentage thereof."  *Id*.  The lodestar calculation "begins with the multiplication of the number

27    of hours reasonably expended by a reasonable hourly rate."  *Id*.

28

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS

-17-

1    Here, Defendants have agreed to pay Plaintiffs' reasonable attorneys fees and costs in the

2    amount of three hundred and fifty thousand dollars ($350,000.00), which shall constitute the full

3    and final satisfaction of Plaintiffs' claims for attorneys' fees, costs, and litigation expenses that

4    could have been brought in the above-captioned matter, and is inclusive of any interest.  Moreno

5    Decl. Ex. 1 at § XIII.  The amount of attorneys' fees to be paid is a figure negotiated with the

6    assistance of Magistrate Judge Beeler.  Moreno Decl. at ¶ 12; Mass Decl. at ¶ 8; Chavez Decl. at

7    ¶ 7.  It represents a discount to the lodestar for the hours and rates Plaintiffs' counsel have

8    recorded in connection with their prosecution of this action.  Moreno Decl. at ¶¶ 9-10 (noting

9    that lodestar for Wilson Sonsini Goodrich & Rosati attorney timekeepers for 2011-2013,

10   applying Equal Access to Justice Act rates, amounts to over $935,685 – a figure that does not

11   include costs or significant time devoted to this matter by staff); *see also* Mass Decl. at ¶¶ 5-6;

12   Chavez Decl. at ¶¶ 4-5.  Moreover, the amount of attorneys' fees was disclosed in the notice to

13   the Settlement Class (*see, e.g.*, Kim Decl. Ex. 2), and no objections have been received to date.

14   Goldfaden Decl. ¶ 4; Mass Decl. ¶ 10; Kim Decl. ¶ 5.

15   **VI.    CONCLUSION**

16       For the foregoing reasons, Plaintiffs respectfully request that the Court grant final

17   approval of the settlement.

18   Dated:  March 6, 2014                    Respectfully submitted,

19

20                                           By: /s/ Catherine E. Moreno
                                                  Catherine E. Moreno

21                                           WILSON SONSINI GOODRICH & ROSATI
22                                           *Professional Corporation*
                                             David J. Berger
23                                           Thomas J. Martin
                                             Angie Young Kim
24                                           Savith S. Iyengar
                                             Briza Sanchez

25

26

27

28

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
Paul Chavez
Robin Goldfaden

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
Julia Harumi Mass
Jingni (Jenny) Zhao
Alan L. Schlosser

*Attorneys for Plaintiffs*

Unopposed Notice of Mot., Mot., & Mem. of
P. & A. in Supp. of Final Approval
3:11-cv-4001 RS                                              -19-