# EXHIBIT 1

EXECUTION COPY

1   STUART F. DELERY
    Acting Assistant Attorney General
2   Civil Division
    DAVID J. KLINE
3   Director, Office of Immigration Litigation
    District Court Section
4   WILL SILVIS
    Senior Litigation Counsel
5   EREZ REUVENI
    United States Department of Justice
6   Office of Immigration Litigation
    District Court Section
7   P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
8   Telephone: (202) 307-4293
    Facsimile: (202) 616-8962
9   Email: erez.r.reuveni@usdoj.gov

10  Attorneys for Defendants

11                  **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                    **SAN FRANCISCO DIVISION**

14  UELIAN DE ABADIA-PEIXOTO, *et al.*,          No. Civ. 11-4001 RS (LB)

15              Plaintiffs,

16          v.                                    SETTLEMENT AGREEMENT

17  UNITED STATES DEPARTMENT OF
    HOMELAND SECURITY, RAND BEERS,
18  Acting Secretary of the United States
    Department of Homeland Security, UNITED
19  STATES IMMIGRATION AND CUSTOMS
    ENFORCEMENT, JOHN SANDWEG,
20  Acting Director of U.S. Immigration and
    Customs Enforcement, TIMOTHY AITKEN,
21  Field Office Director of the San Francisco
    District of U.S. Immigration and Customs
22  Enforcement, ERIC H. HOLDER, JR., United
    States Attorney General, THE EXECUTIVE
23  OFFICE FOR IMMIGRATION REVIEW,
    and JUAN P. OSUNA, Director of the
24  Executive Office for Immigration Review,

25              Defendants.

26

27

28

                          1

This Settlement Agreement ("Agreement") is entered into by all Plaintiffs and Defendants in this class action lawsuit (collectively, "the Parties"). Plaintiffs are immigration detainees in the custody of U.S. Immigration and Customs Enforcement ("ICE") who have or will have proceedings in immigration court in San Francisco, California. Defendants are the United States Department of Homeland Security ("DHS"); Rand Beers, Acting Secretary of DHS; United States Immigration and Customs Enforcement ("ICE"); John Sandweg, Acting Director of ICE; Timothy Aitken, Field Office Director of the San Francisco District of ICE (collectively, "DHS Defendants"); Eric H. Holder, Jr., United States Attorney General; the Executive Office for Immigration Review ("EOIR"); and Juan P. Osuna, Director of EOIR (collectively, "DOJ Defendants").

WHEREAS, Plaintiffs filed this class action lawsuit in the United States District Court for the Northern District of California on August 15, 2011 (*De Abadia-Peixoto, et al. v. DHS, et al.*, 11-CV-4001 RS (N.D. Cal. 2011)), alleging that Defendants engage in the unconstitutional practice of restraining Detained Respondents during in-court appearances at the San Francisco Immigration Court "without an individualized determination" that restraints are necessary.

WHEREAS, Defendants deny all allegations;

WHEREAS, the Parties believe it is in their mutual interest to settle this action to avoid the risk and burden of trial in this matter, and accordingly enter into this Agreement to resolve this class action lawsuit;

NOW, THEREFORE, in full settlement of this action and in consideration of the promises and undertakings set forth herein, the sufficiency of which is hereby acknowledged, it is hereby stipulated and agreed, by and between the undersigned, as follows:

## I.    Definitions

1.    "Plaintiffs" are the representatives and members of the class certified by this Court on December 23, 2011, which is defined as "all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco."

2.    "Defendants" are the United States Department of Homeland Security ("DHS"); Rand Beers, Acting Secretary of DHS; United States Immigration and Customs Enforcement ("ICE");

John Sandweg, Acting Director of ICE; Timothy Aitken, Field Office Director of the San Francisco District of ICE (collectively, "DHS Defendants"); and Eric H. Holder, Jr., United States Attorney General; the Executive Office for Immigration Review ("EOIR"); Juan P. Osuna, Director of EOIR (collectively, "DOJ Defendants").

3.      The "Effective Date" is the date upon which the Court approves this Agreement and adopts its terms in a final order.

4.      "Immigration Court Practice Manual" refers to the Office of the Chief Immigration Judge, "Immigration Court Practice Manual," available at www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1.htm.

5.      "San Francisco Immigration Court" consists of the immigration courtrooms in the federal building at 630 Sansome Street, San Francisco, CA 94111 (including any "spill-over" rooms sometimes utilized as immigration courtrooms).

6.      "Detained Respondents" or "Respondents" are adults detained in the custody of ICE, and whom ICE transports to the San Francisco Immigration Court so they may appear in person before an Immigration Judge for their hearings.

7.      "Restraints" is defined as a means to physically restrict the movement of an individual by application of handcuffs, leg cuffs, leg weights, fetters, waist chains, or other implements at the hands, wrists, ankles, feet, waist or elsewhere on the body.

8.      "Merits Hearing" is a hearing in an immigration removal proceeding, as described in chapter 4.16 of the "Immigration Court Practice Manual," at which the Respondent may present to the Immigration Judge any evidence and testimony in opposition to charges of removability or in support of the detainee's applications for relief from removal.  "Merits Hearing" excludes bond hearings, status conference hearings, and master calendar hearings.

9.      "Bond Hearing" is a hearing, as described in chapter 9 of the "Immigration Court Practice Manual," at which the parties may present to the Immigration Judge any evidence and testimony relevant to a bond redetermination for a Detained Respondent, including *Joseph* and *Casas* hearings and any other hearings related to custody or supervision.

10.      "Master Calendar Hearing" is a brief hearing, as described in chapter 4.15 of the

"Immigration Court Practice Manual," where multiple Respondents are present at the San Francisco

Immigration Court, during which the Immigration Judge takes pleadings, schedules the cases for

future hearings, and handles other similar routine administrative matters.

11.      "Settlement Class" includes all current and future adult immigration detainees who

have or will have proceedings in immigration court in San Francisco during the period from

December 23, 2011, to three years from the Effective Date of this Agreement.


**II.      Temporal Scope and Expiration of the Agreement**

This Agreement, and all responsibilities and obligations contained herein, shall begin on the

Effective Date and terminate three years from the Effective Date of this Agreement.


**III.     Use of Restraints in Immigration Court**

Within 90 days of the Effective Date, application of restraints to members of the Settlement

Class appearing in person for their hearings in the San Francisco immigration courtrooms at 630

Sansome Street will be limited as follows:

1.      General Principles:  Defendants' policy for the use of restraints in San Francisco

Immigration Court will preserve the dignity of immigration court proceedings as well as the dignity

of individual detainees appearing in court, while protecting the safety and security of all participants

and other detainees, ICE and EOIR personnel, and members of the public.  With the exception of

Master Calendar Hearings, ICE will not restrain detainees for their hearings absent emergency

situations.

2.      Master Calendar Hearings:  In general, all detainees will appear at Master Calendar

Hearings in full restraints as defined in ERO *Use of Restraints Policy*, issued by Executive Associate

Director Gary Mead on November 19, 2012.  However, any Supervisory Detention and Deportation

Officer ("SDDO") assigned to ERO Detention Operations will be authorized to modify the level of

restraints in exigent circumstances.  In addition, at any time prior to a Master Calendar Hearing or at

the hearing itself, any detainee shall have the ability to request a modification of the level of

1   restraints if the detainee is suffering from a physical, psychological, or medical condition that would

2   prevent application of restraints in a safe and humane manner.  Any ERO or G4S officer who

3   becomes aware of such concerns will, as soon as practicable, notify an SDDO assigned to ERO

4   Detention Operations.  The SDDO will consider the detainee's condition and, if necessary, seek

5   guidance from the Immigration Health Services Corps (IHSC).  If an SDDO determines that

6   application of full restraints would impose undue hardship on the detainee (which determination will

7   include a consideration of whether the application of restraints would aggravate an existing injury or

8   disability), the SDDO will have the authority to reduce the level of restraints. If necessary, the

9   SDDO may also mitigate the security threat posed by the detainee by assigning additional officers to

10  the court or making arrangements with the immigration court for a separate appearance by the

11  detainee.  The SDDO's decision regarding a detainee's request to remove or reduce the level of

12  restraints to be applied at a Master Calendar Hearing will be documented in the Comments screen of

13  the Enforce Alien Removal Module ("EARM") and communicated to the detainee and/or his or her

14  attorney verbally or in writing, and will include the basis for the decision, to the extent it does not

15  reveal any specific information that would compromise law enforcement sensitive information.

16  Regardless of the level of restraints imposed, detainees shall not be attached to each other during

17  hearings.

18          3.      Bond and Merits Hearings:  In general, detainees appearing for Bond and Merits

19  Hearings will not be restrained for the duration of the hearing, except for emergency situations as

20  described in paragraph 4.

21          4.      Emergency Situations:  Officers are allowed to apply restraints in emergency

22  situations to protect the safety of the detainee, other detainees, the public, and ICE or EOIR

23  personnel, or to prevent escape.  For example, should the detainee become combative, disruptive,

24  violent, or threatening, the officer may decide to apply restraints or keep them applied during the

25  hearing.  The officer will contact the SDDO, contract security supervisor, or ERO Detention

26  Operations Control Room as soon as practicable to advise of the situation.  Following notification,

27  the SDDO will document in the Comments screen of EARM any emergency situation that would

28  cause the use of restraints on the detainee during the hearing.  If a detainee was previously restrained

1    due to his or her behavior, then that detainee will be restrained for all future hearings.  However, if a

2    detainee who was previously restrained due to his or her behavior believes that she or he has

3    medical, physical, or psychological grounds that would prevent the application of restraints in a safe

4    and humane manner, then the detainee can request to modify or eliminate the use of restraints in

5    future Bond or Merits Hearings. The detainee can make such a request by either submitting a written

6    request before his or her next Bond or Merits Hearing to ICE, or by making the request to ICE at the

7    hearing.  If such a request is made, it will be communicated to the SDDO as soon as practicable.

8    This may require contacting a SDDO directly through a contract security supervisor via cell phone

9    or radio.  The SDDO will consider the request and any undue hardship imposed on the detainee from

10   the application of full restraints, and provide a response as soon as practicable.  The SDDO may

11   grant the request, deny the request, reduce the level of restraints, or consider additional available

12   alternatives.  The decision will be documented in the Comments screen of EARM and

13   communicated to the detainee and/or his or her attorney verbally or in writing, and will include the

14   basis for the decision, to the extent it does not reveal any specific information that would

15   compromise law enforcement sensitive information.

16

17   **IV**.   **Notice**

18        Within 90 days of the Effective Date, ICE will post, in English, Spanish, Chinese and

19   Punjabi the written notice attached as Exhibit A, in the detention facilities where Detained

20   Respondents are housed and in the holding areas of 630 Sansome Street.  In addition, within 90 days

21   of the Effective Date, ICE will provide a copy of the written notice attached as Exhibit A in English,

22   Spanish, Chinese, and Punjabi to Settlement Class members during ICE's intake process.

23        Also, within 90 days of the Effective Date, the immigration judge presiding over each Master

24   Calendar Hearing will make the statement (to be interpreted into every language represented in the

25   hearing for which there is a court interpreter who can provide such interpretation) that "ICE has a

26   policy regarding the use of restraints in Court, and under this policy, people are generally restrained

27   for this type of hearing.  If you have not received a copy of the notice reflecting this policy, or if you

28

wish to request a change to the use of restraints in your case at this hearing, please advise the court at this time."

### V.   Private Attorney Consultations for Master Calendar Hearings

To facilitate attorney-client consultations related to Master Calendar Hearings, the parties agree and acknowledge that class members may engage in such consultations in ICE's visiting rooms on the sixth floor at 630 Sansome Street, San Francisco, California, prior to the hearings.  ICE will maintain two visiting rooms, one of which will be made available for confidential attorney consultations from 7:00 a.m. to 8:45 a.m. in advance of Master Calendar Hearings, and absent operational constraints arising from day-to-day management of ICE operations, from 8:45 a.m. to 11:00 a.m., during Master Calendar Hearings.  Defendants will ensure that each Respondent has a copy of his or her Notice to Appear.  ICE will also make reasonable efforts, in light of daily operational needs, to ensure attorneys are able to reasonably access detainees for consultations in the visiting rooms from 7:00 a.m. to 11:00 a.m. on days when Master Calendar Hearings are scheduled. In addition, Defendants will make best efforts to keep one pew in the courtroom free for brief attorney-client consultations during Master Calendar hearings provided it does not interfere with or disrupt Defendants' ability to conduct proceedings or the safety and security of the courtroom.  If necessary, ICE may adjust the number of Respondents in the courtroom for Master Calendar Hearings in order to ensure that one pew can be made available for private attorney-client consultations.

### VI.   Notice of Policy Change and Training on Implementation

1.      Within 30 days of the Effective Date, Defendants will provide written notice of the policy referred to in Section III above to all SDDOs, EROs, and managers of SDDOs (collectively, "Impacted ICE ERO San Francisco Personnel") and to all G4S officers assigned to work with Detained Respondents and to the Immigration Judges (including judges who only sometimes staff the detained court) at the San Francisco Immigration Court.

2.      Within 45 days of the Effective Date, EOIR will instruct all affected Immigration Judges at the San Francisco Immigration Court on the settlement agreement and EOIR's role in the new policy.

3.      Within 60 days of the Effective Date, ICE will train all Impacted ICE ERO San Francisco Personnel on the new policy. From the Effective Date of this Agreement and until the termination of this Agreement, ICE Defendants will ensure that new ICE personnel impacted by the new San Francisco restraints policy described in Section III also receive training on the restraints policies and practices within a reasonable period after assuming their positions.  Defendant ICE also agrees to periodically monitor and assess Impacted ICE ERO San Francisco Personnel to ensure their compliance with implementation of the new restraints policy referenced in this section.  Upon the Effective Date of this Agreement and until its termination, Defendants shall maintain copies of this Settlement Agreement at their San Francisco offices and make it available for all personnel involved with the custody and control of Settlement Class members.

### VII.    Monitoring Contract G4S Officers

Beginning 90 days from the Effective Date of this Agreement and continuing until termination of this Agreement, Defendant ICE agrees to periodically monitor and assess G4S contract officers to ensure their compliance with and implementation of the new restraints policy referenced in Section III.  ICE will document the monitoring process and maintain records of its assessments of G4S's performance for a period of three years from the Effective Date.

### VIII.   Data Collection and Production

After 90 days from the Effective Date of this Agreement and until the Agreement's termination, San Francisco ICE ERO agrees to maintain EARM Comments screens reflecting the application of and reasons for applying restraints based on emergency situations as described in III.4. to any Settlement Class members in Bond or Merits Hearings as well as EARM Comments screens reflecting requests by Respondents to be accommodated with a lower level of restraint or removal of restraints for Master Calendar Hearings and dispositions of such requests.  Commencing 180 days

after the Effective Date of this Agreement, San Francisco ICE ERO will provide Plaintiffs' counsel, on a bi-annual basis, copies of the EARM Comment screens for any detainee who was restrained for a Bond or Merits Hearing due to an emergency situation, as described in III.4., during the preceding six (6) month period or whose request for removal or lessening of restraints for a Master Calendar Hearing was denied during that period.  The EARM Comment screen will be produced under the protective order the parties previously agreed to during this litigation, attached as Exhibit E. If, at any time prior to 30 days after receiving the fourth bi-annual production of EARM Comment screens under this section, Plaintiffs have not invoked the Dispute Resolution Process described in Section X below to raise concerns regarding ICE's compliance with Sections III, IV, or VIII of this Settlement Agreement, ICE will be relieved of its obligation to provide EARM Comment screens to Plaintiffs under this Section for the remainder of the term of the Settlement Agreement.

### IX.     Notice to Class and Approval of Settlement Terms

1.      Following execution of this Agreement, the parties will file the Stipulation and Proposed Order attached as Exhibit B, requesting that the Court preliminarily approve this Agreement, approve the Settlement Notice attached hereto as Exhibit C, approve the notice process set forth in paragraph 2 below, and set a hearing for Final Approval and Adoption of the Terms of this Agreement.

2.      The parties will propose to the Court that notice be 1) sent via U.S. mail and/or email to all organizations included on the list of low-fee and free legal services provided to respondents in removal proceedings before the San Francisco Immigration Court, 2) sent via email to the list-serv for the Northern California chapter of AILA (American Immigration Lawyers Association) and the Northern California chapter of the National Lawyers' Guild, 3) posted in areas visible to immigration detainees in all facilities holding respondents appearing before the San Francisco Immigration Court, 4) posted on the websites of EOIR, ICE, ACLU of Northern California, and Lawyers' Committee for Civil Rights of the San Francisco Bay Area.  All postings will be in accessible formats and in English, Spanish, Chinese, and Punjabi.  All parties will provide alternate format copies of the notice upon request. Notice will be posted/distributed by the parties within

seven (7) working days of the date of Preliminary Approval, and shall remain posted for no less than thirty (30) days. The parties will submit declarations to the Court as part of the motion for Final Approval confirming notice has been issued according to this paragraph.

3.      The parties will propose to the Court that any Class Member may object to  the proposed Agreement by submitting his or her objection ("Objection") to Class Counsel in writing, via regular or electronic mail, or by leaving a message with his or her Objection via telephone to the number previously provided by Defendants to facilitate contact with Class Counsel from persons within immigration detention facilities, no later than a date set by the Court in this case after preliminary approval of the Agreement. All Objections will be provided to counsel for Defendants within five calendar days and filed with the Court.  Only such objecting Class Members will have the right, if they seek it in their Objections, to present objections at the fairness hearing.

4.      The parties agree to amend the Settlement Notice and notice procedures as required by the Court in order to obtain Court approval and adoption of the terms of this Agreement in a final order in this case.  If Court approval of the Settlement is not granted following compliance with the notice provisions of this section, the terms of this Agreement will not become binding on the parties until those specific sections or actions the Court finds unsatisfactory are modified to the Court's satisfaction.  Notwithstanding the foregoing, the Court's disapproval of the parties' efforts to effectuate notice shall not invalidate the remainder of the Agreement, provided the Court ultimately grants final approval of this Settlement.

5.      Upon final approval of the settlement, the Court shall enter a final approval order in substantially the form attached hereto as Exhibit D, which will provide for the stipulated dismissal of this action with prejudice, except that the Court shall retain continuing jurisdiction over this matter for the purpose of administering, enforcing and overseeing this settlement.  Upon entry of the final approval order becoming final and no longer subject to an objector's appeal, the parties will be deemed to have released the Released Claims (as defined below), and the dismissal (except to the extent that the Court retains continuing jurisdiction over this matter for the purpose of administering, enforcing and overseeing this settlement) shall become effective.

### X.    Dispute Resolution Process

1.    In the event that either Plaintiffs or Defendants allege that the other party has failed to comply with the terms of this Agreement, the complaining party shall inform the other party in writing of the specific grounds upon which non-compliance is alleged.  Defendants shall respond in writing within a reasonable period, but no later than fourteen (14) business days.  The parties agree to make good faith attempts to resolve the issues informally, including a good faith attempt to agree on a reasonable date by which to cure instances of non-compliance.

2.    If any dispute cannot be resolved informally by the Parties pursuant to paragraph 1 of this section of the Agreement, Plaintiffs shall notify Defendants by letter and request that counsel meet and confer.  The Parties shall meet within fourteen (14) business days of Plaintiffs' notice, or on some other mutually agreed upon date, in an attempt to arrive at an amicable resolution of the dispute.  Nothing said by any party or counsel for any party during any and all meetings held pursuant to this paragraph may be used by any opposing party in subsequent litigation between the Parties or in any other lawsuit.

3.    Upon mutual agreement of the Parties, and the consent of Magistrate Judge Beeler, the Parties may refer a dispute unresolved after the meetings held pursuant to Paragraph 2 of this section to Magistrate Judge Beeler for mediation.

4.    If the dispute has not been resolved through mediation in conformity with this Agreement within 90 days, counsel for Plaintiffs may file a motion to enforce the terms of this Agreement with District Court Judge Seeborg.

5.    The parties agree that the United States District Court for the Northern District of California has jurisdiction to enforce the provisions of this Agreement.

6.    Good faith efforts to comply with the dispute resolution procedures set forth in this Agreement are a condition precedent to any action to enforce the Agreement by Plaintiffs.

### XI.    Termination of Agreement

1.    Except as provided in paragraph 2 of this section of this Agreement, *infra,* the relief granted in this Agreement shall terminate three years from the Effective Date.

2.      Notwithstanding paragraph 1 of this section of this Agreement, this Agreement shall not terminate to the extent that (a) Notice of Non-Compliance has been provided pursuant to Section X prior to the date of termination; (b) a motion is pending pursuant to Section X that raises claims that Defendants have, in whole or in part, failed to comply with this Agreement; or (c) to the extent that mediation pursuant to Section X is pending.  In the event that such a Notice of Non-Compliance has been provided prior to the date of termination or such motion or mediation is pending, this Agreement shall terminate as to any provision not at issue in the Notice of Non-Compliance, motion, or mediation.  If a Defendant is not subject to the Notice of Non-Compliance, motion or mediation described in this Paragraph, this Agreement shall terminate as to that Party, and the Parties shall stipulate to dismiss that Party from this action with prejudice.

### XII.    Admission of Liability

1.      Neither this Agreement nor anything contained herein shall constitute an admission of liability or fault on the part of the DHS or DOJ Defendants, sued in their official or personal capacities, or their agents, servants, or employees.  This Agreement is entered into by the parties for the purpose of compromising disputed claims, avoiding the expenses and risks of litigation, and achieving resolution of this contested action.

2.      No Precedential Value. This Agreement, whether or not executed, and any proceedings taken pursuant to it: shall not be offered or received against any party as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the parties of the truth or falsity of any fact, claim, defense or argument that was or could have been asserted in the action, or any admission of liability, negligence, fault, or wrongdoing by either party referred to in any other way for any other reason as against the parties to this Agreement, in any other civil, criminal, or administrative action or proceedings, other than in proceedings to enforce this Agreement; provided, however, that if this Agreement is approved by the Court, either party may refer to it and rely upon it to effectuate the protections granted them hereunder.

### XIII.   Attorney's Fees and Costs

Defendants agree to pay Plaintiffs reasonable attorney fees and costs in the amount of three hundred and fifty thousand dollars ($350,000.00).  Payment shall be made as soon as practicable, and in any event within thirty (30) days of the Effective Date, in the form of a wire transfer made to Wilson Sonsini Goodrich & Rosati.  The wire transfer instruction are as follows:

| | |
|---|---|
| Account Name: | Wilson Sonsini Goodrich & Rosati |
| | Transactions Trust Account |
| Bank: | Bank of America |
| | 530 Lytton Avenue |
| | Palo Alto, CA 94301 |
| Account No.: | 16645-62842 |
| ABA Routing No.: | 026009593 |
| SWIFT Code: | BOFAUS3N |
| Reference: | 15316/598 (Client/Matter) |

This payment shall constitute the full and final satisfaction of any and all of Plaintiffs' claims for attorneys' fees, costs, and litigation expenses that could have been brought in the above captioned matter, and is inclusive of any interest.

### XIV.   Finality and Release of Claims

Upon Final Approval of the settlement by the Court and subject to the fulfillment of the conditions set forth in this Agreement, the parties agree that the plaintiff class certified in this action (the "Plaintiff Class") on behalf of themselves, their guardians, heirs, executors, administrators, and assigns waive, release, and discharge Defendants, and all of their past and present agencies, officials, employees, agents, attorneys, successors, and assigns from any and all claims (whether known or unknown, suspected or unsuspected, arising in law or equity) that were or could have been asserted on behalf of the Plaintiff Class arising from or are related to the facts and circumstances alleged in the Complaint.  The foregoing release includes all claims for injunctive or declaratory relief, whether known or unknown, that could have been brought on behalf of members of the Plaintiff Class at any time prior to the date of settlement challenging the lawfulness of any policies or procedures governing the use of restraints in San Francisco Immigration Court ("Released Claims").

Defendants agree and acknowledge that this settlement, and specifically this waiver and release shall not impact any individual class member's (other than the named Plaintiffs) ability to

13

1  bring a claim for monetary damages in his or her individual capacity arising from or related to injury

2  suffered as a result of Defendants' application of restraints on such class member.  Defendants

3  further agree and acknowledge that this settlement, and specifically this waiver and release, shall not

4  impact any individual class member's (other than the named Plaintiffs') ability to argue (whether on

5  a Petition for Review, motion to reopen, or other appeal, application, request for review or petition to

6  modify such class member's order of removal or other immigration order) that the application of

7  restraints adversely affected such individual class member's ability to defend or present his or her

8  case to the San Francisco Immigration Court.  Defendants further agree and acknowledge that this

9  settlement, and specifically this waiver and release, shall not impact claims against future actions by

10  Defendants occurring after the expiration of the term of this Agreement, or not arising from the facts,

11  circumstances, and subject matter that gave rise to this action (including any individual habeas

12  challenge to the application of the agreed-to policies and procedures as to any Plaintiff alleging that

13  those policies and procedures are not being followed), any class-wide challenge to any policies or

14  procedures from the date of the settlement forward, provided that the policies and procedures have

15  changed since that time and are no longer materially identical to the agreed-to policies and

16  procedures of the settlement, and any claims for monetary damages arising out of any restraints-

17  related claim going forward.

18

19  **XV.  Modification of Agreement**

20  1.  This Agreement (including the attached exhibits) constitutes the entire agreement

21  among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior

22  agreements, representations, warranties, statements, promises, covenants, and understandings,

23  whether oral or written, express or implied, with respect to the subject matter hereof.

24  2.  This is an integrated agreement and may not be altered or modified, except according

25  to the specific provisions of this Agreement that address alteration or modification, or by a writing

26  signed by all parties in interest at the time of authorization or modification.

27  3.  The parties further acknowledge that the parties have mutually participated in the

28  drafting of this Agreement and it is agreed that no provision herein shall be construed against any

party hereto by virtue of the drafting of this Agreement.  If any provision of this Agreement shall be held invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.  This instrument shall constitute the entire agreement between the parties, and it is expressly understood and agreed that this agreement has been freely and voluntarily entered into by the parties hereto with the advice of counsel, who have explained the legal effect of this agreement.  The parties further acknowledge that no warranties or representations have been made on any subject other than as set forth in this Agreement.

## XVI.   Successors

This Agreement shall be binding on all successors, assignees, employees, and all those working for or on behalf of Defendants and Plaintiffs.  If any provision of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Dated:  December 18, 2013                    STUART F. DELERY
                                             Assistant Attorney General
                                             Civil Division
                                             DAVID J. KLINE
                                             Director, Office of Immigration Litigation
                                             District Court Section
                                             WILL SILVIS
                                             Senior Litigation Counsel

                                              /s/ Erez Reuveni_____
                                             EREZ REUVENI
                                             Trial Attorney
                                             United States Department of Justice
                                             Office of Immigration Litigation
                                             District Court Section
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, DC 20044
                                             Telephone: (202) 307-4293
                                             Facsimile: (202) 616-8962
                                             Email: erez.r.reuveni@usdoj.gov

                                             Attorneys for Defendants

WILSON SONSINI GOODRICH & ROSATI
*Professional Corporation*
David J. Berger
Catherine E. Moreno
Thomas J. Martin
Angie Young Kim
Savith S. Iyengar
Briza Sanchez

By: /s/      Catherine E. Moreno
               Catherine E. Moreno

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Paul Chavez
Robin Goldfaden

By: /s/      Paul Chavez
               Paul Chavez

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA,
INC.
Julia Harumi Mass
Alan L. Schlosser
Jingni (Jenny) Zhao

By: /s/      Julia Harumi Mass
               Julia Harumi Mass

*Attorneys for Plaintiffs*

# EXHIBIT A

**<u>Notice to Detainees Regarding Use of Restraints in San Francisco Immigration Court</u>**

      You are being detained in ICE (U.S. Immigration and Customs Enforcement) custody while you have immigration proceedings before the Immigration Court in San Francisco.  While in ICE custody, you may be transported to appear in person before an Immigration Judge in San Francisco.

      During your brief court hearings with a group of detainees (called "master calendar hearings") you will generally be restrained.  This means that you may wear leg restraints, a waist chain, and/or handcuffs.  For your longer hearings (called "bond" or "merits" hearings), during which you may be called to testify, you will generally not be restrained in court, unless there is an emergency situation. Officers are allowed to apply restraints in emergency situations to protect your safety and the safety of other detainees, the public, and ICE or EOIR personnel, or to prevent escape.  For example, if you become combative, disruptive, violent, or threatening, an officer may decide to apply restraints or keep them applied during the hearing.  If you are restrained due to this behavior, then you will be restrained for all future hearings.  However, you may request that ICE modify your restraints for any hearing because of a medical, physical, or psychological hardship that would prevent the application of restraints in a safe and humane manner.  You can make this request to ICE either (1) before your next hearing (in writing), or (2) at your next hearing (orally).  ICE may deny the request, reduce the level of restraints, remove restraints, or consider other available alternatives.  At any time that you are in restraints in Immigration Court, if the restraints are too tight or are causing pain, you may raise the issue with the Immigration Judge, who can refer the matter to an ICE officer.  You may also ask an officer to adjust the restraints. The officer will inspect the restraints and, if possible, make appropriate adjustments.  You may also raise any concerns about restraints at any time by contacting ICE through your attorney, through an officer, or through the Agent Request Form.

# EXHIBIT B

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **NORTHERN DISTRICT OF CALIFORNIA**

9 **SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| 10 | UELIAN DE ABADIA-PEIXOTO, *et al.*, | ) | Case No.:  3:11-cv-4001 RS |
| 11 | Plaintiffs, | ) ) | **<u>CLASS ACTION</u>** |
| 12 | v. | ) ) | **[PROPOSED] PRELIMINARY APPROVAL ORDER** |
| 13 | UNITED STATES DEPARTMENT OF | ) ) | |

UELIAN DE ABADIA-PEIXOTO, *et al.*,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, RAND BEERS,
Acting Secretary of the United States Department
of Homeland Security, UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT, JOHN SANDWEG, Acting
Director of U.S. Immigration and Customs
Enforcement, TIMOTHY AITKEN, Field Office
Director of the San Francisco District of U.S.
Immigration and Customs Enforcement, ERIC H.
HOLDER, JR., United States Attorney General,
THE EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW, and JUAN P.
OSUNA, Director of the Executive Office for
Immigration Review,

        Defendants.

Case No.:  3:11-cv-4001 RS

**<u>CLASS ACTION</u>**

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

Judge:  Honorable Richard Seeborg
Action Filed:  August 15, 2011

597989_1.docx

1      This matter having come before the Court on Plaintiffs' unopposed motion for

2  preliminary approval of the proposed settlement of the above-captioned class action (the

3  "Action") pursuant to the parties' settlement agreement ("Agreement"), and having duly

4  considered the papers and arguments of counsel, the Court hereby finds and orders as follows:

5      1.      Unless defined herein, all defined terms in this Order shall have the respective

6  meanings set forth in the Agreement.

7      2.      The Court has conducted a preliminary evaluation of the Agreement for fairness,

8  adequacy, and reasonableness.  Based on this preliminary evaluation, the Court finds that (i)

9  there is cause to believe that the Agreement is fair, reasonable, and adequate, and within the

10  range of possible approval, (ii) the Agreement has been negotiated in good faith at arm's-length

11  between experienced attorneys familiar with the legal and factual issues of this case, and (iii) the

12  notice of the material terms of the Agreement to members of the Settlement Class for their

13  consideration and reaction is warranted.  Therefore, the Court grants preliminary approval of the

14  Agreement.

15      3.      On _____, 2014 at _____ _.m. , or at such other date

16  and time later set by Court Order, this Court will hold a hearing on the fairness, adequacy, and

17  reasonableness of the Agreement ("Fairness Hearing") and will determine whether final approval

18  of the Agreement should be granted via entry of the Proposed Final Order and Stipulated

19  Dismissal attached as Exhibit D to the Agreement.

20      4.      The Court approves the form and manner of giving direct notice to the Settlement

21  Class by: (i) sending notice via U.S. mail and/or email to all organizations included on the list of

22  low-fee and free legal services provided to respondents in removal proceedings before the San

23  Francisco Immigration Court; (ii) sending notice via email to the list-serv for the Northern

24  California chapter of AILA (American Immigration Lawyers Association) and the Northern

25  California chapter of the National Lawyers' Guild; (iii) posting notice in areas visible to

26  immigration detainees in all facilities holding respondents appearing before the San Francisco

27  Immigration Court; and (iv) posting notice on the websites of EOIR, ICE, ACLU of Northern

28  California, and Lawyers' Committee for Civil Rights of the San Francisco Bay Area.  All

-1-

postings will be in English, Spanish, Chinese, and Punjabi, and all parties will provide alternate format copies of the notice upon request.  Notice will be posted/distributed by the parties within seven (7) working days of the date of entry of the Preliminary Approval Order, and shall remain posted for no less than thirty (30) days.  The parties will submit declarations to the Court as part of the motion for Final Approval confirming that notice has been issued according to this paragraph.  The notice in form, method, and content complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.  The Court hereby directs the parties to complete all aspects of the notice process no later than _____ days following the entry of the Preliminary Approval Order and in accordance with the terms of the Agreement.

5.      Any member of the Settlement Class may object to final approval of the Agreement by submitting his or her objection ("Objection") to Class Counsel in writing, via regular or electronic mail, or by leaving a message with his or her Objection via telephone to the number previously provided by Defendants to facilitate contact with Class Counsel from persons within immigration detention facilities; *provided, however*, that all Objections must be received by Class Counsel no later than twenty-one (21) days prior to the Fairness Hearing.  Class Counsel shall file any Objections with the Court no later than fourteen (14) days prior to the Fairness Hearing and will forward copies of any Objections to Defendants' counsel within five (5) calendar days of receipt.  A Settlement Class member who objects to the Settlement need not appear at the Fairness Hearing for his or her objection to be considered by the Court; however, any additional papers, briefs, pleadings, or other documents that any objector would like the Court to consider must be filed with the Court, with a copy postmarked to the parties' counsel, no later than twenty-one (21) days prior to the final approval hearing.  All papers filed by an objector shall include the caption *De Abadia-Peixoto, et al.*, No. 3:11-cv-4001 RS, and provide: (i) the Settlement Class member's full name and current address; (ii) a signed declaration that he or she believes himself or herself to be a member of the Settlement Class; (iii) the specific grounds for the objection; (iv) all documents or writings that such Settlement Class member

1    desires the Court to consider; and (vii) a notice of intention (if any) to appear at the Fairness

2    Hearing.

3         6.      Any Settlement Class member who fails to object in the manner prescribed herein

4    shall be deemed to have waived his or her objections and forever be barred from making any

5    such objections in this Action.  While the declaration described in subparagraph 5(ii) is *prima*

6    *facie* evidence that the objector is a member of the Settlement Class, the parties may take

7    discovery regarding the matter, subject to Court approval.  If an objector does not submit his or

8    her Objection in accordance with the deadline and procedure set forth in the notice, and the

9    Settlement Class member is not granted relief by the Court, the Settlement Class member will be

10   deemed to have waived his or her right to be heard at the Fairness Hearing.

11        7.      The Agreement, and the proceedings and statements made pursuant to the

12   Agreement or papers filed relating to the approval of the Agreement, and this Order, shall not be

13   offered or received against any party as evidence of, or construed as or deemed to be evidence

14   of, any presumption, concession, or admission by any of the parties of the truth or falsity of any

15   fact, claim, defense, or argument that was or could have been asserted in the Action, or any

16   admission of liability, negligence, fault, or wrongdoing by any party, or referred to in any other

17   way for any other reason as against the parties to the Agreement, in any other civil, criminal, or

18   administrative action or proceedings, other than in proceedings to enforce the Agreement.

19   Nothing contained herein, however, shall be construed to prevent the parties from offering the

20   Agreement into evidence for the purposes of enforcement of the Agreement.

21        **IT IS SO ORDERED** this _____th day of _____, 2014.

22

23

24   Dated: _____

25                                                    Honorable Richard Seeborg
                                                     United States District Judge

26

27

28

-3-

# EXHIBIT C

DAVID J. BERGER, State Bar No. 147645
THOMAS J. MARTIN, State Bar No. 150039
CATHERINE E. MORENO, State Bar No. 264517
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  tmartin@wsgr.com

PAUL CHAVEZ, State Bar No. 241576
ROBIN GOLDFADEN, State Bar No. 208055
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:  (415) 543-9444
Facsimile:   (415) 543-0296
Email:  pchavez@lccr.com

JULIA HARUMI MASS, State Bar No. 189649
JINGNI (JENNY) ZHAO, State Bar No. 284684
ALAN L. SCHLOSSER, State Bar No. 49957
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone:  (415) 621-2493
Facsimile:  (415) 255-8437
Email:  jmass@aclunc.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UELIAN DE ABADIA-PEIXOTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No.: 3:11-cv-4001 RS<br><br>**CLASS ACTION**<br><br>**[PROPOSED] NOTICE OF PROPOSED CLASS ACTION SETTLEMENT** |

***IMPORTANT:  PLEASE READ CAREFULLY***

***To:  All current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco during the period from December 23, 2011 to _____ [three years from the date on which the Court enters a final order approving the settlement] (the "Class").***

This notice is being given by Order of the Court to individuals who may be members of a class of current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco during the period from December 23, 2011 to _____, who are affected by the settlement of a class action lawsuit called *De Abadia Peixoto et al. v. United States Dept. of Homeland Security, et al.*, Case No.: 3:11-CV-4001 RS (U.S. District Court, Northern District of California).

The lawsuit claims that the practice, employed by Immigration and Customs Enforcement ("ICE"), of restraining all immigration detainees during their appearances in San Francisco Immigration Court was unconstitutional, and a violation of detainees' due process rights. Defendants, which include the United States Department of Homeland Security ("DHS"); Rand Beers, Acting Secretary of DHS; United States Immigration and Customs Enforcement ("ICE"); John Sandweg, Acting Director of ICE; Timothy Aitken, Field Office Director of the San Francisco District of ICE; Eric H. Holder, Jr., United States Attorney General; the Executive Office for Immigration Review ("EOIR"); and Juan P. Osuna, Director of EOIR (collectively, "Defendants") deny all wrongdoing.

The District Court has scheduled a hearing to consider the settlement on _____ at _____ __.m. in Courtroom ____, at the United States District Court, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102.

This hearing is referred to as the settlement hearing or fairness hearing.  If the District Court approves this settlement, all claims by Class members against Defendants that were or could have been asserted on behalf of the Class arising from or related to the facts and circumstances alleged in the lawsuit will be forever released (the "Released Claims").  The Released Claims include all claims for injunctive or declaratory relief (whether known or unknown) that could have

been brought on behalf of members of the Class at any time prior to the settlement challenging the lawfulness of policies or procedures governing the use of restraints in San Francisco Immigration Court.  This settlement does not release any individual class member's (other than the named plaintiffs') ability to bring a claim for monetary damages in his or her individual capacity arising from or related to injury suffered as a result of Defendants' application of restraints on such class member.  Nor does it impact any individual class member's (other than the named plaintiffs') ability to argue that the application of restraints adversely affected his or her ability to defend or present his or her case to the San Francisco Immigration Court.

     **The purpose of this notice is to inform you of:**

- **The nature of the lawsuit, and who is a member of the class;**
- **Your right to object to the settlement;**
- **A description of the terms of the proposed settlement; and**
- **How to find out more information about the proposed settlement.**

## <u>THE LAWSUIT AND THE CLASS</u>

     This lawsuit was filed as a class action on August 15, 2011 by four immigration detainees who had, or were scheduled to have, proceedings before the San Francisco Immigration Court. The lawsuit claims that Defendants' then-extant policy of restraining all immigration detainees during their immigration court proceedings was unconstitutional, and in violation of detainees' due process rights.  The plaintiffs sought injunctive relief and attorneys' fees.

     On December 23, 2011, the Court ruled that plaintiffs' claims could go forward on behalf of a class defined as "all current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco."

     The Court's order designated the following lawyers to serve as counsel to the class ("Class Counsel") in this action:

DAVID J. BERGER, State Bar No. 147645
CATHERINE E. MORENO, State Bar No. 264517
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

1  PAUL CHAVEZ, State Bar No. 241576
   LAWYERS' COMMITTEE FOR CIVIL RIGHTS
2  OF THE SAN FRANCISCO BAY AREA
   131 Steuart Street, Suite 400
3  San Francisco, CA 94105
   Telephone:  (415) 543-9444
4  Facsimile:  (415) 543-0296

5  JULIA HARUMI MASS, State Bar No. 189649
   ALAN L. SCHLOSSER, State Bar No. 49957
6  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   OF NORTHERN CALIFORNIA, INC.
7  39 Drumm Street
   San Francisco, CA 94111
8  Telephone:  (415) 621-2493
   Facsimile:  (415) 255-8437

9

10      The Court's order also appointed named plaintiffs Uelian De Abadia Peixoto, Pedro

11  Nolasco Jose, Mi Lian Wei, and Esmar Cifuentes as Class Representatives.

12                **DESCRIPTION OF THE PROPOSED SETTLEMENT**

13      On December 18, 2013, the parties to this lawsuit reached a proposed settlement.  The

14  settlement agreement provides, in summary, that:

15      1.  Defendants' policy for the use of restraints in San Francisco Immigration Court will

16          preserve the dignity of immigration court proceedings as well as the dignity of

17          individual detainees appearing in court, while protecting the safety and security of all

18          participants and other detainees, ICE and EOIR personnel, and members of the public.

19      2.  In general, all detainees will appear at Master Calendar hearings in full restraints

20          (meaning leg restraints, a waist chain and/or handcuffs).  However, any Supervisory

21          Detention and Deportation Officer ("SDDO") may modify the level of restraints used

22          at Master Calendar hearings in exigent circumstances, or upon a detainee's request to

23          have such restraints removed or reduced, if the detainee is suffering from a physical,

24          psychological or medical condition that would prevent the application of restraints in a

25          safe and humane manner.  The SDDO's decision regarding a detainee's request to

26          remove or reduce the level of restraints to be applied in a Master Calendar Hearing will

27          be documented by ICE and communicated to the detainees and/or his or her counsel.

28

-3-

3. Except for emergency situations (discussed below), detainees appearing for bond or merits hearings will not be restrained.

4. Officers may apply restraints in bond and merits hearing only in emergency situations to protect the safety of the detainee, other detainees, the public, ICE or EOIR personnel, or to prevent escape. Emergency situations include those in which the detainee becomes combative, disruptive, violent or threatening. If a detainee was previously restrained due to his or her behavior, that detainee will be restrained for all future hearings. However, if a detainee who was previously restrained due to his or her behavior believes that he or she has a medical, physical, or psychological grounds that would prevent the application of restraints in a safe and humane manner, he or she can request to modify or eliminate the use of restraints in future bond or merits hearings. The SDDO's decision regarding a detainee's request to remove or reduce the level of restraints to be applied in a bond or merits hearing will be documented by ICE and communicated to the detainees and/or his or her counsel.

5. Class members will receive a summary notice of the above-described change in Defendants' policies, to be posted in the detention facilities where they are housed, and in the holding areas of 630 Sansome Street. In addition, the immigration judge presiding over each master calendar hearing will make the following statement: "ICE has a policy regarding the use of restraints in Court, and under this policy, people are generally restrained for this type of hearing. If you have not received a copy of the notice reflecting this policy, or if you wish to request a change to the use of restraints in your case at this hearing, please advise the court at this time."

6. To facilitate attorney-client consultations related to master calendar hearings, ICE will maintain two visiting rooms, one of which will be made available for confidential attorney consultations from 7:00 a.m. to 8:45 a.m. in advance of master calendar hearings, and absent operational constraints arising from day-to-day management of ICE operations, from 8:45 a.m. to 11:00 a.m., curing master calendar hearings. Defendants will also ensure that detainees have a copy of his or her notice to appear.

-4-

In addition, Defendants will make best efforts to keep one pew in the courtroom free for brief attorney-client consultations during master calendar hearings, provided it does not interfere with or disrupt Defendants' ability to conduct proceedings or the safety or security of the courtroom.

7. For a period of at least two years, Class Counsel will receive documents and information concerning detainees who were restrained at bond or merits hearings due to an emergency situation, as well as requests by detainees to modify or reduce the level of restraints.

8. Defendants will pay Class Counsel reasonable attorneys' fees and costs in the amount of $350,000.

9. Class members will release the Released Claims against Defendants.

## **WHAT ARE YOUR RIGHTS AS A CLASS MEMBER?**

You do not need to do anything if you are satisfied with the settlement. If you are dissatisfied with any terms of the proposed settlement, you may object to the settlement by submitting your objection to Class Counsel in writing, via regular or electronic mail, or by leaving a message with your objection via telephone. If you are calling from inside a detention facility, you can use the free call system and dial 9160#. If you are calling from outside of detention, please call _____. If you make your objection in writing, you must direct it to:

> Julia Harumi Mass
> AMERICAN CIVIL LIBERTIES UNION FOUNDATION
> OF NORTHERN CALIFORNIA, INC.
> 39 Drumm Street
> San Francisco, CA 94111
> Jmass@aclunc.org

Your objection must be received no later than _____. If you do not make your objection by that date, you will lose the right to object. If you do object, you have the right to appear personally or through an attorney at the settlement hearing to present your objection to the Court. Except with special permission of the Court, you will not be permitted to object at the hearing if your objection is not received as described above on or before _____.

[PROPOSED] NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
Case No.: 3:11-cv-4001 RS

1      If, after the hearing, the Court rejects the settlement, it will be voided and litigation of this

2    case will continue.  If that happens, however, there is no assurance: (a) that any decision at trial

3    would be in favor of the Class; (b) that a favorable trial decision, if any, would be as favorable to

4    the Class as this settlement; or (c) that any such favorable trial decision would be upheld if any

5    appeal were filed.

6    __**HOW TO GET MORE INFORMATION ABOUT THE SETTLEMENT**__

7       If you have questions about the proposed settlement agreement, or would like to obtain a

8    copy of it, you may contact the lawyers who represent the class, at the address below:

9                 JULIA HARUMI MASS
                    AMERICAN CIVIL LIBERTIES UNION FOUNDATION

10              OF NORTHERN CALIFORNIA, INC.
                  39 Drumm Street

11             San Francisco, CA 94111
                  Telephone:  (415) 621-2493

12             Facsimile:  (415) 255-8437

13       From detention facilities you can use the free call system and dial 9160#.  There will be

14    no charge.

15    **DO NOT CONTACT DEFENDANTS, THE DISTRICT COURT OR THE JUDGE.**

16    Dated this _____ day of _____, 2014.

17

18             _____
             Clerk of the Court

19             United States District Court, Northern District of California

20

21

22

23

24

25

26

27

28

# EXHIBIT D

1   DAVID J. BERGER, State Bar No. 147645
    CATHERINE E. MORENO, State Bar No. 264517
2   THOMAS J. MARTIN, State Bar No. 150039
    WILSON SONSINI GOODRICH & ROSATI
3   Professional Corporation
    650 Page Mill Road
4   Palo Alto, CA 94304-1050
    Telephone:  (650) 493-9300
5   Facsimile:   (650) 565-5100
    Email:  tmartin@wsgr.com
6
    PAUL CHAVEZ, State Bar No. 241576
7   ROBIN GOLDFADEN, State Bar No. 208055
    LAWYERS' COMMITTEE FOR CIVIL RIGHTS
8   OF THE SAN FRANCISCO BAY AREA
    131 Steuart Street, Suite 400
9   San Francisco, CA 94105
    Telephone: (415) 543-9444
10  Facsimile:  (415) 543-0296
    Email:  pchavez@lccr.com
11
    JULIA HARUMI MASS, State Bar No. 189649
12  JINGNI (JENNY) ZHAO, State Bar No. 284684
    ALAN L. SCHLOSSER, State Bar No. 49957
13  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
    OF NORTHERN CALIFORNIA, INC.
14  39 Drumm Street
    San Francisco, CA 94111
15  Telephone:  (415) 621-2493
    Facsimile: (415) 255-8437
16  Email:  jmass@aclunc.org

17  Attorneys for Plaintiffs

18
19                   **UNITED STATES DISTRICT COURT**

20                  **NORTHERN DISTRICT OF CALIFORNIA**

21                     **SAN FRANCISCO DIVISION**

22   UELIAN DE ABADIA-PEIXOTO, *et al.*,        )   Case No.: 3:11-cv-4001 RS
                                                )
23                  Plaintiffs,                 )   **CLASS ACTION**
                                                )
24          v.                                  )   **[PROPOSED] FINAL ORDER AND
                                                )   STIPULATED DISMISSAL**
25   UNITED STATES DEPARTMENT OF                )
     HOMELAND SECURITY, *et al.*,               )
26                                              )
                    Defendants.                 )
27                                              )
                                                )
28   _____)

Pursuant to Federal Rule of Civil Procedure 23(e), and in accordance with the settlement agreement ("Agreement") entered into by all parties on December 18, 2013, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. This Final Order and Dismissal adopts and incorporates by reference the terms and definitions of the Agreement submitted as Exhibit 1 to the Declaration of Catherine E. Moreno, filed with Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. _____), attached hereto as Exhibit A.

2. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (declaratory relief), and 5 U.S.C. § 706 (waiver of sovereign immunity). The Court has personal jurisdiction over the Plaintiff Class (as defined in the Court's order granting Plaintiffs' Motion for Class Certification (Dkt. 52)), the Settlement Class (as defined in paragraph 5 herein), and Defendants.

3. The Notice of Proposed Settlement (the "Notice," in the form attached as Exhibit C to the Agreement, was directed to members of the Settlement Class in accordance with the Preliminary Approval Order (Dkt. _____), dated _____, and (a) constituted the best notice practicable under the circumstances and (b) was reasonably calculated, under the circumstances, to apprise Class members of the pendency of the Settlement and the release of rights contained in the Agreement. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided members of the Class due and adequate notice of the Settlement, the Agreement, these proceedings, and the rights of members of the Settlement Class to object to the Settlement.

4. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement as set forth in the Agreement and finds that the Settlement is in all respects fair, reasonable, and adequate to the Settlement Class members. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Agreement, which are incorporated by reference into this Final Order and Stipulated Dismissal.

5.   By its Preliminary Approval Order, dated _____, the Court preliminarily certified the following Settlement Class: All current and future adult immigration detainees who have or will have proceedings in immigration court in San Francisco during the term of the Agreement.

6.    The Court finds that this Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, including the requirements of numerosity, commonality, typicality, and adequacy pursuant to Rule 23(a) and at least one of the requirements of Rule 23(b). The Court hereby certifies the Settlement Class as described in Paragraph 5 of this Final Order and Dismissal.

7.   The Court approves Uelian De Abadia Peixoto, Esmar Cifuentes, Mi Lian Wei, and Pedro Nolasco Jose as Class Representatives for the Settlement Class.

8.   The Court finds that Class Counsel, Wilson Sonsini Goodrich & Rosati PC, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and the American Civil Liberties Union Foundation of Northern California, Inc. have fairly and adequately represented the interests of the Class and satisfied all the requirements of Rule 23(g) of the Federal Rules of Civil Procedure.

9.   Upon the Settlement becoming final in accordance with Section IX of the Agreement, the parties agree that this action will be DISMISSED.

10. Without in any way affecting the finality of this Final Order and Stipulated Dismissal, this Court has continuing jurisdiction as to all matters relating to the interpretation, administration, and enforcement of the Agreement.

11. The Court finds that this Final Order and Stipulated Dismissal adjudicates all of the claims, rights, and liabilities of the Parties to the Settlement, and is intended to be final.

IT IS SO ORDERED.


Dated: _____                    _____
                                                United States District Court Judge

1    Dated: _____, 2014                    Respectfully submitted,

2                                           By: /s/ Catherine E. Moreno
                                                Catherine E. Moreno
3                                           WILSON SONSINI GOODRICH & ROSATI
                                            *Additional Counsel on Caption Page*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL ORDER AND DISMISSAL
Case No.: 3:11-cv-4001 RS

# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UELIAN DE ABADIA-PEIXOTO, *et al.*, | Case No. CV 11-4001 RS |
| Plaintiffs, | SECOND STIPULATED AMENDED PROTECTIVE ORDER FOR STANDARD LITIGATION |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

1.  <u>PURPOSES AND LIMITATIONS</u>

    The Parties anticipate that during discovery in this action they will exchange documents, items, materials, and other information that contain sensitive, confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Amended Protective Order. Such sensitive and confidential information may include (1) certain law enforcement operations, policies and procedures, methods, techniques, guidelines, and reports of internal investigations that derive value from not being generally known to the public and which are the subject of reasonable efforts to maintain their secrecy and confidentiality, in order to protect the security interests of law enforcement officers and the integrity of law enforcement operations; (2) security arrangements, security plans, practices, policies, procedures, protocols or guidelines,

security audits or reviews, building layouts, documents reflecting architectural plans, blueprints or schematics, including but not limited to floor plans or plans specific to building security features, enhancements or vulnerabilities; (3) employee records, educational, medical and mental health records to the extent that such materials may be highly sensitive and confidential, in order to protect the privacy interests of the individuals to whom those records pertain; (4) information subject to the Privacy Act (codified at 5 U.S.C. § 552a) or the official information privilege that is protected from disclosure, in order to comply with the law; and (5) material containing private and confidential third-party information protected by the right to privacy guaranteed in Federal Constitution and the First Amendment, in order to protect the privacy interests of those third-parties.

The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 and General Order 62 set forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. <u>DEFINITIONS</u>

2.1 <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2 <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), under the Privacy Act, 5 U.S.C. § 552a, and/or HIPAA, 45 C.F.R. § 164.512, including confidential non-privileged information concerning members of the class certified in this action and other individuals. This Order authorizes Defendants to produce personally identifiable information that would otherwise be prohibited from disclosure under Privacy Act, 5 U.S.C. § 552a, and/or HIPAA, 45 C.F.R. § 164.512, without presenting Privacy

Act or HIPAA objections to this Court for a decision regarding disclosure. Some of this identifying information is likely to be contained within various law enforcement reports, agency records, and databases which are in the possession, custody, and control of Defendants and Defendants' counsel. To the extent the Privacy Act and/or HIPAA allows the disclosure of information pursuant to a Court order, this Order constitutes such a Court Order and authorizes the disclosure of that information. However, nothing in this Order shall require production of information that is prohibited from disclosure (even with the entry of this protective order) by other applicable privileges, statutes, regulations or authorities by which Defendants may be bound.

     2.3    <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

     2.4    <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

     2.5    <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

     2.6    <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

     2.7    <u>House Counsel</u>: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

     2.8    <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

     2.9    <u>Outside Counsel of Record</u>: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.10    <u>Party</u>:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.11    <u>Producing Party</u>:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12    <u>Professional Vendors</u>:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13    <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14    <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.    <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court

order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.     <u>DESIGNATING PROTECTED MATERIAL</u>

      5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

      Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

      If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

      5.2     <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

      Designation in conformity with this Order requires:

         (a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" to each page that contains protected material. If only a

Stipulated Amended Protective Order        -5-
Case No. CV-11-4001 RS

portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" legend to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges.  Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5 and General Order 62, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by

the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles.  In accordance with the terms of this Privacy Act Protective Order, pursuant to 5 U.S.C. § 552a(b)(11), Defendants are authorized to produce to counsel for Plaintiffs and the Court in this case private identifying information, and other information discoverable pursuant to Fed. R. Civ. P. 26(c) that Plaintiffs seek, without first requiring officials of the United States to pre-screen each document for objections, and presenting those objections to this Court for a decision regarding disclosure.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)  the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b)  the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)  during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party must:

(a)  promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to

produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1)    promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)    promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)    make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[1] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were

---

[1] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

1  made of all the terms of this Order, and (d) request such person or persons to execute the

2  "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

3  11.  INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED
     MATERIAL

4

5  When a Producing Party gives notice to Receiving Parties that certain inadvertently

6  produced material is subject to a claim of privilege or other protection, the obligations of the

7  Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This

8  provision is not intended to modify whatever procedure may be established in an e-discovery

9  order that provides for production without prior privilege review. Pursuant to Federal Rule of

10  Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a

11  communication or information covered by the attorney-client privilege or work product

12  protection, the parties may incorporate their agreement in the stipulated protective order

13  submitted to the court.

14  12.  MISCELLANOUS

15  12.1  Right to Further Relief. Nothing in this Order abridges the right of any person to

16  seek its modification by the court in the future.

17  12.2  Right to Assert Other Objections. By stipulating to the entry of this Protective

18  Order no Party waives any right it otherwise would have to object to disclosing or producing any

19  information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

20  Party waives any right to object on any ground to use in evidence of any of the material covered

21  by this Protective Order.

22  12.3  Filing Protected Material. Without written permission from the Designating Party

23  or a court order secured after appropriate notice to all interested persons, a Party may not file in

24  the public record in this action any Protected Material. A Party that seeks to file under seal any

25  Protected Material must comply with Civil Local Rule 79-5 and General Order 62. Protected

26  Material may only be filed under seal pursuant to a court order authorizing the sealing of the

27  specific Protected Material at issue. Pursuant to Civil Local Rule 79-5 and General Order 62, a

28  sealing order will issue only upon a request establishing that the Protected Material at issue is

1   privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a

2   Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-

3   5(d) and General Order 62 is denied by the court, then the Receiving Party may file the

4   information in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed

5   by the court.

6   13.    <u>FINAL DISPOSITION</u>

7           Within 60 days after the final disposition of this action, as defined in paragraph 4, each

8   Receiving Party must return all Protected Material to the Producing Party or destroy such

9   material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

10  compilations, summaries, and any other format reproducing or capturing any of the Protected

11  Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

12  submit a written certification to the Producing Party (and, if not the same person or entity, to the

13  Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all

14  the Protected Material that was returned or destroyed and (2)affirms that the Receiving Party has

15  not retained any copies, abstracts, compilations, summaries or any other format reproducing or

16  capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

17  retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

18  legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

19  product, and consultant and expert work product, even if such materials contain Protected

20  Material. Any such archival copies that contain or constitute Protected Material remain subject to

21  this Protective Order as set forth in Section 4 (DURATION).

22          IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

23

24

25

26

27

28

1  Dated:  January 17, 2013                          Respectfully submitted,

2                                                     By: /s/ Catherine E. Moreno
                                                          CATHERINE E. MORENO
3
                                                     WILSON SONSINI GOODRICH & ROSATI
4                                                    *Professional Corporation*
                                                      David J. Berger
5                                                     Thomas J. Martin
                                                      Analisa M. Pratt
6                                                     Savith S. Iyengar

7                                                     LAWYERS' COMMITTEE FOR CIVIL
                                                      RIGHTS
8                                                     Paul Chavez

9                                                     AMERICAN CIVIL LIBERTIES UNION
                                                      FOUNDATION OF NORTHERN
10                                                    CALIFORNIA, INC.
                                                      Julia Harumi Mass
11                                                    Alan L. Schlosser

12                                                   *Attorneys for Plaintiffs*

13
    Dated:  January 17, 2013                          By: /s/ Christopher W. Hollis
14                                                        CHRISTOPHER W. HOLLIS

15                                                    District Court Section
                                                      Office of Immigration Litigation
16                                                    Civil Division
                                                      U.S. Department of Justice
17                                                    P.O. Box 868, Ben Franklin Station
                                                      Washington, DC 20044
18                                                    Telephone: (202) 305-0899
                                                      Facsimile (202) 616-8962
19                                                    Email:  christopher.hollis@usdoj.gov

20                                                    STUART F. DELERY
                                                      Principal Deputy Assistant Attorney General
21                                                    Civil Division

22                                                    DAVID J. KLINE
                                                      Director
23                                                    Office of Immigration Litigation
                                                      District Court Section
24
                                                      VICTOR M. LAWRENCE
25                                                    Principal Assistant Director
                                                      Office of Immigration Litigation
26
                                                     *Attorneys for Defendants*
27

28
    Stipulated Amended Protective Order               -14-
    Case No. CV-11-4001 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

I, Christopher W. Hollis, attest that I obtained the concurrence of Catherine E. Moreno in filing this document. I declare under penalty of the laws of the United States that the foregoing is true and correct.

Executed this 17th day of January 2013 in Washington, DC.

          /s/ *Christopher W. Hollis*
          CHRISTOPHER W. HOLLIS

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _2/7/2013_____

Honorable Kandis A. Westmore
United States Magistrate Judge
Northern District of California

Stipulated Amended Protective Order      -15-
Case No. CV-11-4001 RS

1    **EXHIBIT A**

2    **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

3        I, _____ [print or type full name], of _____ [print or

4    type full address], declare under penalty of perjury that I have read in its entirety and understand the

5    Stipulated Protective Order that was issued by the United States District Court for the Northern District of

6    California on _____ [date] in the case of *Uelian De Abadia-Peixoto,* et al. *v. United States*

7    *Department of Homeland Security,* et al., Case No. CV 11-4001 RS.  I agree to comply with and to be

8    bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to

9    so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise

10   that I will not disclose in any manner any information or item that is subject to this Stipulated Protective

11   Order to any person or entity except in strict compliance with the provisions of this Order.

12       I further agree to submit to the jurisdiction of the United States District Court for the Northern

13   District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if

14   such enforcement proceedings occur after termination of this action.

15       I hereby appoint _____ [print or type full name] of

16

17   _____ [print or type full address and telephone number] as my

18   California agent for service of process in connection with this action or any proceedings related to

19   enforcement of this Stipulated Protective Order.

20

21   Date: _____

22

23   City and State where sworn and signed: _____

24

25   Printed name: _____

26

27   Signature: _____

28